# EXHIBIT 2

# Exhibit A

TO ORDER COPIES OF ANY DOCUMENTS LISTED
BELOW, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

**This docket is current through 05/11/2023**

Today's Date: 5/11/2023
Source: Superior Court, Santa Clara COUNTY, CALIFORNIA

**DISCLAIMER**

> This Data is provided for informational purposes only and it is not the official record.
> For copies of the official record (of an incarceration, conviction or court filing record)
> contact the source agency or court. In addition to any obligations under your Subscriber
> Agreement, your use of this data may be governed by the Supplier Additional Terms (see
> Footer).

**CASE INFORMATION**

| | |
|---|---|
| **Case Title:** | Rossi v. Becker, Et Al. (Class Action) |
| **Court:** | Superior Court, Santa Clara COUNTY |
| **Case Number:** | 23CV414120 |
| **Case Type:** | Civil |
| **Case Subtype:** | Civil Limited And Unlimited Jurisdiction |
| **Description:** | Securities Litigation Unlimited (28) |
| **Date Filed:** | 04/14/2023 |
| **Location:** | Civil |
| **Case Status:** | Active |

**PARTICIPANT INFORMATION**

### Stephen Rossi

| | |
|---|---|
| **Type:** | Plaintiff |
| **Attorney:** | Armen Zohrabian |
| **Attorney Status:** | Lead Attorney |
| **Bar Number:** | 230492 |

### Greg W. Becker

| | |
|---|---|
| **Type:** | Defendant |

### Daniel J. Beck

| | |
|---|---|
| **Type:** | Defendant |
| **Attorney:** | Kristopher Benjamin Kastens |
| **Attorney Status:** | Lead Attorney |
| **Bar Number:** | 254797 |

## Roger F. Dunbar

**Type:**                         Defendant

## Hon. Karen

**Type:**                         Defendant

## Eric A. Benhamou

**Type:**                         Defendant

## John S. Clendening

**Type:**                         Defendant

## Richard D. Daniels

**Type:**                         Defendant

## Alison Davis

**Type:**                         Defendant

## Joel P. Friedman

**Type:**                         Defendant

## Jeffery N. Maggioncalda

**Type:**                         Defendant

## Beverly Kay Matthews

**Type:**                         Defendant

## Mary J. Miller

**Type:**                          Defendant

## Kate D. Mitchell

**Type:**                          Defendant

## John F. Robinson

**Type:**                          Defendant

## Garen K. Staglin

**Type:**                          Defendant

## Kpmg LLP

**Type:**                          Defendant
**Attorney:**                      Lisa R Bugni
**Attorney Status:**               Lead Attorney
**Bar Number:**                    323962

## Benhamou Global Ventures, LLC

**Type:**                          Defendant

## Fifth Era, LLC

**Type:**                          Defendant

## Scale Venture Partners

**Type:**                          Defendant

## Superior Court Of California

| | |
|---|---|
| **Type:** | Notice |
| **Attorney Status:** | Lead Attorney |
| **Firm Name:** | Superior Court Of Ca, County Of Santa Clara |

## CALENDAR INFORMATION (1)

| **Date/Time:** | **Description:** | **Location:** | **Judge:** |
|---|---|---|---|
| 08/10/2023 2:30 PM | **Event:** Conference: Case Management | **Department:** Department 1 | |

## DOCKET PROCEEDINGS (30)

| Date: | Entry #: | Description: | Date Docketed: | Party: | |
|---|---|---|---|---|---|
| 05/04/2023 | | **Document Description:** Order Granting The Verified Applications For Admission Pro Hac Vice Of Jennifer S. Windom, Barry H. Berke, Darren A. Laverne, And Daniel M. Ketani - Signed By Judge Kulkarni **Docket Entry:** Order | | Filed By: Daniel Beck | Send Runner to Court |
| 05/03/2023 | | **Document Description:** Notice Of Appearance Of Kristopher Kastens **Docket Entry:** Notice | | Filed By: Daniel Beck | Send Runner to Court |
| 05/03/2023 | | **Document Description:** Notice Of Errata As To Verified Application Of Barry H. Berke To Appear As Counsel Pro Hac Vice **Docket Entry:** Notice | | Filed By: Daniel Beck | Send Runner to Court |
| 05/01/2023 | | **Document Description:** Verified Application Of Barry H. Berke To As Counsel Pro Hac Vice **Docket Entry:** Application: Pro Hac Vice Renewal | | Filed By: Daniel Beck | Send Runner to Court |
| 05/01/2023 | | **Document Description:** Verified Application Of Daniel M. Ketani To Appear As Counsel Pro Hac Vice **Docket Entry:** Application: Pro Hac Vice Renewal | | Filed By: Daniel Beck | Send Runner to Court |
| 05/01/2023 | | **Document Description:** Verified Application Of Darren A. Laverne To Appear As Counsel Pro Hac Vice **Docket Entry:** Application: Pro Hac Vice Renewal | | Filed By: Daniel Beck | Send Runner to Court |
| 05/01/2023 | | **Document Description:** Verified Application Of Jennifer S. Windom To Appear As Counsel Pro Hac Vice **Docket Entry:** Application: Pro Hac Vice Renewal | | Filed By: Daniel Beck | Send Runner to Court |

| | | | |
|---|---|---|---|
| 05/01/2023 | **Document Description:** Envelope # 11853244 Notice Of Appearance - Complex Fees Required **Docket Entry:** Clerk Rejection Letter | | Send Runner to Court |
| 05/01/2023 | **Document Description:** Of Kristopher Kastens In Support Of The Verified Applications For Admission Pro Hac Vice Of Jennifer S. Windom, Barry H. Berke, Darren A. Laverne, And Daniel M. Ketani **Docket Entry:** Declaration | Filed By: Daniel Beck | Send Runner to Court |
| 05/01/2023 | **Document Description:** Of Verified Applications Of Jennifer S. Windom, Barry H. Berke, Darren A. Laverne, And Daniel M. Ketani To Appear As Counsel Pro Hac Vice **Docket Entry:** Notice | Filed By: Daniel Beck | Send Runner to Court |
| 05/01/2023 | **Document Description:** Proof Of Service **Docket Entry:** Proof Of Service | Filed By: Daniel Beck | Send Runner to Court |
| 04/27/2023 | **Document Description:** Order Granting Pro Hac Vice Application Of Kevin J. O'Brien - Signed By Judge Kulkarni **Docket Entry:** Order | Filed By: Kpmg Llp | Send Runner to Court |
| 04/26/2023 | **Document Description:** Application Of Kevin J. O'Brien To Appear Pro Hoc Vice **Docket Entry:** Application: Pro Hac Vice Renewal | Filed By: Kpmg Llp | Send Runner to Court |
| 04/26/2023 | **Document Description:** Declaration **Docket Entry:** Declaration | Filed By: Kpmg Llp | Send Runner to Court |
| 04/26/2023 | **Document Description:** Memorandum Of Points & Authorities **Docket Entry:** Memorandum: Points And Authorities | Filed By: Kpmg Llp | Send Runner to Court |
| 04/26/2023 | **Document Description:** Notice Of Application For Admission Of Pro Hac Vice **Docket Entry:** Notice | Filed By: Kpmg Llp | Send Runner to Court |
| 04/26/2023 | **Document Description:** Proof Of Service **Docket Entry:** Proof Of Service | Filed By: Kpmg Llp | Send Runner to Court |
| 04/24/2023 | **Document Description:** Unopposed Pro Hac Vice Application By Richard T. Moroney (Kpmg Llp) + 1st App + Complex Fee | Filed By: Kpmg Llp | Send Runner to Court |

| | | | |
|---|---|---|---|
| 04/24/2023 | **Docket Entry:** Application: Pro Hac Vice **Document Description:** Lisa Bugni Declaration Iso Unopposed Phv Application By Richard T. Moroney (Kpmg LLP) **Docket Entry:** Declaration: In Support | Filed By: Kpmg LLP | Send Runner to Court |
| 04/24/2023 | **Document Description:** Memo Of P&A Iso Unopposed Phv Application By Richard T. Moroney (Kpmg LLP) **Docket Entry:** Memorandum: Points And Authorities | Filed By: Kpmg LLP | Send Runner to Court |
| 04/24/2023 | **Document Description:** Notice Of Appearance Of Lisa Bugni **Docket Entry:** Notice | Filed By: Kpmg LLP | Send Runner to Court |
| 04/24/2023 | **Document Description:** Notice Of Unopposed Phv Application By Richard T. Moroney (Kpmg LLP) **Docket Entry:** Notice | Filed By: Kpmg LLP | Send Runner to Court |
| 04/24/2023 | **Document Description:** Order Granting Unopposed Phv Application By Richard T. Moroney (Kpmg LLP) - Signed/Srk. **Docket Entry:** Order | Filed By: Kpmg LLP | Send Runner to Court |
| 04/24/2023 | **Document Description:** Proof Of Service **Docket Entry:** Proof Of Service | Filed By: Kpmg LLP | Send Runner to Court |
| 04/18/2023 | **Document Description:** Order Deeming Case Complex And Staying Discovery And Responsive Pleading Deadline - Signed/Srk. **Docket Entry:** Order: Deeming Case Complex | | Send Runner to Court |
| 04/14/2023 | **Document Description:** Civil Case Cover Sheet * Complex * Securities Litigation **Docket Entry:** Civil Case Cover Sheet | Filed By: Stephen Rossi | Send Runner to Court |
| 04/14/2023 | **Document Description:** Civil Lawsuit Notice * 1st Cmc Set For 8/10/23 At 2:30pm In D1 **Docket Entry:** Civil Lawsuit Notice | | Send Runner to Court |
| 04/14/2023 | **Document Description:** Complaint For Violations Of The Securities Act Of 1933 **Docket Entry:** | Filed By: Stephen Rossi | Send Runner to Court |

| | | | |
|---|---|---|---|
| | Complaint (Unlimited) (Fee Applies) | | |
| 04/14/2023 | **Docket Entry:** New Filed Case | | Send Runner to Court |
| 04/14/2023 | **Document Description:** Summons **Docket Entry:** Summons: Issued/Filed | Filed By: Stephen Rossi | Send Runner to Court |

<div align="center">

TO ORDER COPIES OF ANY DOCUMENTS LISTED
ABOVE, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply)

</div>

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit B

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

E-FILED
4/14/2023 4:10 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
23CV414120
Reviewed By: R. Walker
Envelope: 11717616

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GREG W. BECKER, et al. (Additional Parties Attachment Form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PLAINTIFF STEPHEN ROSSI

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Clara County Superior Court

191 North First Street San Jose CA 95113

**CASE NUMBER:**
*(Número del Caso):*
**23CV414120**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

DATE:
*(Fecha)* 4/14/2023 4:10 PM

Clerk of Court

Clerk, by
*(Secretario)* _____ R. Walker , Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

SUM-200(A)

| SHORT TITLE:<br>STEPHEN ROSSI, ET AL. V. GREG W. BECKER, ET. AL. | CASE NUMBER:<br>23CV414120 |
| --- | --- |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

DANIEL J. BECK, ROGER F. DUNBAR, KAREN HON, ERIC A. BENHAMOU, JOHN S. CLENDENING, RICHARD D. DANIELS, ALISON DAVIS, JOEL P. FRIEDMAN, JEFFERY N. MAGGIONCALDA, BEVERLY KAY MATTHEWS, MARY J. MILLER, KATE D. MITCHELL, JOHN F. ROBINSON, GAREN K. STAGLIN, KPMG LLP, BENHAMOU GLOBAL VENTURES, LLC, FIFTH ERA, LLC, AND SCALE VENTURE PARTNERS

Page _____ of _____

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]    [ Save this form ]    [ Clear this form ]

# Exhibit C

**ATTACHMENT CV-5012**

# CIVIL LAWSUIT NOTICE

**23CV414120**

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA  95113*

CASE NUMBER: _____

<div style="border:1px solid black">

## PLEASE READ THIS ENTIRE FORM

</div>

**PLAINTIFF** (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

**DEFENDANT** (The person sued):  **You must do each of the following to protect your rights:**

1.  You must file a **written response** to the *Complaint, using the proper legal form or format*, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2.  You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3.  You must attend the first Case Management Conference.

   **Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

**RULES AND FORMS:**  You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

**CASE MANAGEMENT CONFERENCE (CMC):**  You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

   ***You or your attorney must appear at the CMC.***  *You may ask to appear by telephone – see Local Civil Rule 8.*

<div style="border:1px solid black">

Hon. Sunil R. Kulkarni                                          1

**Your Case Management Judge is:** _____   **Department:** _____

**The 1st CMC is scheduled for:**  (Completed by Clerk of Court)

   8/10/23                          2:30 pm                          1
   **Date:** _____   **Time:** _____   in **Department:** _____

**The next CMC is scheduled for:**  (Completed by party if the 1st CMC was continued or has passed)

   **Date:** _____   **Time:** _____   in **Department:** _____

</div>

**ALTERNATIVE DISPUTE RESOLUTION (ADR):**  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

**WARNING:** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

[ **Reset Form** ]

# Exhibit D

E-FILED
4/14/2023 3:29 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
23CV414120
Reviewed By: R. Walker

1   DAVID W. HALL (274921)
    dhall@hedinhall.com
2   ARMEN ZOHRABIAN
    azohrabian@hedinhall.com (230492)
3   **HEDIN HALL LLP**
4   Four Embarcadero Center, Suite 1400
    San Francisco, CA  94104
5   Telephone: (415) 766-3534
    Facsimile: (415) 402-0058
6
7   *Attorneys for Plaintiff and the Proposed Class*
8   [Additional counsel on signature page]
9
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10
                        **COUNTY OF SANTA CLARA**
11

12  STEPHEN ROSSI, INDIVIDUALLY AND   ) Case No.    **23CV414120**
13  ON BEHALF OF ALL OTHERS           )
    SIMILARLY SITUATED,               ) <u>CLASS ACTION</u>
14                                    )
                        Plaintiffs,   ) COMPLAINT FOR VIOLATIONS OF THE
15                                    ) SECURITIES ACT OF 1933
            vs.                       )
16                                    )
17  GREG W. BECKER, DANIEL J. BECK,   ) <u>DEMAND FOR JURY TRIAL</u>
    ROGER F. DUNBAR, KAREN HON, ERIC  )
18  A. BENHAMOU, JOHN S. CLENDENING,  )
    RICHARD D. DANIELS, ALISON DAVIS, )
19  JOEL P. FRIEDMAN, JEFFERY N.      )
    MAGGIONCALDA, BEVERLY KAY         )
20  MATTHEWS, MARY J. MILLER, KATE D. )
21  MITCHELL, JOHN F. ROBINSON, GAREN )
    K. STAGLIN, KPMG LLP, BENHAMOU    )
22  GLOBAL VENTURES, LLC, FIFTH ERA,  )
    LLC, AND SCALE VENTURE PARTNERS   )
23                                    )
24                        Defendants. )
    _____ )
25
26
27
28

_____
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Plaintiff Stephen Rossi, individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and his own acts, and otherwise based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by SVB Financial Group (the "Company" or "SVB") and Boston Private Bank & Trust Company ("Boston Private"), as well as media, testimony, and publicly available information concerning the Company and its public statements. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## SUMMARY OF THE ACTION

1.     This is a securities class action on behalf of all persons who acquired SVB common stock pursuant to the S-4 registration statement and 424B3 prospectus (collectively, with materials incorporated by reference therein, the "Offering Materials") issued in connection with the July 2021 stock-for-stock exchange through which SVB acquired and merged with Boston Private (the "Merger"). Plaintiff asserts strict liability claims for relief under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act" or "Securities Act") against certain SVB directors and officers, against KPMG, LLP ("KPMG"), SVB's independent auditor, and the Venture Capital Defendants (defined below).

2.     At the time of the Merger, SVB operated as a financial services company, a bank holding company, and a financial holding company, offering banking and financial products and services to domestic and international clients. It offered its banking services through its primary subsidiary, Silicon Valley Bank, which operated as a California state-chartered bank.

3.     Pursuant to the Merger, each share of Boston Private stock was converted into the right to receive $2.10 in cash and 0.0228 shares of SVB common stock. Through this cash-and-stock exchange, in connection with the Merger, Defendants solicited and sold to former Boston Private shareholders approximately 1.9 million shares of SVB common stock. All these new shares of SVB common stock were registered, issued, sold, and solicited pursuant to the Offering Materials, all motivated by their own and the Company's financial interests.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

4.      The Offering Materials contained false and misleading statements of material fact, and omitted material facts that were both required by governing regulations, and necessary to make the statements not misleading. Leading up to the Merger, in an environment of historically low interest rates, SVB shifted a substantial portion of its investment portfolio to longer-term, fixed-rate securities. In doing so, because a rise in interest rates reduces the market value of fixed-rate securities, SVB exposed itself to far greater interest rate risk than disclosed in the Offering Materials.

5.      As shown in greater detail below, the Offering Materials were rife with materially false and misleading statements and omissions such as the significant, undisclosed market risks, including severe interest rate risk, uninsured depositor risks and liquidity risks, that SVB faced. Among other matters, the Offering Materials failed to disclose that:

(a)      Higher interest rates were already jeopardizing the bank's future earnings, and worse, instead of mitigating such risks, SVB had exacerbated those risks by, *inter alia,* overconcentrating in long-duration investments to deliver short-term profits;

(b)      As more deposits flowed in, SVB's executives had disregarded internal assessments, including recommendations to purchase shorter-term bonds to hedge its balance sheet, which would have offset the material risk of losses from rising interest rates, and instead continued investing in long-term bonds to drive short-term profits;

(c)      SVB had ignored internal risk management alarms, had failed to reasonably address and comply with key risk metrics, and had altered assumptions underlying internal models that showed higher interest rates could devastate SVB's future earnings, using unreasonable and improper tweaks to those models to mask the undisclosed risks and facilitate SVB's short-term profit-driven strategy;

(d)      SVB lacked effective internal controls, had deficient risk management systems, its holding Company had been rated as deficient under the CAMELS (acronym for Capital adequacy, Assets, Management capability, Earnings, Liquidity, Sensitivity) rating system, regulators had warned SVB that its risk management systems were inadequate and below the Federal Reserve's expectations, and SVB was already facing many serious operational and technological problems, impairing the Company's ability to track risks, including interest rate risks, among other matters;

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

(e)     SVB lacked a diversified customer base, was over-reliant on a small group of large, uninsured depositors tied into the same, insular venture capital networks, and thus an overwhelmingly inordinate percentage of SVB deposits across that non-diversified customer base was particularly susceptible to the risk of a run on the bank; and

(f)     SVB's liquidity was less than represented by Defendants and, in truth, inadequate in view of its customers' business and their collective deposits.

6.     Moreover, with respect to interest rate risk, SVB failed to disclose that a foreseeable rise in interest rates presented a critical threat to its future business. The Offering Materials' risk factor disclosures were materially false and misleading, framing potential interest rate increases as a net *positive* for SVB. According to the Offering Materials, such increases would increase its interest rate spread, allowing SVB to charge more for its loans and buy higher yielding securities at a rate that would outpace the increased interest it would be obligated to pay on its customer deposits. But that same risk factor disclosure omitted that higher rates would reduce the market value of SVB's marketable securities, resulting in material unrealized losses from their declining market value or realized losses if they had to be liquidated.

7.     Defendants were required to disclose these material facts in the Offering Materials for at least four independent reasons.  First, SEC Regulation S-K, Item 105, requires disclosure of "material" risk factors. As detailed therein, the "Risk Factor" section of the Offering Materials must "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105.[1] Item 105 requires disclosure of the risks to which reasonable investors would attach importance in making investment or voting decisions.  Contrary to Item 105's requirements, the Offering Materials failed to disclose that foregoing risks.  While the Offering Materials' discussion of risk factors listed market and liquidity risks in vague and generic terms, it did not mention the actual material risks posed by the foregoing, much less adequately describe those risks as required by Item 105.

---

[1] Before April 2, 2019, current Item 105 was Item 503(c).

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

8.      Second, SEC Regulation S-K, Item 305, sets forth quantitative and qualitative disclosure requirements regarding market risk, including interest rate risk. The Offering Materials failed to provide the required disclosures under Item 305.  The quantitative disclosures violated Item 305 because they failed to reflect "reasonably possible near term changes."  Instead, SVB used only a maximum 200 bps rate increase.  It was reasonably possible at the time of the Offering Materials that the Federal Reserve would (as it ultimately did) raise interest rates to a greater degree. The Offering Materials qualitative disclosures also violated Item 305, as they misrepresented and failed to disclose the critical change in the Company's market risk exposure, including interest rate risk, as well as how it would manage such risk.  Further, the Offering Materials failed to disclose that Defendants ignored internal alarms, failed to comply with key risk metrics, and engineered assumptions to internal models that showed that higher interest rates could devastate the SVB's future earnings, making unreasonable and improper tweaks to the model to validate and advance SVB's profit-driven strategy.

9.      Third, SEC Regulation S-K, Item 303, requires that management's discussion and analysis (MD&A) "[i]dentify any known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way" and "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303. Contrary to Item 303's requirements, the Offering Materials failed to disclose the material market risks, including the interest rate risk, uninsured depositor risk and liquidity risk that SVB faced, and which resulted in, and were reasonably likely to result in, SVB's liquidity materially decreasing and having a materially unfavorable impact on SVB's revenues and income.

10.     Fourth, Defendants failure to disclose the foregoing risks rendered false and misleading the Offering Materials' numerous references to known risks that, "if" they occurred, "may" or "could" affect the Company. These "risks" were, in truth, already existing or near certainties at the time of the Merger.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

11.     On March 9, 2023, the Company announced in a mid-quarter update that it had sold "substantially all of our Available for Sale ("AFS") securities portfolio" resulting in an estimated realized post-tax loss of $1.8 billion. SVB's stock plummeted more than 60% the next day.

12.     Since March 8, 2023, the stock has lost substantially all of its value. SVB terminated its previously announced equity offerings; Silicon Valley Bank was shut down by the California Department of Financial Protection and Innovation; and on March 17, 2023, SVB announced it had filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

13.     The Federal Reserve System has since undertaken a review of the SVB failure. According to prepared testimony by Michael Barr, the Fed's Vice Chair for Supervision, before the Senate Committee on Banking, Housing, and Urban Affairs, "[t]he picture that has emerged thus far shows SVB had inadequate risk management and internal controls . . . ." In fact, as reported in the *New York Times*, at around the time of the Merger the Fed alerted SVB that it "was doing a bad job of ensuring that it would have enough easy-to-tap cash on hand in the event of trouble." And the *Washington Post* reported in April 2023 that an internal model at SVB "showed that higher interest rates could have a devastating impact on the bank's future earnings" but that, "[i]nstead of heeding that warning—and over the concerns of some staffers—SVB executives simply changed the model's assumptions . . . ."

14.     Plaintiff Stephen Rossi owned Boston Private stock before the Merger and acquired SVB stock pursuant to the Offering Materials in the Merger.  Plaintiff asserts causes of action under §§ 11, 12, and 15 of the Securities Act against Defendants—the directors and officers who signed the Offering Materials, KPMG, SVB's independent auditor, and the Venture Capital Defendants (defined below).

## JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction under the California Constitution, Article VI, Section 10.  Removal is barred by Section 22 of the 1933 Act.

16.     This Court has personal jurisdiction and venue is proper under California Code of Civil Procedure § 410.10. Certain Defendants and their agents reside in California. Further, certain

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Defendants drafted and signed the Offering Materials, and controlled SVB's operations, within California and this county. KPMG signed the "Consent of Independent Registered Public Accounting Firm" and the "Report of Independent Registered Public Accounting Firm" in California. Certain Defendants and their agents also affirmatively solicited the subject securities and disseminated the false and misleading statements and omissions to investors in California and this county. Individually and collectively, these contacts with California are substantially connected to the claims set forth in this complaint.

17.     This Court is a proper venue under California Code of Civil Procedure § 395.

### **PARTIES**

18.     Plaintiff Stephen Rossi is a resident of Castro Valley, California.  Plaintiff acquired SVB common stock directly in the Merger, in exchange for Boston Private shares, pursuant to the Offering Materials and was damaged thereby.

19.     Defendant Greg W. Becker was, at all relevant times, President, Chief Executive Officer, and a Director of SVB. Defendant Becker reviewed, contributed to, and signed the Offering Materials.

20.     Defendant Daniel J. Beck was, at all relevant times, the Chief Financial Officer of SVB. Defendant Beck reviewed, contributed to, and signed the Offering Materials.

21.     Defendant Roger F. Dunbar was, at all relevant times Chairman of the Board of Directors of SVB. Defendant Dunbar was the chairperson of the Risk Committee at the time of the Merger. Defendant Dunbar reviewed, contributed to, and signed the Offering Materials.

22.     Defendant Karen Hon was, at all relevant times, the Chief Accounting Officer of SVB. Defendant Hon reviewed, contributed to, and signed the Offering Materials.

23.     Defendant Eric A. Benhamou was, at all relevant times, a Director of SVB. Defendant Benhamou was a member of the Risk Committee, the Finance Committee and chairperson of the Governance Committee at the time of the Merger. Defendant Benhamou reviewed, contributed to, and signed the Offering Materials, including in his capacity as Chairman and Chief Executive Officer of Defendant Benhamou Global Ventures, LLC, an investment firm focused on innovative high-tech companies around the world, which he founded in 2003.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

24.     Defendant John S. Clendening was, at all relevant times, a Director of SVB. Defendant Clendening reviewed, contributed to, and signed the Offering Materials.

25.     Defendant Richard D. Daniels was, at all relevant times, a Director of SVB. Defendant Daniels reviewed, contributed to, and signed the Offering Materials.

26.     Defendant Allison Davis was, at all relevant times, a Director of SVB. Defendant Davis reviewed, contributed to, and signed the Offering Materials, including in her capacity as Co-Founder and Managing Partner of Defendant Fifth Era, LLC, a venture capital firm specializing in seed funding and startup investments.

27.     Defendant Joel L. Friedman was, at all relevant times, a Director of SVB. Defendant Friedman was a member of the Risk Committee at the time of the Merger. Defendant Friedman reviewed, contributed to, and signed the Offering Materials.

28.     Defendant Jeffery N. Maggioncalda was, at all relevant times, a Director of SVB. Defendant Maggioncalda reviewed, contributed to, and signed the Offering Materials.

29.     Defendant Beverly Kay Matthews was, at all relevant times, a Director of SVB. Defendant Matthews reviewed, contributed to, and signed the Offering Materials.

30.     Defendant Mary J. Miller was, at all relevant times, a Director of SVB. Defendant Miller was a member of the Risk Committee at the time of the Merger. Defendant Miller reviewed, contributed to, and signed the Offering Materials.

31.     Defendant Kate D. Mitchell was, at all relevant times, a Director of SVB. Defendant Mitchell was a member of the Risk Committee at the time of the Merger. Defendant Mitchell reviewed, contributed to, and signed the Offering Materials, including in her capacity as a Partner and Co-Founder of Defendant Scale Venture Partners (defined below), a venture capital firm that invests in enterprise software companies, and has been instrumental in building the firm's team and strategic direction.

32.     Defendant John F. Robinson was, at all relevant times, a Director of SVB. Defendant Robinson was a member of the Risk Committee at the time of the Merger. Defendant Robinson reviewed, contributed to, and signed the Offering Materials.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

33.     Defendant Garen K. Staglin was, at all relevant times, a Director of SVB. Defendant Staglin was a member of the Risk Committee at the time of the Merger. Defendant Staglin reviewed, contributed to, and signed the Offering Materials.

34.     The Defendants named in ¶¶ 19-33 are referred to herein as the "Individual Defendants."  Each of them signed and/or was identified as an incoming officer or director in the Offering Materials, solicited the securities issued pursuant thereto, planned and contributed to the Merger and Offering Materials, and attended promotional events to meet with and present favorable information to Boston Private investors.

35.     Defendant KPMG LLP ("KPMG") is a New York Registered Foreign Limited Liability Partnership headquartered in New York, New York.  KPMG was the auditor for SVB from 1994 to 2023, including for the calendar year ended December 31, 2020.

36.     Defendant Benhamou Global Ventures, LLC ("Benhamou Global Ventures"), is a Delaware Limited Liability Company headquartered in Menlo Park, California. Benhamou Global Ventures, founded in 2003 by Defendant Eric A. Benhamou, is an investment firm focused on innovative high-tech companies around the world.  Benhamou Global Ventures exercised control over Defendant Eric A. Benhamou, who, within the scope of his employment for Benhamou Global Ventures reviewed, contributed to, signed, or agreed to be named as a director of SVB in the Offering Materials.

37.     Defendant Fifth Era, LLC ("Fifth Era") is a California Limited Liability Company, headquartered in Tiburon, California.  Fifth Era is a venture capital firm specializing in seed funding and startup investments, co-founded by Defendant Allison Davis, who is its Managing Partner.  Fifth Era exercised control over Defendant Allison Davis, who, within the scope of her employment for Fifth Era reviewed, contributed to, signed, or agreed to be named as a director of SVB in the Offering Materials.

38.     Defendant Scale Venture Partners (defined as including but not limited to the following related and operating entities: Scale Management, LLC, a California Limited Liability Company headquartered in Foster City, California; Scale Venture Management I, LLC, a California Limited Liability Company headquartered in Foster City, California; Scale Venture Management I-

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

A, LLC, a Delaware Limited Liability Company headquartered in Foster City, California; Scale Venture Management III, LLC, a Delaware Limited Liability Company headquartered in Foster City, California; Scale Venture Management IV, LLC, a Delaware Limited Liability Company headquartered in Foster City, California), headquartered in Foster City, California, is a venture capital firm that invests in enterprise software companies, co-founded by Defendant Kate D. Mitchell, who serves as a Partner and Co-Founder.  Scale Venture Partners exercised control over Defendant Kate D. Mitchell, who, within the scope of her employment for Scale Venture Partners reviewed, contributed to, signed, or agreed to be named as a director of SVB in the Offering Materials.

39.     The Defendants named in ¶¶ 36-38 are referred to herein as the "Venture Capital Defendants."   The Individual Defendants, KPMG and the Venture Capital Defendants are collectively referred to as "All Defendants."

## FACTUAL BACKGROUND

### Relevant Banking Background

40.     A typical commercial bank accepts deposits that customers can withdraw at will. The bank may pay interest on some or all of those deposits. These deposits are liabilities because they are owed to the bank's customers.

41.     A typical commercial bank also holds some cash to manage day-to-day withdrawals and deposits. The bank seeks to earn interest on the balance of the deposited funds, typically by making loans or investing in assets. The bank makes a profit on the difference between the interest that its assets earn and the interest that it must pay on its liabilities. This difference is called the "interest rate spread."

42.     Low interest rates in the market generally correspond to a low interest rate spread. And because a bank makes its profit off the interest rate spread, low interest rates can result in low profits.

43.     The securities that banks purchase generally fall into two categories: (1) "available-for-sale," or "AFS," and (2) "hold-to-maturity," or "HTM." AFS securities are those that might be sold to raise revenue, so their book value—their value on a balance sheet—is adjusted periodically

1    to reflect changes in their market value, such as due to interest rate fluctuations. HTM securities are

2    intended to be held to maturity, so their book value is kept fixed throughout their life. Selling HTM

3    securities prior to their date of maturity results in the portfolio being immediately "marked to market"

4    (valued at current market value versus value at maturity), which can create a need to raise capital.

5    **SVB's Origins and Development to 2021**

6    44.    SVB was founded in Santa Clara County in 1983 and has been headquartered there

7    ever since. Until its bankruptcy, SVB (through its primary subsidiary, Silicon Valley Bank)

8    specialized in taking deposits from and lending to startup companies, particularly ones based in the

9    Silicon Valley region of the San Francisco Bay Area.

10   45.    Throughout the 2010s, interest rates were low by historical standards, resulting in

11   lower-than-desired profits at SVB. The concerns about profitability became more acute by the late

12   2010s, as SVB's assets approached $50 billion. The Dodd-Frank Wall Street Reform and Consumer

13   Protection Act of 2010 subjected all bank holding companies with $50 billion or more in assets to

14   enhanced regulations due to their presumed systemic importance.

15   46.    In 2017, there was a change in leadership within SVB's key finance functions, and in

16   2018, the new financial leadership at SVB sought greater returns on the bank's assets. To that end,

17   SVB shifted a large portion of its investment portfolio from short-term bonds to long-term bonds.

18   The latter pay higher interest rates but tie up funds and remain on the books for longer.

19   47.    Between the fourth quarter of 2019 and during 2021, including when the COVID-19

20   pandemic led to an increase in the use of the Internet for most activities and the federal government

21   injected money into the economy to prevent a significant downturn, SVB experienced massive

22   growth in deposits. In 2018, SVB's deposits were just under $50 billion. In 2020, its deposits had

23   grown to $102 billion. By 2021, its deposits were approaching $190 billion.

24   48.    More deposits came in than SVB could lend out. Loans to startups were a relatively

25   small part of SVB's business in the early 2020s, both because of the equity investments funding

26   startups and because the typical startup has not built up a track record of good creditworthiness. SVB

27   made home loans and performed other kinds of business lending, such as vineyard finance, but in

28

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

accordance with the strategy it had adopted a few years earlier, much of the inflow of deposits to SVB in 2020 and 2021 went to purchasing long-term securities, such as U.S. Treasury bonds.

49.     SVB concentrated its investments in HTM securities (as opposed to AFS securities) for its expanding securities portfolio.

50.     As a consequence of these developments, SVB's balance sheet in 2021 had the following essential characteristics:

- First, SVB's liabilities consisted primarily of recent deposits, often from startups. These deposits brought significant risk. Venture capital firms invest in startups to earn returns, but as interest rates rise, safer alternatives to investing in startups become more viable by paying a higher return. When interest rates rise, therefore, fewer startups receive funding, startups have less cash to deposit in a bank, and some may need to withdraw funds.

- Second, a substantial proportion of SVB's assets were long-term U.S. Treasury bonds and other government-affiliated debt securities.

51.     U.S. Treasury bonds are sometimes described as "safe" investments. But, while U.S. Treasury bonds are safe from *credit* risk (*i.e.*, the U.S. Treasury has never failed to repay creditors), all fixed-interest bonds are subject to significant interest rate risk. A U.S. Treasury bond provides payments at a fixed interest rate for a set number of years, for example ten, but when interest rates rise, a bond at the older, lower rate *loses* value because investors can buy bonds at a new, higher rate.

52.     Long-term bonds pose additional risks. By definition, they tie up liquidity for a longer period. Hence, if there is an unexpected need for liquidity, bonds must be sold. If interest rates have risen, bonds must be sold at a loss.

53.     In the 2010s, interest rates had been low for years. The Federal Funds Rate, a key benchmark, dropped close to zero during the financial crisis in 2007 and 2008, and had remained close to zero ever since, except for a few small increases between 2017 and 2020, which were quickly reversed.

54.     By early 2021, market conditions had changed enough that SVB's exposure to rising interest rates was no longer a potential future risk: It presented a near-term crisis. Typically, the

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Federal Reserve raises interest rates to fight inflation. Accordingly, by early 2021, with interest rates at near historic lows, interest rates were set to rise with expected inflation.[2] These increases were foreseeable. Before 2022, interest rates were historically low: from the end of 2008 to early 2022, rates were lower than they had ever been in any previous time period of comparable length. Historically, though, the Federal Reserve has lowered ***and raised*** interest rates to respond to macroeconomic conditions. Near-zero rates could not persist indefinitely.

### DEFENDANTS' FALSE AND MISLEADING OFFERING MATERIALS

55.     On January 4, 2021, SVB announced that it had entered into a definitive merger agreement pursuant to which it would acquire Boston Private Bank & Trust Company. Under the terms of the merger agreement, Boston Private shareholders would receive 0.0228 shares of SVB common stock and $2.10 of cash for each Boston Private share they owned.

#### The Offering Materials

56.     On February 11, 2021, SVB filed with the SEC on Form S-4 a draft registration statement which would register the SVB shares to be issued and exchanged in the Merger.

57.     On March 16, 2021, SVB filed with the SEC a final amendment to the registration statement. The amended registration statement incorporated by reference, among other matters, the following SVB SEC filings:

- Annual Report on Form 10-K for the fiscal year ended December 31, 2020, filed with the SEC on March 1, 2021;

- Definitive Proxy Statement on Schedule 14A for the 2021 annual meeting of stockholders, filed with the SEC on March 4, 2021;

- Current Reports on Form 8-K filed with the SEC on January 4, 2021, January 8, 2021, January 21, 2021 (only with respect to Item 8.01) and February 2, 2021; and

---

[2] The Federal Reserve announced seven rate increases in 2022, beginning in March, amounting to a total of four percentage points. Another rate hike followed in early 2023.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

- Description of SVB common stock, par value $0.001 per share, contained in registration statement on Form 8-A filed with the SEC on April 23, 1987, including any amendment or report filed for the purposes of updating such description.

58.     The SEC declared the amended registration statement effective on March 17, 2021.

59.     On March 18, 2021, SVB filed a prospectus on Form 424B3 for the SVB shares issued and exchanged in the Merger.

60.     On July 1, 2021, the Merger closed. Until then, Boston Private shareholders could sell their shares on the open market if they did not want to receive SVB stock in the Merger. On that date, Boston Private shareholders received 0.0228 shares of SVB common stock and $2.10 of cash for each Boston Private share they owned. The final closing price of Boston Private stock was $14.75.

**The Offering Materials' False and Misleading Statements and Omissions Regarding Interest Rate and Deposit Risk**

61.     The Offering Materials contained untrue statements of material fact and omitted material facts that were both required by governing regulations and necessary to make the statements made not misleading.

62.     The Offering Materials failed to disclose that SVB faced significant interest rate risk, including on both the asset and liability sides of its balance sheet from investing predominantly in long-term, fixed-rate, government-backed debt securities.  On the asset side of SVB's balance sheet, higher interest rates risked decreasing the value of SVB's long-term debt securities. On the liability side of SVB's balance sheets, higher interest rates risked less capital allocated to technology companies, thereby decreasing the supply of cheap deposit funding.

63.     The Offering Materials failed to disclose that SVB's deposits and long-term debt security assets were subject to interest rate risk, such that if interest rates substantially rose, SVB could be expected to need liquidity to repay depositors while simultaneously being unable to acquire liquidity except by selling its long-term debt security assets at large losses.

64.     The Risk Factors section of SVB's 2020 10-K, incorporated by reference into the Offering Materials, failed to disclose the serious interest rate risk that SVB faced, stating as follows:

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

**Our interest rate spread has declined, and may continue to decline in the future. Any material reduction in our interest rate spread could have a material adverse effect on our business, results of operations or financial condition.[3]**

A significant portion of our net income comes from our interest rate spread, which is the difference between the interest rates paid by us on interest-bearing liabilities, such as deposits and internal borrowings, and the interest rates and fees we receive on our interest-earning assets, such as loans extended to our clients, securities held in our investment portfolio and excess cash held to manage short-term liquidity. Our interest rate spread can be affected by the mix of loans, investment securities, deposits and other liabilities on our balance sheet, as well as a variety of external factors beyond our control that affect interest rate levels, such as competition, inflation, recession, global economic disruptions, unemployment and the fiscal and monetary policies of various governmental bodies. For example, changes in key variable market interest rates, such as the Federal Funds, National Prime ("Prime"), LIBOR or Treasury rates, generally impact our interest rate spread. While changes in interest rates do not generally produce equivalent changes in the revenues earned from our interest-earning assets and the expenses associated with our interest-bearing liabilities, increases in market interest rates are nevertheless *likely to cause our interest rate spread to increase. Conversely, if interest rates decline, our interest rate spread will likely decline. In the first quarter of 2020, the Federal Reserve lowered the target Federal Funds rate to between zero and 0.25%, which contributed to the decline of our interest rate spread, and also led to a decrease in the rates and yields on U.S. Treasury securities. If interest rates do not rise, or if the Federal Reserve lowers the target Federal Funds rate to below 0%, these low rates could continue to constrain our interest rate spread and may adversely affect our business forecasts.* On the other hand, increases in interest rates may result in a change in the mix of non-interest and interest-bearing accounts, and the level of off-balance sheet market-based investment preferred by our clients, which may also impact our interest rate spread.

(emphasis added).

65. This paragraph incorporated into the Offering Materials was materially false and misleading because, among other matters, it portrays an increase in interest rates as "likely to cause [SVB's] interest rate spread to increase," which would increase the Company's net income from the spread. In other words, SVB could charge more for its loans and buy higher yielding securities. In reality, an increase in interest rates would sharply reduce the value of SVB's long-term debt security assets.

---

[3] Bolding in original.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

66.     SVB's omissions regarding its interest rate risk also rendered the Offering Materials false and misleading. Specifically, the Offering Materials failed to disclose the substantial risk that higher interest rates posed to SVB, including that higher interest rates would lower the market value of SVB's long-term debt securities, resulting in material unrealized losses from their declining market value or realized losses if they had to be liquidated. Instead, the Offering Materials presented future rate increases as something that would benefit SVB.

67.     In late 2020, as deposits increased at SVB, Company executives rejected an internal recommendation to purchase shorter-term bonds to reduce the risk of material losses from interest rate increases.  As Bloomberg reported on March 13, 2023:

> In late 2020, the firm's asset-liability committee received an internal recommendation to buy shorter-term bonds as more deposits flowed in, according to documents viewed by Bloomberg. That shift would reduce the risk of sizable losses if interest rates quickly rose. But it would have a cost: an estimated $18 million reduction in earnings, with a $36 million hit going forward from there.
>
> Executives balked. Instead, the company continued to plow cash into higher-yielding assets. That helped profit jump 52% to a record in 2021 and helped the firm's valuation soar past $40 billion. But as rates soared in 2022, the firm racked up more than $16 billion of unrealized losses on its bond holdings.
>
> Throughout last year, some employees pleaded to reposition the company's balance sheet into shorter duration bonds. The asks were repeatedly rejected, according to a person familiar with the conversations. The firm did start to put on some hedges and sell assets late last year, but the moves proved too late.[4]

68.     Nor did the Offering Materials disclose that, to inflate short-term profits, the Company ignored internal alarms, failed to comply with key risk metrics, and engineered assumptions to internal models that (correctly) showed that higher interest rates could devastate the SVB's future earnings.  As reported by the Washington Post in an article titled, "*Silicon Valley Bank's risk model flashed red. So its executives changed it*":

> Flush with cash from a booming tech industry, **Silicon Valley Bank executives embarked on a strategy in 2020 to juice profits that quickly triggered an internal alarm. In buying longer-term investments that paid more interest, SVB had fallen out of compliance with a key risk metric. An internal model showed that higher**

___

[4] https://www.bloomberg.com/news/articles/2023-03-13/svb-failure-sparks-blame-game-over-trump-era-regulatory-rollback#xj4y7vzkg

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

***interest rates could have a devastating impact on the bank's future earnings, according to two former employees familiar with the modeling who spoke on the condition of anonymity to describe confidential deliberations.***

***Instead of heeding that warning — and over the concerns of some staffers — SVB executives simply changed the model's assumptions, according to the former employees and securities filings.*** The tweaks, which have not been previously reported, initially predicted that rising interest rates would have minimal impact.

The new assumptions validated SVB's profit-driven strategy, but they were profoundly misplaced. Over the past year, interest rates have climbed nearly five percentage points, the fastest pace since the 1980s. Meanwhile, the tech industry has entered a post-pandemic swoon, causing SVB's elite clientele to withdraw cash far faster than bank executives had expected.

On March 8, the bank was forced to raise additional cash by selling securities at a $1.8 billion loss. That touched off panic among SVB clients, who staged one of the biggest bank runs in U.S. history. Fanned by social media, depositors tried to withdraw $42 billion in a single day. The next morning, the bank collapsed and federal regulators took control.

***The episode shows that executives knew early on that higher interest rates could jeopardize the bank's future earnings. Instead of shifting course to mitigate that risk, they doubled down on a strategy to deliver near-term profits, displaying an appetite for risk that set the stage for SVB's stunning meltdown.***

\*        \*        \*

"They thought they could never go wrong," said a former bank official who spoke on the condition of anonymity to discuss internal business practices, recalling an internal stress test in late 2018 or 2019 that showed SVB could lose at least a third of its deposits over two years. Executives directed that that model also be reworked. "If they see a model they don't like," the official said, "they scrap it."

Kate Mitchell, a venture capitalist and chair of the SVB board's risk committee, didn't respond to a request for comment.

The behavior of customers depositing money is a key variable that banks use in developing risk models. One metric, closely tracked by banks and their examiners, estimates future cash flows and how sensitive they are to changes in interest rates. It was this metric, called the economic value of equity, that triggered a warning in mid-2020, according to the former employees.

69.     The Offering Materials failed to disclose the risks from SVB's comparatively narrow, highly concentrated and flighty base of clients which rendered SVB's deposit base particularly at risk.  As Bloomberg reported on April 1, 2023: "There's all these venture-capital funded companies that have $5, $10, $20, $25, sometimes hundreds of millions of dollars parked with this little bank,"

- 16 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

he said. "And you can move money with the click of a mouse now. And then they're all talking to one another. So in retrospect, it's like yeah, should have seen that one coming more easily."[5]

70.     The Offering Materials failed to disclose that the deposit risk the Company faced because it lacked a diversified customer base was amplified by the large percentage of uninsured deposits at SVB.[6]

71.     Because depositors with uninsured deposits are exposed to the danger that they will lose everything if a bank fails, they are much more likely to withdraw their money, triggering a self-fulfilling cycle in which customers withdraw cash, forcing the bank into a fire sale of assets that further drives down their value.  The Offering Materials did not disclose the uninsured depositor risk that SVB faced.

72.     The Offering Materials included additional false and misleading statements.   For example, the Risk Factors section of SVB's 2020 10-K stated:

> **Liquidity risk could impair our ability to fund operations and jeopardize our financial condition.[7]**
>
> Liquidity is essential to our business, both at the SVB Financial and the Bank level. We require sufficient liquidity to meet our expected financial obligations, as well as unexpected requirements stemming from client activity and market changes, such as the unexpected cash outflows that occurred at the onset of the COVID-19 pandemic when certain clients increased utilization of their credit lines. . . . . ***The primary source of liquidity for the Bank is client deposits***. When needed, our liquidity is supplemented by wholesale borrowing capacity in the form of short- and long-term borrowings secured by our portfolio of high-quality investment securities, long-term capital market debt issuances and unsecured overnight funding channels available to us in the Federal Funds market. An inability to maintain or raise funds through these sources could have a substantial negative effect, individually or collectively, on SVB Financial and the Bank's liquidity. Our access to funding sources in amounts adequate to finance our activities, or on terms attractive to us, could be impaired by factors that affect us specifically or the financial services industry in general. For example, ***factors that could detrimentally impact our access to liquidity sources include a decrease in***

---

[5] https://www.bloomberg.com/news/articles/2023-04-01/svb-s-fall-stunned-even-the-one-stock-analyst-who-said-to-sell

[6] While the Federal Deposit Insurance Corporation (FDIC) insures bank deposits up to $250,000, the great majority of deposits in SVB (by value) were above $250,000.

[7] Bolding in original.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

*the level of our business activity due to a market downturn or adverse regulatory action against us, a downturn in asset markets such that the collateral we hold cannot be realized or is liquidated at prices not sufficient to recover the full amount of our secured obligations, a reduction in our credit rating, any damage to our reputation or any other decrease in depositor or investor confidence in our creditworthiness and business. Our access to liquidity could also be impaired by factors that are not specific to us, such as laws and regulations that limit the amount of intercompany dividends that bank subsidiaries may pay, severe volatility or disruption of the financial markets or negative views and expectations about prospects for the financial services industry as a whole.* Any such event or failure to manage our liquidity effectively could affect our competitive position, increase our borrowing costs and the interest rates we pay on deposits, limit our access to the capital markets and have a material adverse effect on our financial condition.

(emphasis added).

73.     The Management's Discussion and Analysis of Financial Condition and Results of Operations ("MD&A") section of SVB's 2020 10-K, incorporated by reference into the Offering Materials, stated:

Net gains on investment securities include gains and losses from our non-marketable and other equity securities, which include public equity securities held as a result of exercised equity warrant assets, as well as gains and losses from sales of our AFS debt securities portfolio, when applicable.

Our non-marketable and other equity securities portfolio primarily represents investments in venture capital and private equity funds, including a joint venture bank in China, debt funds, the newly acquired managed credit platform, private and public portfolio companies and qualified affordable housing projects. We experience variability in the performance of our non-marketable and other equity securities from period to period, which results in net gains or losses on investment securities (both realized and unrealized). This variability is due to a number of factors, including unrealized changes in the values of our investments, changes in the amount of realized gains and losses from distributions, changes in liquidity events and general economic and market conditions. Unrealized gains or losses from non-marketable and other equity securities for any single period are typically driven by valuation changes, and are therefore subject to potential increases or decreases in future periods. Such variability may lead to volatility in the gains or losses from investment securities. As such, our results for a particular period are not necessarily indicative of our expected performance in a future period.

The extent to which any unrealized gains or losses will become realized is subject to a variety of factors, including, among other things, the expiration of certain sales restrictions to which these equity securities may be subject to (e.g. lock-up agreements), changes in prevailing market prices, market conditions, the actual sales or distributions of securities and the timing of such actual sales or distributions, which,

- 18 -

to the extent such securities are managed by our managed funds, are subject to our funds' separate discretionary sales/distributions and governance processes.

Our AFS securities portfolio is a fixed income investment portfolio that is managed with the objective of earning an appropriate portfolio yield over the long-term while maintaining sufficient liquidity and credit diversification as well as addressing our asset/liability management objectives. ***Though infrequent, sales of debt securities in our AFS securities portfolio may result in net gains or losses and are conducted pursuant to the guidelines of our investment policy related to the management of our liquidity position and interest rate risk.***

(emphasis added).

74.    With respect to interest rate derivatives and swaps, the MD&A section of SVB's 2020 10-K, incorporated by reference into the Offering Materials, also stated:

*Client Interest Rate Derivatives*

We sell interest rate contracts to clients who wish to mitigate their interest rate exposure. ***We economically reduce the interest rate risk from this business by entering into opposite way contracts with correspondent banks.*** . . .

*Interest Rate Swaps*

***To manage interest rate risk on our variable-interest rate loan portfolio, we enter into interest rate swap contracts to hedge against future changes in interest rates*** by using hedging instruments to lock in future cash inflows that would otherwise be impacted by movements in the market interest rates.

(emphasis added; italics in original).

75.    With respect to interest rate risk management, SVB's 2020 10-K, incorporated by reference into the Offering Materials, stated:

**Interest Rate Risk Management[8]**

Market risk is defined as the risk of adverse fluctuations in the market value of financial instruments due to changes in market interest rates. ***Interest rate risk is our primary market risk and can result from timing and volume differences in the repricing of our rate-sensitive assets and liabilities, widening or tightening of credit spreads, changes in the general level of market interest rates and changes in the shape and level of the benchmark interest rates. Additionally, changes in interest rates can influence the rate of principal prepayments on mortgage securities, which affects the rate of amortization of purchase premiums and discounts.*** Other market

---

[8] Bolding in original.

risks include foreign currency exchange risk and equity price risk (including the effect of competition on product pricing). These risks and related impacts are important market considerations but are inherently difficult to assess through simulation results. Consequently, simulations used to analyze the sensitivity of net interest income to changes in interest rates will differ from actual results due to differences in the timing and frequency of rate resets, the magnitude of changes in market rates, the impact of competition, fluctuating business conditions and the impact of strategies taken by management to mitigate these risks.

. . .

***Interest rate risk is managed primarily through strategies involving our fixed income securities portfolio, available funding channels and capital market activities. In addition, our policies permit the use of off-balance sheet derivatives, such as interest rate swaps, to assist with managing interest rate risk***.

(emphasis added).

76.    SVB's 2020 10-K, incorporated by reference into the Offering Materials, also represented that the Company had implemented a risk management system to identify and manage risks including market and liquidity risk and that "if" the risk management framework is not effective, the Company "could" suffer losses:

**An ineffective risk management framework could have a material adverse effect on our strategic planning and our ability to mitigate risks and/or losses and could have adverse regulatory consequences.**

We have implemented a risk management framework to identify and manage our risk exposure. This framework is comprised of various processes, systems and strategies, and is designed to manage the types of risk to which we are subject, including, among others, credit, market, liquidity, operational, capital, compliance, strategic and reputational risks. Our framework also includes financial, analytical, forecasting or other modeling methodologies, which involve management assumptions and judgment. In addition, our Board of Directors, in consultation with management, has adopted a risk appetite statement, which sets forth certain thresholds and limits to govern our overall risk profile. However, there is no assurance that our risk management framework, including the risk metrics under our risk appetite statement, will be effective under all circumstances or that it will adequately identify, manage or mitigate any risk or loss to us. If our risk management framework is not effective, we could suffer unexpected losses and become subject to regulatory consequences, as a result of which our business, financial condition, results of operations or prospects could be materially adversely affected.

(emphasis in original).

77.     SVB's 2020 10-K, incorporated by reference into the Offering Materials, also represented that SVB maintained effective controls, that "if" such controls became ineffective, it "may" harm the Company and "could" adversely effect SVB's business, financial condition or results of operation:

> **If we fail to maintain an effective system of internal control over financial reporting, we may not be able to accurately report our financial results. As a result, current and potential holders of our securities could lose confidence in our financial reporting, which would harm our business and the trading price of our securities.**
>
> Maintaining and adapting our internal controls over financial reporting, as required by Section 404 of the Sarbanes-Oxley Act and related rules and regulations of the SEC, can be costly and require significant management attention. As we continue to grow or acquire additional businesses, our internal controls may become more complex and require additional resources to ensure they remain effective amidst dynamic regulatory and other guidance. Failure to maintain effective controls or implement required new or improved controls or difficulties encountered in the process may harm our operating results or cause us to fail to meet our reporting obligations. If we or our independent registered accounting firm identify material weaknesses in our internal controls over financial reporting or if we are otherwise required to restate our financial statements, we could be required to implement costly and time-consuming remedial measures and could lose investor confidence in the accuracy and completeness of our financial reports. We may also face regulatory enforcement or other actions, including the potential delisting of our common stock from the NASDAQ Stock Market. This could have an adverse effect on our business, financial condition or results of operations, as well as the trading price of our securities, and could potentially subject us to litigation.

(emphasis in original).

78.     SVB's 2020 10-K, incorporated by reference into the Offering Materials, also stated that SVB used quantitative models to manage risk, including estimating the effects of changing interest rates, and that the Company "could" face material adverse effects "if" the assumptions in the model are inappropriate or if the models are deficient:

> **We rely on quantitative models to measure risks and to estimate certain financial values.**
>
> Quantitative models may be used to help manage certain aspects of our business and to assist with certain business decisions, including estimating credit losses, measuring the fair value of financial instruments when reliable market prices are unavailable, estimating the effects of changing interest rates and other market measures on our financial condition and results of operations, and managing risk. However, all models have certain limitations. For example, our measurement methodologies rely on many

- 21 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

assumptions, historical analyses and correlations. These assumptions may not capture or fully incorporate conditions leading to losses, particularly in times of market distress, and the historical correlations on which we rely may no longer be relevant. Additionally, as businesses and markets evolve, our measurements may not accurately reflect the changing environment. Further, even if the underlying assumptions and historical correlations used in our models are adequate, our models may be deficient due to errors in computer code, bad data, misuse of data, or the use of a model for a purpose outside the scope of the model's design. Although we employ strategies to manage and govern the risks associated with our use of models, they may not be effective or fully reliable. As a result, our models may not capture or fully express the risks we face, suggest that we have sufficient capitalization when we do not, lead us to misjudge the business and economic environment in which we operate and ultimately cause planning failures or the reporting of incorrect information to our regulators. Any such occurrence or the perception of such occurrence by our regulators, investors or clients could in turn have a material adverse effect on our business, financial condition, results of operations or reputation.

(emphasis in original).

79.     Each of the statements from the Offering Materials excerpted above were false and misleading for numerous reasons.  The Offering Materials failed to disclose that higher interest rates were already jeopardizing the bank's future earnings, and worse, instead of mitigating such risks, SVB had exacerbated those risks by, *inter alia,* overconcentrating in long-duration investments to deliver short-term profits.  Moreover, the Offering Materials failed to disclose that SVB's executives had disregarded duration risks and internal assessments, including recommendations to purchase shorter-term bonds to hedge its balance sheet, which would have offset the material risk of losses from rising interest rates, and instead continued investing in long-term bonds to drive short-term profits. Additionally, the Offering Materials failed to disclose that Defendants ignored internal risk management alarms, had failed to reasonably address and comply with key risk metrics, and had altered assumptions underlying internal models that showed higher interest rates could devastate SVB's future earnings, using unreasonable and improper tweaks to those models to mask the undisclosed risks and facilitate SVB's short-term profit-driven strategy.  The Offering Materials also failed to disclose that SVB lacked effective internal controls, had deficient risk management systems, its holding Company had been rated as deficient under the CAMELS (acronym for Capital adequacy, Assets, Management capability, Earnings, Liquidity, Sensitivity) rating system, regulators had warned SVB that its risk management systems were inadequate and below the Federal Reserve's

expectations, and SVB was already facing many serious operational and technological problems, impairing the Company's ability to track risks, including interest rate risks, among other matters. Further still, the Offering Materials failed to disclose that SVB lacked a diversified customer base, was over-reliant on a small, highly concentrated group of large, uninsured depositors tied into the same, insular venture capital networks, and thus an overwhelmingly inordinate percentage of SVB deposits across that non-diversified customer base was particularly susceptible to the risk of a run on the bank.  Moreover, the Offering Materials failed to disclose that SVB's liquidity was less than represented by Defendants and, in truth, inadequate in view of its customers' business and their collective deposits.  Accordingly, the Offering Materials failed to disclose the extent and severity of the undisclosed material market risks, including the interest rate risk, uninsured depositor risk and liquidity risk that SVB faced.

80.    SVB's 2020 10-K, incorporated by reference into the Offering Materials, also discussed a model for the effect of interest rate changes of 1 and 2 percentage points (100 and 200 basis points). In pertinent part, SVB's 2020 10-K stated:

> ***Rapid deposit growth has exceeded the pace of our loan growth***, and as a result, a significant amount of excess deposits not used to fund loan growth have contributed to the growth of our cash and investments balances. Much of the investment portfolio is held in fixed rate MBS and CMOs which generally have a higher market value sensitivity than variable rate loans or cash. Thus, ***under an upward rate shock scenario, the market value of investments changes more than the market value of deposits resulting in a negative EVE [economic value of equity, defined as the market value of assets, less the market value of liabilities] sensitivity in those scenarios***.

(emphasis added).

81.    These generalized statements were false and misleading for at least the reasons detailed in ¶ 79 as well as the following. First, SVB's deposit growth had not merely exceeded the pace of its loan growth. The Company's loans, which paid higher interest rates and were more profitable than its long-term debt security assets, were highly dependent on the performance of the technology market in Silicon Valley, which had been performing as well as it ever had in 2020, and hence it was unlikely that SVB would be able to substantially increase its loan portfolio without changing its lending model. For example, more than half of SVB's loans were capital call loans,

which are short-term loans to bridge the time between a call for capital from an investment firm's partners to pay for an investment and the actual receipt of the funds. Demand for capital call loans from SVB depended on the frequency of capital calls among venture capital firms investing in technology companies. That frequency was very high by historical standards in 2020 and was unlikely to continue at the same level indefinitely, much less increase. The Offering Materials failed to disclose that SVB could not substantially grow its loan business from its size in 2020.

82.     Second, an upward rate shock would not simply result in a negative economic value of equity, as SVB suggested. It would also decrease liquidity. Hence, just as SVB's assets were decreasing in value, SVB would also need to sell assets to raise cash, resulting in heavy losses.

83.     Third, the effect of an upward rate shock was nonlinear. SVB's simulation—which only tested up to 2 percentage points—showed that an increase of 1 percentage point in interest rates would result in a 5.9% decrease in economic value of equity, and a 2 percentage point increase would result in a 15.4% decrease in economic value of equity. But SVB did not disclose that as interest rates continued to increase (a highly probable outcome), they would exert an exponential effect on SVB's economic value of equity, resulting in total collapse of the Company at around 4-5 percentage points.

### The Offering Materials' False and Misleading Statements and Omissions Regarding Compliance with Generally Accepted Accounting Principles

84.     Despite the Offering Materials' representations to the contrary, SVB violated Generally Accepted Accounting Principles ("GAAP").

85.     GAAP constitutes those standards recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practices at a particular time. The SEC has the statutory authority for the promulgation of GAAP for public companies and has delegated that authority to the Financial Accounting Standards Board (the "FASB") and the American Institute of Certified Public Accountants ("AICPA").  SEC Regulation S-X, Rule 4-01, 17 C.F.R. § 210.4-01(a)(1), provides that financial statements filed with the SEC that are not presented in conformity with GAAP will be presumed to be misleading, despite footnotes or other disclosures.

86.     GAAP consists of a hierarchy of authoritative literature. The highest authority is the Accounting Standards Codification, or ASC, formerly the FASB Statements of Financial Accounting Standards (FAS), followed by FASB Interpretations (FIN), FASB Staff Positions (FSP), Accounting Principles Board Opinions (APB), AICPA Accounting Research Bulletins (ARB), AICPA Statements of Position (SOP), and AICPA Industry Audit and Accounting Guides (AAG). GAAP provides other authoritative pronouncements including, among others, the FASB Concept Statements (FASCON).

87.     As set forth in ASC 105-10-05-1, the FASB Accounting Standards Codification is the source of authoritative GAAP:

> This Topic establishes the Financial Accounting Standards Board (FASB) Accounting Standards Codification® (Codification) as the source of authoritative generally accepted accounting principles (GAAP) recognized by the FASB to be applied by nongovernmental entities. Rules and interpretive releases of the Securities and Exchange Commission (SEC) under authority of federal securities laws are also sources of authoritative GAAP for SEC registrants. In addition to the SEC's rules and interpretive releases, the SEC staff issues Staff Accounting Bulletins that represent practices followed by the staff in administering SEC disclosure requirements, and it utilizes SEC Staff Announcements and Observer comments made at Emerging Issues Task Force meetings to publicly announce its views on certain accounting issues for SEC registrants.

88.     Additionally, under ASC 105-10-05-3, the following non-authoritative sources of accounting guidance may be relevant depending on circumstances, including the specificity of the guidance, the general recognition of the issuer or author as an authority, and the extent of its use in practice:

> Accounting and financial reporting practices not included in the Codification are nonauthoritative. Sources of nonauthoritative accounting guidance and literature include, for example, the following:
>
> a.  Practices that are widely recognized and prevalent either generally or in the industry
> b.  FASB Concepts Statements (FASCON)
> c.  American Institute of Certified Public Accountants (AICPA) Issues Papers
> d.  International Financial Reporting Standards of the International Accounting Standards Board
> e.  Pronouncements of professional associations or regulatory agencies
> f.  Technical Information Service Inquiries and Replies included in AICPA Technical Practice Aids

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

g.   Accounting textbooks, handbooks, and articles.

The appropriateness of other sources of accounting guidance depends on its relevance to particular circumstances, the specificity of the guidance, the general recognition of the issuer or author as an authority, and the extent of its use in practice.

89.   SVB was expected to adhere to fundamental accounting principles that state a Company's financial statements should be presented in a manner which, among other things, should:

(a) Provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions. (FASCON 1 ¶ 34);

(b) Provide information about an enterprise's economic resources, obligations, and owners' equity. That information helps investors, creditors, and others identify the enterprise's financial strengths and weaknesses and assess its liquidity and solvency. (FASCON 1 ¶ 40);

(c) Provide information about an enterprise's financial performance during a period. "Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' and creditors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance." (FASCON 1 ¶ 42);

(d) Include explanations and interpretations to help users understand financial information because management knows more about the enterprise and its affairs than investors, creditors, or other "outsiders" and can often increase the usefulness of financial information by identifying certain transactions, other events, and circumstances that affect the enterprise and explaining their financial impact on it. (FASCON 1 ¶ 54);

(e) Be reliable in that it represents what it purports to represent. That information should be reliable as well as relevant is a notion that is central to accounting. (FASCON 2 ¶¶ 58-59);

(f) Be complete, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions. (FASCON 2 ¶ 79);

(g) Be verifiable in that it provides a significant degree of assurance that accounting measures represent what they purport to represent. (FASCON 2 ¶ 81); and

(h) Reflect that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered. (FASCON 2 ¶¶ 95, 97).

90.   SVB was subject to risks associated with depository and lending institutions. One such risk factor identified by the AICPA in the applicable AAG was "significant declines in customer demand and increasing business failures in either the industry or overall economy," including

- 26 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

"deteriorating economic conditions . . . within industries or geographic regions in which the institution has significant credit concentrations." (Ch. 5, Audit Considerations and Certain Financial Reporting Matters, Ex. 5-1, Fraud Risk Factors).

91.     The AAG identifies another risk factor for lenders as occurring when "[v]acant staff positions remain unfulfilled for extended periods, thereby preventing the proper segregation of duties," and when there exists an "[u]nderstaffed accounting or information technology department, inexperienced or ineffective accounting or information technology personnel, or high turnover."

92.     Among the risk factors the AICPA identifies are "concentration in a particular type of financial instrument" and "a failure by management and those charged with governance to set parameters (for example, trading limits, credit limits, and aggregate market risk limits) and to continuously monitor trading activities against those parameters."

93.     ASC 450 (formerly Statement of Financial Accounting Standards No. 5, Accounting for Contingencies) defines a loss contingency as "an existing condition, situation, or set of circumstances involving uncertainty as to [a] possible . . . loss to an enterprise that will ***ultimately be resolved when one or more future events occur or fail to occur***."  Under ASC 450, a charge to income should be taken if "(1) Information (before financial statements are issued) indicates that it is probable that an asset has been impaired or a liability incurred at the date of the financial statement; and (2) Amount of loss is reasonably estimable.  Further, ASC 450 requires disclosure in the footnotes to the financial statements for material loss contingencies and/or significant risks and uncertainties. The occurrence, or non-occurrence, of a future event meets the definition of a loss contingency under GAAP.  Under ASC 450, disclosing a loss contingency in the notes to the financial statements is ***required*** when there is more than a remote chance that a loss will be incurred (even if a reliable estimate of eventual losses cannot be made at the time). The threshold for disclosure of a loss contingency (as opposed to a higher threshold for the ***accrual*** of a loss contingency) is very low – GAAP requires disclosure if, "***[t]he chance of the future event or events occurring is more than remote but less than likely***." Under ASC 450: "***The disclosure shall indicate the nature of the contingency and shall give an estimate of the possible loss or range of loss or state that such an estimate cannot be made***." Defendants failed to account or disclose the

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

loss contingencies SVB faced, including from material market risks, such as interest rate risk, uninsured depositor risk and liquidity risks.

94.     Contrary to Defendants' representations in the Offering Materials, SVB's incorporated financial statements and other disclosures were not in compliance with GAAP in numerous respects.  SVB had violated of GAAP, including the standards detailed above, by failing to properly account for the following matters.

95.     The Offering Materials failed to disclose that higher interest rates were already jeopardizing the bank's future earnings, and worse, instead of mitigating such risks, SVB had exacerbated those risks by, *inter alia,* overconcentrating in long-duration investments to deliver short-term profits.  Moreover, the Offering Materials failed to disclose that SVB's executives had disregarded duration risks and internal assessments, including recommendations to purchase shorter-term bonds to hedge its balance sheet, which would have offset the material risk of losses from rising interest rates, and instead continued investing in long-term bonds to drive short-term profits.  Additionally, the Offering Materials failed to disclose that Defendants ignored internal risk management alarms, had failed to reasonably address and comply with key risk metrics, and had altered assumptions underlying internal models that showed higher interest rates could devastate SVB's future earnings, using unreasonable and improper tweaks to those models to mask the undisclosed risks and facilitate SVB's short-term profit-driven strategy.  Further, the Offering Materials failed to provide requisite quantitative disclosures to reflect reasonably possible near-term changes to interest rates, thereby misrepresenting and failing to disclose the critical change in the Company's market risk exposure, including interest rate risk, as well as how it would manage such risk.  The Offering Materials also failed to disclose that SVB lacked effective internal controls, had deficient risk management systems, its holding Company had been rated as deficient under the CAMELS (acronym for Capital adequacy, Assets, Management capability, Earnings, Liquidity, Sensitivity) rating system, regulators had warned SVB that its risk management systems were inadequate and below the Federal Reserve's expectations, and SVB was already facing many serious operational and technological problems, impairing the Company's ability to track risks, including interest rate risks, among other matters.  Further still, the Offering Materials failed to disclose that

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

SVB lacked a diversified customer base, was over-reliant on a small, highly concentrated group of large, uninsured depositors tied into the same, insular venture capital networks, and thus an overwhelmingly inordinate percentage of SVB deposits across that non-diversified customer base was particularly susceptible to the risk of a run on the bank.  Moreover, the Offering Materials failed to disclose that SVB's liquidity was less than represented by Defendants and, in truth, inadequate in view of its customers' business and their collective deposits.  Accordingly, the Offering Materials failed to disclose the extent and severity of the undisclosed material market risks, including interest rate risk, uninsured depositor risk and liquidity risks that SVB faced.

**The Offering Materials Falsely and Misleadingly Represented that SVB's Internal Controls Over Financial Reporting Were Effective Despite Pervasive Operational and Technological Issues, Including Critical Problems Tracking Interest Rate Risk**

96.      SVB falsely asserted in its Offering Materials that it maintained effective internal controls over financial reporting. In fact, SVB lacked effective internal controls and the absence of such controls facilitated SVB misrepresenting, among other matters, that:

(a)      It was exposed to significantly less risk, including market risk such as interest rate risk, liquidity risk, and uninsured depositor risk, than was inherent in the assets it held;

(b)      Its risk management personnel and procedures were effective and reliable, when they were not;

(c)      It was able to make reasonable estimates of the fair value of its financial instruments; and

(d)      The fair value of the Company's financial instruments and other assets was reasonable.

97.      COSO defines "internal controls" in Chapter 1 of its Framework as follows:

Internal control is a process, effected by an entity's board of directors, management and other personnel, designed to provide reasonable assurance regarding the achievement of objectives in the following categories: (i) Effectiveness and efficiency of operations; (ii) Reliability of financial reporting; (iii) Compliance with applicable laws and regulations.

98.      Moreover, COSO emphasizes the importance of a strong control environment, which sets a positive "tone at the top" and then flows down through the Company. The COSO Framework

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Executive Summary identifies the pervasive influence that the control environment has on the Company, as follows:

> The control environment sets the tone of an organization, influencing the control consciousness of its people. It is the foundation for all other components of internal control, providing discipline and structure. Control environment factors include the integrity, ethical values and competence of the entity's people; management's philosophy and operating style; the way management assigns authority and responsibility, and organizes and develops its people; and the attention and direction provided by the board of directors.

99.     In addition, the COSO Framework, Ch. 2, establishes that management's philosophy and operating style directly affects the manner in which the company is managed, the amount of risk that the company accepts and ultimately the success of the company. Chapter 2 of the COSO Framework states:

> Management's philosophy and operating style affect the way the enterprise is managed, including the kinds of business risks accepted…Other elements of management's philosophy and operating style include attitudes toward financial reporting, conservative or aggressive selection from available alternative accounting principles, conscientiousness and conservatism with which accounting estimates are developed, and attitudes toward data processing and accounting functions and personnel. . . . The impact of an ineffective control environment could be far reaching, possibly resulting in a financial loss, a tarnished public image or a business failure.

100.     Section 404 of the Sarbanes-Oxley Act of 2002 ("the Sarbanes-Oxley Act") requires management to assess the effectiveness of the internal control structure and the financial reporting for procedures. Management is responsible for performing this assessment in the context of a top-down risk assessment, which requires management to base both the scope of its assessment and the evidence gathered on risk. Management's conclusion of its assessment of the effectiveness of the Company's internal control must be included in the Company's annual report. Moreover, it was crucial for SVB to regularly monitor those controls to verify their operating effectiveness.

101.     Further, SEC rules require management to report publicly all material weaknesses in the Company's internal controls.

102.     Defendants Becker and Beck were required under Rule 302 of the Sarbanes-Oxley Act to provide assurances relating to the Company's "internal control over financial reporting." Rule 302 states as follows:

- 30 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

[E]ach annual report . . . [should] contain an internal control report, which shall: (1) state the responsibility of management for establishing and maintaining an adequate internal control structure and procedures for financial reporting; and (2) contain an assessment, as of the end of the most recent fiscal year of the issuer, of the effectiveness of the internal control structure and procedures of the issuer for financial reporting.

103.    In connection with the Offering Materials, Defendants Becker and Beck executed the applicable Rule 302 certification on March 1, 2021.

104.    The Offering Materials failed to disclose that in January 2019, regulators warned SVB that its risk management systems were inadequate, and also warned SVB in 2020 that its risk management systems were below the Federal Reserve's expectations.  As reported by the Wall Street Journal on March 19, 2023:

The Federal Reserve raised concerns about risk management at Silicon Valley Bank starting at least four years before its failure earlier this month, documents show.

In January 2019, the Fed issued a warning to SVB over its risk-management systems, according to a presentation circulated last year to employees of SVB's venture-capital arm, which was viewed by The Wall Street Journal.

The Fed issued what it calls a Matter Requiring Attention, a type of citation that is less severe than an enforcement action. Regulators are supposed to make sure the problem is addressed, but it couldn't be learned if the Fed held SVB to that standard in 2019.

*        *        *

Following the 2019 warning, the Fed informed SVB in 2020 that its system to control risk didn't meet the expectations for a large financial institution, or a bank holding company with more than $100 billion in assets, the presentation to employees at SVB's venture-capital arm said.

Large banks that don't meet the Fed's expectations are supposed to take corrective action to fix the problems or potentially face enforcement actions.

At that time, the bank was growing quickly as deposits poured in during the early months of the pandemic. The average level of interest-earning assets grew 76% in the first quarter of 2021, compared with the same period one year earlier, the presentation said.

The bank's assets rose to $114 billon at the end of 2020, from about $70 billion in 2019, the year the Fed voiced its concerns. They nearly doubled from 2020 to the end of 2021 to about $209 billion, according to Federal Deposit Insurance Corp. data.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

> The Fed's criticism of SVB's risk-management systems raises the question of "why were they allowed to double their size after that," said Keith Noreika, an executive vice president at Patomak Global Partners who served as acting Comptroller of the Currency in 2017.[9]

105. The Offering Materials failed to disclose that SVB lacked effective internal controls to reduce the risk of material losses from quickly rising interest rates:

> In late 2020, the firm's asset-liability committee received an internal recommendation to buy shorter-term bonds as more deposits flowed in, according to documents viewed by Bloomberg. That shift would reduce the risk of sizable losses if interest rates quickly rose. But it would have a cost: an estimated $18 million reduction in earnings, with a $36 million hit going forward from there.

> Executives balked. Instead, the company continued to plow cash into higher-yielding assets. That helped profit jump 52% to a record in 2021 and helped the firm's valuation soar past $40 billion. But as rates soared in 2022, the firm racked up more than $16 billion of unrealized losses on its bond holdings.

> Throughout last year, some employees pleaded to reposition the company's balance sheet into shorter duration bonds. The asks were repeatedly rejected, according to a person familiar with the conversations. The firm did start to put on some hedges and sell assets late last year, but the moves proved too late.[10]

106. The Offering Materials also failed to disclose that SVB had many serious operational and technological problems and weaknesses which examiners appointed by the Federal Reserve Bank of San Francisco identified, and that triggered formal warnings to SVB's executives.  As reported by Bloomberg on March 17, 2023:

> Just over a year before Silicon Valley Bank's collapse threatened a generation of technology startups and their backers, the Federal Reserve Bank of San Francisco appointed a more senior team of examiners to assess the firm. They started calling out problem after problem.

> As the upgraded crew took over, it fired off a series of formal warnings to the bank's leaders, pressing them to fix serious weaknesses in operations and technology, according to people with knowledge of the matter.

---

[9]https://www.wsj.com/articles/fed-raised-concerns-about-svbs-risk-management-in-2019-4a1d802c

[10]https://www.bloomberg.com/news/articles/2023-03-13/svb-failure-sparks-blame-game-over-trump-era-regulatory-rollback#xj4y7vzkg

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Then late last year they flagged a critical problem: The bank needed to improve how it tracked interest-rate risks, one of the people said, an issue at the heart of its abrupt downfall this month.[11]

107.   The Offering Materials also failed to disclose that SVB had critical problems in tracking interest rate risk including billions of dollars in unrealized losses. As Bloomberg reported on March 31, 2023, Federal Reserve examiners identified this "critical problem" at SVB in late 2022:

Late last year, Fed examiners identified a critical problem: the bank needed to improve how it tracked interest-rate risks. The firm had about $15 billion in unrealized losses at year-end on mortgage-backed securities that it loaded up when rates were lower.[12]

108.   By 2021, as well, SVB's liquidity problems were clear to insiders. According to the *New York Times*, in 2021, "[s]upervisors at the Federal Reserve Bank of San Francisco, which oversaw Silicon Valley Bank, issued six citations" designated as "matters requiring attention" (MRAs) or "matters requiring immediate attention" (MRIAs). The warnings "flagged that the firm was doing a bad job of ensuring that it would have enough easy-to-tap cash on hand in the event of trouble."  The article stated in part:

Silicon Valley Bank's risky practices were on the Federal Reserve's radar for more than a year — an awareness that proved insufficient to stop the bank's demise.

The Fed repeatedly warned the bank that it had problems, according to a person familiar with the matter.

In 2021, a Fed review of the growing bank found serious weaknesses in how it was handling key risks. Supervisors at the Federal Reserve Bank of San Francisco, which oversaw Silicon Valley Bank, issued six citations. Those warnings, known as "matters requiring attention" and "matters requiring immediate attention," flagged that the firm was doing a bad job of ensuring that it would have enough easy-to-tap cash on hand in the event of trouble.

But the bank did not fix its vulnerabilities. By July 2022, Silicon Valley Bank was in a full supervisory review — getting a more careful look — and was ultimately rated deficient for governance and controls. It was placed under a set of restrictions that prevented it from growing through acquisitions. Last autumn, staff members from the

[11]https://www.bloomberg.com/news/articles/2023-03-17/fed-alarms-at-svb-began-more-than-year-ago-as-examiners-changed

[12]https://www.bloomberg.com/news/articles/2023-03-21/svb-s-loans-to-insiders-tripled-to-219-million-before-it-failed?re_source=boa_related

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

San Francisco Fed met with senior leaders at the firm to talk about their ability to gain access to enough cash in a crisis and possible exposure to losses as interest rates rose.

It became clear to the Fed that the firm was using bad models to determine how its business would fare as the central bank raised rates: Its leaders were assuming that higher interest revenue would substantially help their financial situation as rates went up, but that was out of step with reality.

*       *       *

The picture that is emerging is one of a bank whose leaders failed to plan for a realistic future and neglected looming financial and operational problems, even as they were raised by Fed supervisors. For instance, according to a person familiar with the matter, executives at the firm were told of cybersecurity problems both by internal employees and by the Fed — but ignored the concerns.[13]

109.    The Federal Reserve describes MRAs as "a call for action to address weaknesses that could lead to deterioration in a banking organization's soundness. MRAs are confidential and not publicly issued."

110.    The Federal Reserve describes MRIAs as "a call for more immediate action to address acute or protracted weaknesses that could lead to further deterioration in a banking organization's soundness, may result in harm to consumers, or have caused, or could lead to, noncompliance with laws and regulations. MRIAs are confidential and not publicly issued."

111.    Although the MRAs and MRIAs issued by SVB's primary regulator—as well as the risk management failings that led to them—were apparent to SVB, investors remained in the dark.

112.    As explained above and in the Company's regulatory filings, in doing so Defendants Becker and Beck represented to the marketplace that their assessment of internal controls over financial reporting was reliable and based upon the framework established by COSO. Also, Defendants Becker and Beck stated in the Company's Form 10-K filings that "management concluded that the Company's internal control over financial reporting was effective as of" the year ended 2020. These statements were false and misleading because SVB lacked effective internal controls, had deficient risk management systems, its holding Company had been rated as deficient

---

[13]https://www.nytimes.com/2023/03/19/business/economy/fed-silicon-valley-bank.html.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

under the CAMELS (acronym for Capital adequacy, Assets, Management capability, Earnings, Liquidity, Sensitivity) rating system, regulators had warned SVB that its risk management systems were inadequate and below the Federal Reserve's expectations, and SVB was already facing many serious operational and technological problems, impairing the Company's ability to track risks, including interest rate risks, among other matters.  Indeed, SVB lacked effective internal controls, including over market rate risks, interest rate risks, uninsured deposit liability risks and liquidity risks, but instead of mitigating such risks, SVB had exacerbated them by, *inter alia*, overconcentrating in long-duration investments to deliver short-term profits.  Additionally, SVB's executives had disregarded duration risks and internal assessments, including recommendations to purchase shorter-term bonds to hedge its balance sheet, which would have offset the material risk of losses from rising interest rates, and instead continued investing in long-term bonds to drive short-term profits.  Further, Defendants ignored internal risk management alarms, had failed to reasonably address and comply with key risk metrics, and had altered assumptions underlying internal models that showed higher interest rates could devastate SVB's future earnings, using unreasonable and improper tweaks to those models to mask the undisclosed risks and facilitate SVB's short-term profit-driven strategy.  Because SVB's internal controls were ineffective, management's reports on internal control over financial reporting, required by Rule 302 of the Sarbanes-Oxley Act, were materially false and misleading. Defendants Becker's and Beck's statements were false and misleading because SVB's internal controls were significantly deficient and ineffective to prevent or detect errors or misstatements in its operations and financial reporting.

113.   Management's assessment of internal control over financial reporting was a significant matter for investors because it provided assurance that the Company's financial statements were reliable and in compliance with applicable laws. However, SVB did not properly assess its internal controls over financial reporting; it consequently violated the "Internal Control-Integrated Framework" issued by COSO and various other requirements found in the SEC regulations and Sarbanes-Oxley Act.

**The Offering Materials Violated Affirmative Disclosure Obligations Under SEC Regulation S-K**

114.   Regulation S-K, Item 305, sets forth quantitative and qualitative disclosure requirements regarding market risk, including interest rate risk.

115.   As to quantitative disclosures about market risk, Item 305(a) provides registrants three disclosure alternatives: (1) tabular presentation of fair values of the market risk sensitive instruments and contract terms sufficient to determine future cash flows from those instruments, categorized by expected maturity dates; (2) sensitivity analysis disclosures that express the potential loss in future earnings, fair values, or cash flows of market risk sensitive instruments resulting from one or more selected hypothetical changes in interest rates, foreign currency exchange rates, commodity prices, and other relevant market rates or prices over a selected period of time: or (3) value at risk disclosures that express the potential loss in future earnings, fair values, or cash flows of market risk sensitive instruments over a selected period of time, with a selected likelihood of occurrence, from changes in interest rates, foreign currency exchange rates, commodity prices, and other relevant market rates or prices.  17 C.F.R. § 229.305(a)(1)(i)-(iii).

116.   For sensitivity analysis disclosures, Item 305(a)(1)(ii) requires registrants to describe the model, assumptions and parameters necessary to understand the sensitivity analysis disclosures. The instructions to sensitivity analysis disclosures under paragraph 305(a)(1)(ii) make clear that "Registrants should select *hypothetical changes in market rates or prices that are expected to reflect reasonably possible near-term changes in those rates and prices*. In this regard, absent economic justification for the selection of a different amount, registrants should use changes that are not less than 10 percent of end of period market rates or prices."  The same instructions state that "the term reasonably possible has the same meaning as defined by generally accepted accounting principles (*see, e.g.*, FASB ASC Master Glossary). The FASB ASC Master Glossary defines "reasonably possible" as "[t]he chance of the future event or events occurring is more than remote but less than likely."  Moreover, the same instructions state: "For purposes of instruction 3.A. of the Instructions to Paragraph 305(a), the term near term means a period of time going forward up to one year from the date of the financial statements (*see* FASB ASC Master Glossary)."

117.   The instructions to Item 305(a)(1)(ii) also set forth the following requirements:

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Model, assumptions, and parameters that should be described include, but are not limited to, how *loss* is defined by the model (*e.g.*, loss in earnings, fair values, or cash flows), a general description of the modeling technique (*e.g.*, duration modeling, modeling that measures the change in net present values arising from selected hypothetical changes in market rates or prices, and a description as to how optionality is addressed by the model), the types of instruments covered by the model (*e.g.*, derivative financial instruments, other financial instruments, derivative commodity instruments, and whether other instruments are included voluntarily, such as certain commodity instruments and positions, cash flows from anticipated transactions, and certain financial instruments excluded under instruction 3.C.ii. of the General Instructions to Paragraphs 305(a) and 305(b), and other relevant information about the model's assumptions and parameters, (*e.g.*, the magnitude and timing of selected hypothetical changes in market rates or prices used, the method by which discount rates are determined, and key prepayment or reinvestment assumptions).

118.    Contrary to these requirements, the Offering Materials failed to disclose that Defendants ignored internal risk management alarms, had failed to reasonably address and comply with key risk metrics, and had altered assumptions underlying internal models that showed higher interest rates could devastate SVB's future earnings, using unreasonable and improper tweaks to those models to mask the undisclosed risks and facilitate SVB's short-term profit-driven strategy. Additionally, the Offering Materials failed to disclose that higher interest rates were already jeopardizing the bank's future earnings, and worse, instead of mitigating such risks, SVB had exacerbated those risks by, *inter alia,* overconcentrating in long-duration investments to deliver short-term profits.  Moreover, the Offering Materials failed to disclose that SVB's executives had disregarded duration risks and internal assessments, including recommendations to purchase shorter-term bonds to hedge its balance sheet, which would have offset the material risk of losses from rising interest rates, and instead continued investing in long-term bonds to drive short-term profits.

119.    As to qualitative disclosures about market risk, Item 305(b) requires registrants to describe, to the extent material, market risks including interest rate risk:

(i) The registrant's primary market risk exposures;

(ii) How those exposures are managed. Such descriptions shall include, but not be limited to, a discussion of the objectives, general strategies, and instruments, if any, used to manage those exposures; and

(iii) Changes in either the registrant's primary market risk exposures or how those exposures are managed, when compared to what was in effect during the most recently

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

completed fiscal year and what is known or expected to be in effect in future reporting periods.

120.    The instructions accompanying Item 305(b) make clear that "primary market risk exposure" includes "interest rate risk," stating:

1. For purposes of disclosure under paragraph 305(b), primary market risk exposures means:

A. The following categories of market risk: interest rate risk, foreign currency exchange rate risk, commodity price risk, and other relevant market rate or price risks (e.g., equity price risk); and

B.   Within each of these categories, the particular markets that present the primary risk of loss to the registrant. For example, if a registrant has a material exposure to foreign currency exchange rate risk and, within this category of market risk, is most vulnerable to changes in dollar/yen, dollar/pound, and dollar/peso exchange rates, the registrant should disclose those exposures. Similarly, ***if a registrant has a material exposure to interest rate risk and, within this category of market risk, is most vulnerable to changes in short-term U.S. prime interest rates, it should disclose the existence of that exposure.***

2. For purposes of disclosure under paragraph 305(b), registrants should describe primary market risk exposures that exist as of the end of the latest fiscal year, and how those exposures are managed.

121.    As to the materiality assessment required under Item 305, the accompanying instructions make clear that registrants should evaluate:

i. The materiality of the fair values of derivative financial instruments, other financial instruments, and derivative commodity instruments outstanding as of the end of the latest fiscal year; and

ii. The materiality of potential, near-term losses in future earnings, fair values, and/or cash flows from reasonably possible near-term changes in market rates or prices.

iii. If either paragraphs B.i. or B.ii. in this instruction of the General Instructions to Paragraphs 305(a) and 305(b) are material, the registrant should disclose quantitative and qualitative information about market risk, if such market risk for the particular market risk exposure category is material.

122.    In conducting the materiality assessment, moreover, "registrants generally should not net fair values, except to the extent allowed under generally accepted accounting principles," and "registrants should consider, among other things, the magnitude of:

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

i. Past market movements;

ii. Reasonably possible, near-term market movements; and

iii. Potential losses that may arise from leverage, option, and multiplier features."

123.    The SEC's Office of the Chief Accountant and the Division of Corporation Finance has provided the following guidance on determining whether its market risk exposures are material enough to require the quantitative and qualitative disclosures under Item 305:

To determine if the quantitative and qualitative disclosures must be furnished, a company must perform the following procedure:

Step 1: Categorize its market risk sensitive instruments into two portfolios: instruments entered into for trading purposes, and all other instruments.

Step 2: further categorize instruments within the two portfolios by type of market risk exposure category (interest rate risk, foreign currency exchange rate risk, commodity price risk, etc.).

Step 3: the company must assess the materiality of the market risk exposure for each category within each portfolio. ***This assessment must evaluate both (1) the materiality of the fair values of market sensitive instruments as of the end of the latest fiscal year, and (2) the materiality of potential, near-term losses in future earnings, fair values and cash flows from reasonably possible near-term changes in market rates or prices. If either is material, then the company should disclose the quantitative and qualitative information for that particular market risk exposure***. For these tests, registrants should not net favorable and unfavorable fair values, except where allowed under generally accepted accounting principles.

For example, assume a company has both a trading and non-trading portfolio. Each portfolio contains instruments that expose the company to changes in interest rates, foreign currency exchange rates, and commodity prices.

The company initially determines whether the fair values of market risk sensitive instruments were material at period end. If they were material, disclosure is material. If the fair values at period end were not material, the company would assess whether the interest rate sensitive instruments in its trading portfolio create a material exposure to changes in interest rates. That assessment should be made based on of [sic] fair values, cash flows, or earnings. If any of those measures is material, the company would provide quantitative information regarding its interest rate sensitive trading portfolio. Similar assessments are necessary for interest rate sensitive instruments in its non-trading portfolio, and all other exposures.

Quantitative disclosures are required only for material exposures. Thus, if the company's only material exposure is to changes in interest rates in its trading portfolio,

it must present quantitative information only for that specific exposure. Quantitative disclosures about other, immaterial exposures are elective.[14]

124. With respect to sensitivity analysis disclosures, the SEC's Office of the Chief Accountant and the Division of Corporation Finance further directed that:

Companies using sensitivity analysis should select hypothetical changes in market rates or prices that are expected to reflect reasonably possible near-term changes in those rates and prices. Companies should use changes not less than 10% of end-of-period market rates or prices unless there is economic justification for a different amount. The rule provides that the magnitude of selected hypothetical changes in rates or prices may differ among and within market risk exposure categories.

\*       \*       \*

Companies must select hypothetical changes in market rates or prices that are expected to reflect reasonably possible near-term changes in those rates and prices. The rules specified the use of a change that is not less than 10%, unless there is justification for using another amount. If a company has sufficient historical data indicating that a reasonably possible near-term change will be an amount less than 10%, it may use that amount. The Company should disclose why it chose a hypothetical change less than 10%.[15]

125. The SEC's Office of the Chief Accountant and the Division of Corporation Finance also made clear that Item 305 requires the following qualitative disclosures about market risks:

Qualitative disclosure about interest rate risk in a non-trading portfolio would include:

1) the nature of the interest rate exposure,

2) how interest rate risks are managed,

3) changes in interest rate exposures or how the interest rate exposures were managed when compared to the conditions that existed during the most recently completed fiscal year, and

4) known trends in interest rates, or anticipated rates in future reporting periods.

---

[14] https://www.sec.gov/divisions/corpfin/guidance/derivfaq.htm

[15] https://www.sec.gov/divisions/corpfin/guidance/derivfaq.htm

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

126.    The Offering Materials failed to provide the required disclosures under Item 305.  The quantitative disclosures violated Item 305 because they failed to reflect "reasonably possible near term changes."  Instead, SVB used only a maximum 200 bps rate increase.  It was reasonably possible at the time of the Offering Materials that the Federal Reserve would (as it ultimately did) raise interest rates to a greater degree.

127.    The Offering Materials qualitative disclosures also violated Item 305, as they misrepresented and failed to disclose the critical change in the Company's market risk exposure, including interest rate risk, as well as how it would manage such risk.  Further, the Offering Materials failed to disclose that Defendants ignored internal alarms, failed to comply with key risk metrics, and engineered assumptions to internal models that showed that higher interest rates could devastate the SVB's future earnings, making unreasonable and improper tweaks to the model to validate and advance SVB's profit-driven strategy.

128.    SEC Regulation S-K, Item 105, requires disclosure of "material" risk factors.  As detailed therein, the "Risk Factor" section of the Offering Materials must "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105.[16]  Item 105 requires disclosure of the risks to which reasonable investors would attach importance in making investment or voting decisions.  Contrary to Item 105's requirements, the Offering Materials failed to disclose the material risk that higher interest rates were already jeopardizing the bank's future earnings, and worse, instead of mitigating such risks, SVB had exacerbated those risks by, inter alia, overconcentrating in long-duration investments to deliver short-term profits.  Moreover, the Offering Materials failed to disclose the material risk that SVB's executives had disregarded duration risks and internal assessments, including recommendations to purchase shorter-term bonds to hedge its balance sheet, which would have offset the material risk of losses from rising interest rates, and instead continued investing in long-term bonds to drive short-term profits. Additionally, the Offering Materials failed to disclose that Defendants ignored internal risk management alarms, had failed to reasonably

---

[16] Before April 2, 2019, current Item 105 was Item 503(c).

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

address and comply with key risk metrics, and had altered assumptions underlying internal models that showed higher interest rates could devastate SVB's future earnings, using unreasonable and improper tweaks to those models to mask the undisclosed risks and facilitate SVB's short-term profit-driven strategy.  The Offering Materials also failed to disclose the material risks from SVB lacking effective internal controls, having deficient risk management systems, its holding Company had been rated as deficient under the CAMELS (acronym for Capital adequacy, Assets, Management capability, Earnings, Liquidity, Sensitivity) rating system, regulators warning SVB that its risk management systems were inadequate and below the Federal Reserve's expectations, and that SVB was already facing many serious operational and technological problems, impairing the Company's ability to track risks, including interest rate risks, among other matters.  Further still, the Offering Materials failed to disclose the material risks from SVB lacking a diversified customer base, being over-reliant on a small, highly concentrated group of large, uninsured depositors tied into the same, insular venture capital networks, and thus an overwhelmingly inordinate percentage of SVB deposits across that non-diversified customer base being particularly susceptible to the risk of a run on the bank.  Moreover, the Offering Materials failed to disclose the material risks from SVB's liquidity being less than represented by Defendants and, in truth, inadequate in view of its customers' business and their collective deposits.  Additionally, the Offering Materials failed to disclose the material risks from SVB largely *not* managing its interest rate risk in its fixed income securities portfolio— in fact, it faced enormous interest rate risk from that portfolio. And the Offering Materials failed to disclose the material risks from SVB making grossly inadequate use of derivatives or other hedging strategies, such as interest rate swaps, to mitigate interest rate risk.  While the Offering Materials' discussion of risk factors listed market and liquidity risks in vague and generic terms, it did not even mention the actual material risks posed by the foregoing, much less adequately describe those risks as required by Item 105.

129.    SEC Regulation S-K, Item 303, requires that management's discussion and analysis (MD&A) "[i]dentify any known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way" and "[d]escribe any known trends or uncertainties that

have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303. Contrary to Item 303's requirements, the Offering Materials failed to disclose the material market risks, including the interest rate risk, uninsured depositor risk and liquidity risk that SVB faced, and which resulted in, and were reasonably likely to result in, SVB's liquidity materially decreasing and having a materially unfavorable impact on SVB's revenues and income.  As detailed herein, the Offering Materials failed to disclose that higher interest rates were already jeopardizing the bank's future earnings, and worse, instead of mitigating such risks, SVB had exacerbated those risks by, *inter alia,* overconcentrating in long-duration investments to deliver short-term profits.  Moreover, the Offering Materials failed to disclose that SVB's executives had disregarded duration risks and internal assessments, including recommendations to purchase shorter-term bonds to hedge its balance sheet, which would have offset the material risk of losses from rising interest rates, and instead continued investing in long-term bonds to drive short-term profits. Additionally, the Offering Materials failed to disclose that Defendants ignored internal risk management alarms, had failed to reasonably address and comply with key risk metrics, and had altered assumptions underlying internal models that showed higher interest rates could devastate SVB's future earnings, using unreasonable and improper tweaks to those models to mask the undisclosed risks and facilitate SVB's short-term profit-driven strategy. The Offering Materials also failed to disclose that SVB lacked effective internal controls, had deficient risk management systems, its holding Company had been rated as deficient under the CAMELS (acronym for Capital adequacy, Assets, Management capability, Earnings, Liquidity, Sensitivity) rating system, regulators had warned SVB that its risk management systems were inadequate and below the Federal Reserve's expectations, and SVB was already facing many serious operational and technological problems, impairing the Company's ability to track risks, including interest rate risks, among other matters.  Further still, the Offering Materials failed to disclose that SVB lacked a diversified customer base, was over-reliant on a small, highly concentrated group of large, uninsured depositors tied into the same, insular venture capital networks, and thus an overwhelmingly inordinate percentage of SVB deposits across that non-diversified customer base was particularly susceptible to the risk of a run on the bank.  Moreover, the Offering Materials failed

to disclose that SVB's liquidity was less than represented by Defendants and, in truth, inadequate in view of its customers' business and their collective deposits. These undisclosed trends, events, uncertainties and their likely consequences, were known at the time and thus Item 303 required disclosure.

## KPMG's Liability

### Overview of Allegations Against KPMG

130.    KPMG audited SVB's financial statements and its system of internal controls over financial reporting for the year ended December 31, 2020 ("FY2020").  KPMG also issued and signed audit opinions in which it certified that KPMG's internal controls were effective and that the Company's financial statements were free of material misstatements and fairly presented SVB's financial position.

131.    The 2020 10-K includes as Item 8 a "Report of Independent Registered Public Accounting Firm," signed by KPMG. The KPMG Report states in relevant part:

*Opinions on the Consolidated Financial Statements and Internal Control Over Financial Reporting*

We have audited the accompanying consolidated balance sheets of SVB Financial Group and subsidiaries (the Company) as of December 31, 2020 and 2019, the related consolidated statements of income, comprehensive income, stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2020, and the related notes (collectively, the consolidated financial statements). We also have audited the Company's internal control over financial reporting as of December 31, 2020, based on criteria established in *Internal Control – Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of December 31, 2020 and 2019, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2020, in conformity with U.S. generally accepted accounting principles. **Also in our opinion, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2020 based on criteria established in *Internal Control – Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission**.

(bolding added; italics in original).

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

132.    KPMG consented to the incorporation by reference of its above-described report concerning the effectiveness of SVB's internal controls into the Offering Materials. Specifically, the Offering Materials included as an exhibit a "Consent of Independent Registered Public Accounting Firm" that provides in relevant part:

> We consent to the use of our report dated March 1, 2021, with respect to the consolidated balance sheets of SVB Financial Group as of December 31, 2020 and 2019, the related consolidated statements of income, comprehensive income, stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2020, and the related notes, and the effectiveness of internal control over financial reporting as of December 31, 2020, incorporated herein by reference and to the reference to our firm under the heading "Experts" in this prospectus.

133.    KPMG's unqualified opinions on SVB's financial statements, incorporated by reference into the Offering Materials, were materially false and misleading.  Contrary to its representations, KPMG's audits of those financial statements were not conducted in accordance with Generally Accepted Auditing Standards ("GAAS") or Public Company Accounting Oversight Board ("PCAOB") standards, and SVB's financial condition and results of operations were not presented in conformity with GAAP.  These representations were materially false and misleading because, as set forth above, SVB's financial statements for FY2020 did not present fairly, in all material respects the Company's results of operations or its financial condition in accordance with GAAP.  Further, in certifying SVB's financial statements and internal controls, KPMG specifically represented (based on its GAAS audit) that the Company maintained effective internal controls over financial reporting as of December 31, 2020. In other words, KPMG's certification represented to investors that it purportedly conducted an audit in compliance with GAAS, and that the audit included a factual basis to conclude that SVB had effective internal controls. In truth, however, in violation of GAAS, KPMG disregarded the numerous, significant internal control deficiencies. Contrary to its statements, KPMG's audit did not constitute a reasonable investigation of whether the Company's management's assessment of internal controls was properly and accurately presented. Alternatively, to the extent KPMG's statements that it conducted its audit in accordance with GAAS are deemed statements of opinion or belief, those statements were false and misleading, lacked a reasonable

1   basis, or did not rest on a meaningful inquiry. Further, KPMG omitted to inform investors that its

2   audit did not show a sufficient factual basis to conclude that SVB had effective internal controls.

3       134.   In issuing unqualified audit opinions and consenting to their incorporation in SVB's

4   SEC filings, KPMG made false and misleading statements in violation of Section 11 of the Securities

5   Act.

6       **Overview of GAAS**

7       135.   As SVB's external auditor, KPMG was required to audit the Company's financial

8   statements and the effectiveness of SVB's internal controls over financial reporting in accordance

9   with GAAS.

10      136.   The PCAOB, established by the Sarbanes-Oxley Act of 2002, is responsible for the

11  development of auditing and related professional practice standards that are required to be followed

12  by registered public accounting firms. On April 16, 2003, the PCAOB adopted as its interim

13  standards GAAS as described by the AICPA Auditing Standards Board's SAS No. 95, Generally

14  Accepted Auditing Standards, and related interpretations in existence on that date. Accordingly, an

15  auditor's reference to "the standards of the Public Accounting Oversight Board (United States)"

16  includes a reference to GAAS in existence as of April 16, 2003. For simplicity, all references to

17  GAAS hereinafter include the standards of the PCAOB. The standards adopted by PCAOB that also

18  have been approved by the SEC are designated with the prefix "AS." Preexisting interim standards

19  that have been adopted by the PCAOB are designated by the prefix "AU."

20      137.   GAAS is comprised of ten standards that establish the quality of an auditor's

21  performance and the overall objectives to be achieved in a financial statement audit. Auditors are

22  required to follow those standards in each and every audit they conduct.

23      138.   The GAAS standards fall into three categories: General Standards; Fieldwork

24  Standards; and Reporting Standards. The General Standards require, among other things, that the

25  auditor exercise professional skepticism. The General Standards provide guidance to an auditor on

26  the exercise of due professional care in the performance of the audit.  The Field Work Standards

27  require, among other things, that an auditor obtain a sufficient understanding of the entity's business

28  and operating environment to properly plan an audit in accordance with GAAS. Finally, the

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Reporting Standards require that an auditor express an opinion on the financial statements of a company taken as a whole, or an assertion to the extent that an opinion cannot be expressed.

139.    An audit is a risk-based process during which the auditor should exercise due care. An auditor should be always aware of the risk of misstatements due to fraud or error.  As those risks increase or materialize, auditors are obligated by GAAS and PCAOB standards to alter their audit procedures accordingly.  KPMG failed to recognize glaring risks, and consequently, failed to adjust its audit procedures, leading to an unqualified audit report that was materially false and misleading.

140.    KPMG violated GAAS Standard of Reporting No. 1, which requires the audit report to state whether the financial statements are presented in accordance with GAAP. KPMG's audit opinion inaccurately represented that SVB's FY2020 Financial Statements were presented in conformity with GAAP when, as alleged herein, they were not.

141.    KPMG failed to exercise sufficient professional care in its audits of SVB's financial statements, and thus violated GAAS General Standard No. 3, which requires due professional care to be exercised in the performance of the audit and the preparation of the report.  AU § 150.02. KPMG violated General Standard No. 3 by, among other things, disregarding SVB's internal control deficiencies detailed herein.  KPMG also failed to exercise sufficient professional care in its audits of SVB's financial statements, and thus violated AU § 230, Due Professional Care in the Performance of Work, which states that "[d]ue professional care imposes a responsibility upon each professional within an independent auditor's organization to observe the standards of field work and reporting."  AU § 230.02.  The duty to exercise due care required KPMG to obtain reasonable assurances that the financial statements were free from material misstatement, whether caused by error or fraud.  AU § 230.10.  KPMG did not obtain such assurances.  As detailed above, due to the presence of multiple red flags, KPMG knew or should have known that there was a strong possibility of material misstatements in connection with SVB's financial statements for the FY2020 and the representation that SVB's internal controls were effective.

142.    KPMG should have been aware that there was a heightened risk associated with the market risks, including the interest rate risk, uninsured depositor risk and liquidity risk, that SVB faced.  That heightened risk obligated KPMG to perform more stringent and rigorous audit

procedures compared to those it otherwise performed.  For example paragraphs 6 and 9 of AS No. 13, The Auditor's Responses to the Risk of Material Misstatements, state the following:

> The auditor also should determine whether it is necessary to make pervasive changes to the nature, timing, or extent of audit procedures to adequately address the assessed risks of material misstatement.  Examples of such pervasive changes include modifying the audit strategy to: (a) increase the substantive testing of the valuation of numerous significant accounts at year end because of significantly deteriorating market conditions, and (b) obtain more persuasive audit evidence from substantive procedures due to the identification of pervasive weaknesses in the company's control environment.
>
> *       *       *
>
> In designing the audit procedures to be performed, the auditor should . . . obtain more persuasive audit evidence the higher the auditor's assessment of risk.

143.    AS No. 13.14 provides specific examples of how KPMG should have modified its audit procedures to address its assessed risks.  In that regard, KPMG should have:

> (a) Chang[ed] the nature of audit procedures to obtain evidence that is more reliable or to obtain additional corroborative information;
> (b) Chang[ed] the timing of audit procedures to be closer to the end of the period or to the points during the period in which fraudulent transactions are more likely to occur; and
> (c) Chang[ed] the extent of the procedures applied to obtain more evidence, *e.g.*, by increasing sample sizes or applying computer-assisted audit techniques to all of the items in an account.

144.    In failing to modify its audit procedures, KPMG failed to comply with AS No. 13. Had KPMG appropriately modified its audit procedures to be responsive to the risk of material misstatements, including of the Company's financial statements or its internal controls, and carried out those procedures with the appropriate degree of professional skepticism, it would have discovered that the Company's financial statements failed to account for material market risks, including interest rate risk, uninsured depositor risk and liquidity risk, and that the Company's internal controls were ineffective.

145.    KPMG also failed to obtain sufficient appropriate evidentiary matter regarding the market risks that SVB faced, such as interest rate risk, uninsured depositor risk and liquidity risk, as well as the effectiveness or ineffectiveness of SVB's internal controls. KPMG also did not comply with PCAOB auditing standards.  For example, KPMG violated GAAS Standard of Fieldwork Nos. 2 and 3, which require an independent auditor to obtain, through inspection, observation, inquiries

- 48 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

and confirmations, competent, sufficient appropriate evidentiary matter to afford a reasonable basis for: (1) the opinion regarding the financial statements and (2) the opinion regarding internal control over financial reporting.  KPMG likewise violated AS No. 15: Audit Evidence, which provides that an auditor has a reasonable basis for issuing an audit opinion when the auditor has planned and performed audit procedures in a manner that enables the auditor to obtain "sufficient appropriate audit evidence." AS No. 5 defines sufficiency as "the measure of the quantity of audit evidence" and appropriateness as "the measure of the quality of audit evidence." AS No. 15 also states that "as the risk increases, the amount of evidence that the auditor should obtain also increases. . . . [O]rdinarily more evidence is needed to respond to significant risks."  Despite ample indicators of increased market risks, including interest rate risk, uninsured depositor risk and liquidity risk, as well as glaring indicators of the ineffectiveness of SVB's internal controls, KPMG failed to obtain more evidence than it typically would in the absence of increased risk.  In addition, AS No. 14, Evaluating Audit Results, provides that when evaluating whether the financial statements as a whole are free of material misstatement, the auditor should evaluate the qualitative aspects of the company's accounting practices, including potential bias in management's judgments about the amounts and disclosures in the financial statements.

146.    KPMG also violated GAAS Standards of Reporting Nos. 1 and 4[17] by falsely representing that SVB's financial statements were presented in conformity with GAAP when they were not and by improperly providing unqualified opinions on SVB's financial statements for FY202, even though its audits were not conducted in accordance with PCAOB auditing standards and the financial statements were not prepared in accordance with GAAP.  As a result of KPMG's violations of GAAS set forth above, it also violated Standard of Reporting Nos. 1 and 4 because KPMG had an insufficient basis to express an unqualified opinion on its FY2020 audit of SVB.

147.    Had KPMG performed its audit in accordance with the standards of the PCAOB, it would have recognized that SVB's FY2020 financial statements were not presented in conformity

---

[17] Standard of Reporting No. 4 requires an auditor to express an opinion on the financial statements of a company taken as a whole, or to state that an opinion cannot be expressed. AU § 150.02.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1  with GAAP and could not be relied upon. In other words, KPMG failed to obtain sufficient

2  appropriate audit evidence as required by applicable auditing standards.

3       148.   Under AS No. 5, KPMG was required to complete a careful examination regarding

4  SVB's effective controls over financial reporting.  PCAOB's rulemaking in connection with AS No.

5  5 makes clear that KPMG could not simply rely on the assessment of internal controls reached and

6  communicated to it by SVB's management or third parties but was instead required to conduct its

7  own independent assessment of internal controls before it could issue a "clean" opinion.  According

8  to AS No. 5: "The auditor is required to provide an independent opinion on the effectiveness of the

9  company's internal control over financial reporting. . . . The auditor cannot obtain sufficient evidence

10  to support an opinion on the effectiveness of internal controls based solely on observation of or

11  interaction with the company's controls.  Rather, the auditor needs to perform procedures such as

12  inquiry, observation, and inspection of documents, or walkthroughs, which consist of a combination

13  of these procedures, in order to fully understand and identify the likely sources of potential

14  misstatements[.]" After performing an independent analysis, an independent auditor is not permitted

15  to issue a clean opinion if any "material weaknesses" exist.

16       149.   KPMG's public statements that its audits were conducted in accordance with GAAS

17  were materially false and misleading.  Further, KPMG's certifications and representations were false

18  and misleading. The above-described misrepresentations and omissions, SVB's failure to adequately

19  manage interest rate risk, and its attendant collapse demonstrate significant deficiencies in SVB's

20  internal controls. In his prepared Senate testimony, Michael S. Barr, the Vice Chair for Supervision

21  of the Board of Governors of the Federal Reserve System, attributed SVB's failure to "inadequate

22  risk management and internal controls that struggled to keep pace with the growth of the bank."

23  These risk management and internal control failures prompted six "supervisory findings" in late

24  2021 which included the MRAs and MRIAs described at ¶¶ 108-111, above.

25      **DEFENDANTS' MISSTATEMENTS AND OMISSIONS WERE MATERIAL**

26       150.   With the foregoing misrepresentations and omissions in the Offering Materials,

27  Defendants were able to complete the Merger.  But as the truth of Defendants' misrepresentations

28  and omissions became clear, the price of SVB shares plunged, and the stock ultimately lost all value.

151.    In April 2022, SVB terminated its Chief Risk Officer Laura Izurieta, paying her severance of over $7.1 million. SVB did not fill the position of Chief Risk Officer until Kim Olson "succeeded to the role of Chief Risk Officer on December 27, 2022."

152.    Throughout 2022, and continuing in the first three months of 2023, as interest rates rose, depositors withdrew substantial funds from SVB, exhausting the cash that the Company kept on hand to handle day-to-day deposits and withdrawals. Deposits fell from $198 billion at the end of March 2022 to $173 billion at the end of 2022 and to $165 billion at the end of February 2023.

153.    Much of the rest of the Company's funds were tied up in long-term HTM securities. Many of those investments were purchased when the Company's deposits skyrocketed in 2020 and 2021 and thus would not mature—and return the principal invested in them—until several years in the future.

154.    To raise cash, SVB decided to sell AFS securities. According to SVB's 2022 disclosure on Form 10-K, as of December 31, 2022, SVB held roughly $26 billion in AFS securities. By March 8, 2023, the Company had sold substantially all of these securities.  Due to the rise in interest rates, however, SVB sold these securities at a $1.8 billion loss.

155.    According to Axios, early in the week of February 27, 2023, SVB was informed that the credit rating agency Moody's was considering a double downgrade of SVB's debt. SVB asked Moody's to postpone the downgrade, and Moody's agreed.

156.    By the middle of the week, SVB was speaking with Goldman Sachs and private equity firms about raising capital. The next week, in early March 2023, SVB decided to sell $2.25 billion in shares to raise revenue, including $500 million to private equity firm General Atlantic.

157.    On March 8, 2023, Moody's downgraded SVB's debt. On the same day, SVB announced its $1.8 billion loss and its plan to sell $2.25 billion in shares to raise revenue (though the Company had not found investors to purchase all the shares it intended to sell).

158.    SVB stated in a March 8 letter to investors:

> The sale of substantially all of our AFS securities will enable us to increase our asset sensitivity, particularly lock in funding costs, better insulate net interest income (NII) and net interest margin (NIM) from the impact of higher interest rates, and enhance profitability.

. . .

> While ***we will realize a one-time, post tax earnings loss of approximately $1.8 billion*** in connection with the sale, we expect the reinvestment of the proceeds to be immediately accretive to net interest income (NII) and net interest margin (NIM), resulting in a short payback period of approximately three years.

(emphasis added).

159.    The market immediately reacted, with the price of SVB's shares dropping more than 60% the next day.

160.    On March 9, 2023, Peter Thiel's Founders Fund, which invests in and advises many startups and is closely watched by other market participants, began advising startups to withdraw their money from SVB.

161.    Depositors, including from SVB's startup-heavy depositor base, began to rapidly withdraw their deposits, a sequence of events partially driven by the fact that the bulk of SVB's startup-heavy deposit base was not FDIC insured.  By the end of 2022, over 95% of the value of the deposits at SVB was not backed by FDIC insurance.

162.    Because the great majority of deposits at SVB were not FDIC insured, when news of trouble at SVB began to spread, depositors feared that they might lose their deposited funds. These fears sparked a bank run. On March 9, 2023, depositors attempted to withdraw $42 billion from their accounts at Silicon Valley Bank.

163.    On March 10, 2023, the California Department of Financial Protection and Innovation took possession of Silicon Valley Bank, ordered that it be liquidated, and named the FDIC as the receiver. On March 13, 2023, the FDIC transferred all deposits to a new FDIC-operated bank, Silicon Valley Bridge Bank, N.A.

164.    On March 17, 2023, SVB announced it had filed for bankruptcy. Its stock has since lost substantially all of its value.

165.    Thus, while depositors are being made whole, SVB stockholders have been wiped out. They have received nothing, and their shares are now virtually worthless.

## CLASS ACTION ALLEGATIONS

166.     Plaintiff brings this action as a class action on behalf of all persons who acquired SVB common stock int her Merger exchange pursuant to the Offering Materials (the "Class").  Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

167.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by SVB or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

168.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of law that is complained of herein.

169.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

170.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the Securities Act;

(b)     whether the Offering Materials were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

171.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**

**For Violation of § 11 of the Securities Act**
**Against All Defendants**

172.   Plaintiff incorporates all the foregoing by reference.

173.   This Cause of Action is brought pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

174.   This Count alleges and sounds in strict liability. This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.

175.   The Offering Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

176.   Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

177.   The Individual Defendants each signed or were named as Directors in the Offering Materials. As such, each is strictly liable for the material misrepresentations in the Offering Materials and the failure of the Offering Materials to be complete and accurate. Each Individual Defendant had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Materials  and ensure that the representations in the Offering Materials were true and accurate, that there were no omissions of material facts that would render the Offering Materials misleading, and that the Offering Materials contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misrepresentations and omissions contained in the Offering Materials and should have

known of the omissions of material facts necessary to make the statements made therein not misleading or otherwise required to be stated therein.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class under Section 11 for the material misrepresentations and omissions in the Offering Materials, and the failure of the Offering Materials to be complete and accurate.

178.    Defendant KPMG consented to the incorporation of its audit report in the Offering Materials.  KPMG did not conduct a reasonable audit of SVB in compliance with GAAS and did not have reasonable ground to state that KPMG's audit report included or incorporated by reference in the Offering Materials was true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

179.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading.

180.    Defendant Eric A. Benhamou served on SVB's Board within the scope of his employment as Chairman and Chief Executive Officer of Defendant Benhamou Global Ventures, LLC, signed the Registration Statement at the direction of Defendant Benhamou Global Ventures, LLC.  Defendant Allison Davis served on SVB's within the scope of her employment as Co-Founder and Managing Partner of Defendant Fifth Era, signed the Registration Statement at the direction of Defendant Fifth Era.  Defendant Kate D. Mitchell served on SVB's within the scope of her employment as a Partner and Co-Founder of Defendant Scale Venture Partners, signed the Registration Statement at the direction of Defendant Scale Venture Partners.  The Venture Capital Defendants are thus strictly liable under *respondeat superior* for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless the Venture Capital Defendants carry the burden of establishing an affirmative "due diligence" defense.  The Venture Capital Defendants had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement and ensure that they were true and accurate, there were no omissions of material facts that would make the Registration Statement misleading, and the document contained all facts required to be stated therein.  In the exercise of reasonable care, the Venture Capital Defendants should have

known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, the Venture Capital Defendants are liable to Plaintiffs and the Class.

181. By reason of the conduct herein alleged, each Defendant violated, or controlled an employee or other person who violated, § 11 of the Securities Act.

182. Plaintiff acquired SVB shares pursuant to the Offering Materials.

183. Plaintiff and the Class have sustained damage. The value of SVB common stock has declined substantially subsequent to and due to defendants' violations.

184. At the time of their acquisition of SVB shares, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action. Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

## SECOND CAUSE OF ACTION

### For Violation of § 12(a)(2) of the Securities Act
### All Defendants Except KPMG

185. Plaintiff incorporates all the foregoing by reference.

186. This Count is brought pursuant to § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class against the Individual Defendants.

187. This Count alleges and sounds in strict liability. This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.

188. The prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased SVB shares pursuant to the prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1    were true and that there was no failure to state a material fact required to be stated in order to make

2    the statements contained therein not misleading. Defendants, in the exercise of reasonable care,

3    should have known of the misstatements and omissions contained in the prospectus as set forth

4    above.

5          189.    Defendant Eric A. Benhamou served on SVB's Board within the scope of his

6    employment as Chairman and Chief Executive Officer of Defendant Benhamou Global Ventures,

7    LLC, signed the Offering Materials at the direction of Defendant Benhamou Global Ventures, LLC.

8    Defendant Allison Davis served on SVB's within the scope of her employment as Co-Founder and

9    Managing Partner of Defendant Fifth Era, signed the Offering Materials at the direction of Defendant

10   Fifth Era.  Defendant Kate D. Mitchell served on SVB's within the scope of her employment as a

11   Partner and Co-Founder of Defendant Scale Venture Partners, signed the Offering Materials at the

12   direction of Defendant Scale Venture Partners.  The Venture Capital Defendants are thus strictly

13   liable under *respondeat superior* for the materially inaccurate statements contained in the Offering

14   Materials and the failure of the Offering Materials to be complete and accurate, unless the Venture

15   Capital Defendants carry the burden of establishing an affirmative "due diligence" defense.  The

16   Venture Capital Defendants had a duty to make a reasonable and diligent investigation of the

17   truthfulness and accuracy of the statements contained in the Offering Materials and ensure that they

18   were true and accurate, there were no omissions of material facts that would make the Offering

19   Materials misleading, and the document contained all facts required to be stated therein.  In the

20   exercise of reasonable care, the Venture Capital Defendants should have known of the material

21   misstatements and omissions contained in the Offering Materials and also should have known of the

22   omissions of material facts necessary to make the statements made therein not misleading.

23   Accordingly, the Venture Capital Defendants are liable to Plaintiffs and the Class.

24         190.    By means of the prospectus, Defendants promoted, solicited, and sold SVB shares to

25   Plaintiff and Class members. Defendants were sellers to and direct solicitors of purchasers of the

26   Company's securities offered pursuant to the offering. Defendants issued, caused to be issued, or

27   signed or authorized the signing of the prospectus in connection with the offering, and used it to

28

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

directly induce investors, including Plaintiffs and the other Class members, to purchase the Company's shares.

191. Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the prospectus at the time Plaintiff acquired SVB shares.

192. By reason of the conduct alleged herein, the Individual Defendants violated § 12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class, who purchased SVB shares pursuant to the prospectus, sustained substantial damages in connection with their purchases of the stock. Accordingly, Plaintiff and the other members of the Class who hold the common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to Defendants sued herein. Class members who have sold their common stock seek damages to the extent permitted by law.

## THIRD CAUSE OF ACTION

### For Violation of § 15 of the Securities Act
### All Defendants Except KPMG

193. Plaintiff incorporates all the foregoing by reference.

194. This Cause of Action is brought pursuant to § 15 of the Securities Act against the Individual Defendants.

195. The Individual Defendants were controlling persons of SVB by virtue of their positions as directors or senior officers of SVB. The Individual Defendants each had a series of direct or indirect business or personal relationships with other directors or officers or major shareholders of SVB. The Venture Capital Defendants controlled their respective employee directors: Benhamou Global Ventures exercised control over Defendant Eric A. Benhamou, who, within the scope of his employment for Benhamou Global Ventures reviewed, contributed to, signed, or agreed to be named as a director of SVB in the Offering Materials; Fifth Era exercised control over Defendant Allison Davis, who, within the scope of her employment for Fifth Era reviewed, contributed to, signed, or agreed to be named as a director of SVB in the Offering Materials; and Scale Venture Partners exercised control over Defendant Kate D. Mitchell, who, within the scope of

1   her employment for Scale Venture Partners reviewed, contributed to, signed, or agreed to be named

2   as a director of SVB in the Offering Materials.

3                                   **PRAYER FOR RELIEF**

4           WHEREFORE, Plaintiff prays for relief and judgment, as follows:

5                   A.      Certifying this class action, appointing Plaintiffs as Class representatives, and

6   appointing Plaintiff's counsel as Class Counsel;

7                   B.      Awarding damages in favor of Plaintiff and the Class against all Defendants,

8   jointly and severally, in an amount to be proven at trial, including interest thereon;

9                   C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred

10  in this action, including counsel fees and expert fees;

11                  D.      Awarding rescission, disgorgement, or such other equitable or injunctive relief

12  as deemed appropriate by the Court.

13                                   **JURY DEMAND**

14          Plaintiff hereby demands a trial by jury.

15
    DATED:  April 14, 2023                    Respectfully submitted,
16

17

18
                                             _____
19                                           DAVID W. HALL (SBN 274921)
                                             dhall@hedinhall.com
20                                           ARMEN ZOHRABIAN (SBN 230492)
                                             **HEDIN HALL LLP**
21                                           Four Embarcadero Center, Suite 1400
                                             San Francisco, CA  94104
22                                           Telephone: (415) 766-3534
                                             Facsimile: (415) 402-0058
23

24                                           *Attorneys for Plaintiff Stephen Rossi and the*
                                             *Proposed Class*
25

26

27

28

BRIAN SCHALL (Bar No. 290685)
brian@schallfirm.com
RINA RESTAINO (Bar. No. 285415)
rina@schallfirm.com
**THE SCHALL LAW FIRM**
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192

*Additional Attorneys for Plaintiff Stephen Rossi*

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

# Exhibit E

**ATTACHMENT CV-5012**

# CIVIL LAWSUIT NOTICE

## 23CV414120

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA  95113*

CASE NUMBER: _____

---

### PLEASE READ THIS ENTIRE FORM

---

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued):  **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format*, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   **Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

*RULES AND FORMS:*  You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

   *You or your attorney must appear at the CMC.*  *You may ask to appear by telephone – see Local Civil Rule 8.*

---

Hon. Sunil R. Kulkarni                                               1

Your Case Management Judge is: _____   **Department:** _____

The 1st CMC is scheduled for:  (Completed by Clerk of Court)

8/10/23                    2:30 pm                                   1

   **Date:** _____  **Time:** _____  in **Department:** _____

The next CMC is scheduled for:  (Completed by party if the 1st CMC was continued or has passed)

   **Date:** _____  **Time:** _____  in **Department:** _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

<div style="border:1px solid red">Reset Form</div>

---

CV-5012 REV 08/01/16                    **CIVIL LAWSUIT NOTICE**                    Page 1 of 1

# Exhibit F

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Armen Zohrabian (SBN 230492)
Hedin Hall LLP, Four Embarcadero Center, Suite 1400

TELEPHONE NO.:(415) 766-3534   FAX NO. *(Optional):*
E-MAIL ADDRESS:azohrabian@hedinhall.com
ATTORNEY FOR *(Name):*Plaintiff Stephen Ross

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS:191 North First Street
MAILING ADDRESS:191 North First Street
CITY AND ZIP CODE:San Jose, 95113
BRANCH NAME:

CASE NAME:
Stephen Rossi, et al. v. Greg W. Becker, et al.

FOR COURT USE ONLY

Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/14/2023 3:29 PM
Reviewed By: R. Walker
Case #23CV414120
Envelope: 11716889

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 23CV414120 |
|---|---|---|

6 ☑ **Unlimited** (Amount demanded exceeds $25,000) ☐ **Limited** (Amount demanded is $25,000 or less)

☐ Counter ☐ Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
6 ☑ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case 6 ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. 6 ☑ Large number of separately represented parties
   b. 6 ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. 6 ☑ Substantial amount of documentary evidence
   d. 6 ☑ Large number of witnesses
   e. 6 ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. 6 ☑ monetary b. 6 ☑ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 3
5. This case 6 ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 14, 2023
Armen Zohrabian
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

privacy, please press the Clear This Form button after yo

Print this form   Save this form   Clear this form

# Exhibit G

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
**191 N. FIRST STREET**
**SAN JOSE, CA  95113-1090**

**Electronically Filed**
**by Superior Court of CA,**
**County of Santa Clara,**
**on 4/18/2023 1:43 PM**
**Reviewed By: R. Walker**
**Case #23CV414120**
**Envelope: 11739604**

TO:     FILE COPY

RE:     **Rossi v. Becker, et al.** (Class Action/Securities Litigation)
CASE NUMBER:     **23CV414120**

**ORDER DEEMING CASE COMPLEX AND STAYING DISCOVERY**
**AND RESPONSIVE PLEADING DEADLINE**

WHEREAS, the Complaint was filed by Plaintiff **Stephen Rossi** ("Plaintiff") in the Superior Court of California, County of Santa Clara, on **April 14, 2023** and assigned to Department **1** (Complex Civil Litigation), the **Honorable Sunil R. Kulkarni**  presiding, pending a ruling on the complexity issue;

IT IS HEREBY ORDERED that:
The Court determines that the above-referenced case is **COMPLEX** within the meaning of California Rules of Court 3.400.  The matter remains assigned, for all purposes, including discovery and trial, to Department **1** (Complex Civil Litigation), the **Honorable Sunil R. Kulkarni**  presiding.
The parties are directed to the Court's local rules and guidelines regarding electronic filing and to the Complex Civil Guidelines, which are available on the Court's website.
Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the Master Service List shall be under the auspices of (1) Plaintiff **Stephen Rossi**, as the first-named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.
Pursuant to Government Code section 70616(b), each party's complex case fee is due within ten (10) calendar days of this date.
Plaintiff shall serve a copy of this Order on all parties forthwith and file a proof of service within seven (7) days of service.
Any party objecting to the complex designation must file an objection and proof of service within ten (10) days of service of this Order.  Any response to the objection must be filed within seven (7) days of service of the objection.  The Court will make its ruling on the submitted pleadings.
The Case Management Conference is remains set for **August 10, 2023 at 2:30 p.m. in Department 1** and all counsel are ordered to attend.
Counsel for all parties are ordered to meet and confer in person at least 15 days prior to the First Case Management Conference and discuss the following issues:
1. Issues related to recusal or disqualification;
2. Issues of law that, if considered by the Court, may simplify or further resolution of the case, including issues regarding choice of law;
3. Appropriate alternative dispute resolution (ADR), for example, mediation, mandatory settlement conference, arbitration, mini-trial;
4. A plan for preservation of evidence and a uniform system for identification of documents throughout the course of this litigation;
5. A plan for document disclosure/production and additional discovery; which will generally be conducted under court supervision and by court order;

-----
Updated on 3/11/21.

1

6. Whether it is advisable to address discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case (counsel should consider whether they will stipulated to limited merits discovery in advance of certification proceedings), allowing the option to complete discovery if ADR efforts are unsuccessful;

7. Any issues involving the protection of evidence and confidentiality;

8. The handling of any potential publicity issues;

Counsel for Plaintiff is to take the lead in preparing a Joint Case Management Conference Statement to be filed 5 calendar days prior to the First Case Management Conference, and include the following:

1. a brief objective summary of the case;

2. a summary of any orders from prior case management conferences and the progress of the parties' compliance with said orders;

3. significant procedural and practical problems that may likely be encountered;

4. suggestions for efficient management, including a proposed timeline of key events; and

5. any other special consideration to assist the court in determining an effective case management plan.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Case Management Conference Statement, the positions of each party or of various parties should be set forth separately and attached to this report as addenda. The parties are encouraged to propose, either jointly or separately, any approaches to case management they believe will promote the fair and efficient handling of this case. The Court is particularly interested in identifying potentially dispositive or significant threshold issues the early resolution of which may assist in moving the case toward effective ADR and/or a final disposition.

**STAY ON DISCOVERY AND RESPONSIVE PLEADING DEADLINE** Pending further order of this Court, the service of discovery and the obligation to respond to any outstanding discovery is stayed. However, Defendant(s) shall file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. The filing of such a Notice of Appearance shall be without prejudice to the later filing of a motion to quash to contest jurisdiction. Parties shall not file or serve responsive pleadings, including answers to the complaint, motions to strike, demurrers, motions for change of venue and cross-complaints until a date is set at the First Case Management Conference for such filings and hearings.

This Order is issued to assist the Court and the parties in the management of this "Complex" case through the development of an orderly schedule for briefing and hearings. This Order shall not preclude the parties from continuing to informally exchange documents that may assist in their initial evaluation of the issues presented in this Case.

Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

SO ORDERED.

Date:   April 18, 2023
_____

_____
**Hon. Sunil R. Kulkarni**
Judge of the Superior Court

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line, (408) 882-2690 or the Voice/TDD California Relay Service, (800) 735-2922.

-----
Updated on 3/11/21.

2

# Exhibit H

1    LISA BUGNI (SBN# 323962)
     lbugni@kslaw.com
2    **KING & SPALDING LLP**
     50 California Street, Suite 3300
3    San Francisco, CA 94111
     Telephone:    (415) 318-1200
4    Facsimile:    (415) 318-1300

5    RICHARD T. MAROONEY (*Pro Hac Vice* Pending)
     rmarooney@kslaw.com
6    **KING & SPALDING LLP**
     1185 Avenue of the Americas
7    New York, NY 10036-2601
     Telephone:    (212) 556-2100
8    Facsimile:    (212) 556-2222

9    Attorneys for Defendant KPMG LLP

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/24/2023 11:03 AM
Reviewed By: R. Walker
Case #23CV414120
Envelope: 11785729**

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                     **COUNTY OF SANTA CLARA**

12

13   STEPHEN ROSSI, individually and on behalf of     Case No. 23-cv-414120
     all others similarly situated,
14                                                     CLASS ACTION
                        Plaintiffs,
15                                                     **PROOF OF SERVICE**
              v.
16
     GREG W. BECKER, DANIEL J. BECK, ROGER
17   F. DUNBAR, KAREN HON, ERIC A.                     Judge:  Hon. Sunil R. Kulkarni
     BENHAMOU, JOHN S. CLENDENING,
18   RICHARD D. DANIELS, ALISON DAVI S,
     JOEL P. FRIEDMAN, JEFFERY N.
19   MAGGIONCALDA, BEVERLY KAY
     MATTHEWS, MARY J. MILLER, KATE D.
20   MITCHELL, JOHN F. ROBINSON, GAREN K.
     STAGLIN, KPMG LLP, BENHAMOU GLOBAL
21   VENTURES, LLC, FIFTH ERA, LLC, and
     SCALE VENTURE PARTNERS,
22
                        Defendants.
23

24

25

26

27

28

**PROOF OF SERVICE**

Case:  *Stephen Rossi v. Greg W. Becker, et al.*
Case No.: 23-cv-414120

I am a citizen of the United States and resident of the State of California.  I am employed in the county of San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction this service was made.  I am over the age of eighteen years and not a party to the within action.

On April 24, 2023, I served the following documents in the manner described below:

- **NOTICE OF VERIFIED APPLICATION FOR ADMISSION OF RICHARD T. MAROONEY TO APPEAR PRO HAC VICE FOR KPMG LLP**

- **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VERIFIED APPLICATION FOR ADMISSION OF RICHARD T. MAROONEY TO APPEAR *PRO HAC VICE* FOR KPMG LLP**

- **DECLARATION OF LISA BUGNI IN SUPPORT OF UNOPPOSED APPLICATION FOR ADMISSION OF RICHARD T. MAROONEY TO APPEAR *PRO HAC VICE* FOR KPMG LLP**

- **VERIFIED APPLICATION FOR ADMISSION OF RICHARD T. MAROONEY TO APPEAR *PRO HAC VICE* FOR KPMG LLP**

- **[PROPOSED] ORDER GRANTING VERIFIED APPLICATION FOR ADMISSION OF RICHARD T. MAROONEY TO APPEAR PRO HAC VICE FOR KPMG LLP**

☒ **By U.S. Mail:**  I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

☐ **By Messenger Service:** by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☐ **By Overnight Mail:**  I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☐ **By Electronic Service:**  By electronically mailing a true and correct copy through King & Spalding LLP's electronic mail system to the email addresses set forth below.

☐ **By Personal Delivery:** I caused such envelope to be delivered by hand to the offices of each addressee below.

On the following part(ies) in this action:

David W. Hall                                    Attorneys for Plaintiff Stephen Rossi and the
Armen Zohrabian                                  Proposed Class
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
Email: dhall@hedinhall.com
        azohrabian@hedinhall.com

Brian Schall                                     Attorneys for Plaintiff Stephen Rossi
Rina Restaino
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192
Email: brian@schallfirm.com
        rina@schallfirm.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 24, 2023, at San Francisco, California.

_____
                Dalia Hill

3

# Exhibit I

**EFS-020**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:  STATE BAR NO.: 323962<br>NAME:  Lisa Bugni<br>FIRM NAME: KING & SPALDING LLP<br>STREET ADDRESS: 50 California Street, Suite 3300<br>CITY: San Francisco           STATE: CA     ZIP CODE: 94111<br>TELEPHONE NO.: (415) 318-1200     FAX NO.: (415) 318-1300<br>E-MAIL ADDRESS: lbugni@kslaw.com<br>ATTORNEY FOR (name): KPMG LLP | *FOR COURT USE ONLY*<br>E-RECEIVED<br>**by Superior Court of CA,**<br>**County of Santa Clara,**<br>**on 4/24/2023 11:03 AM**<br>**Reviewed By: R. Walker**<br>**Case #23CV414120**<br>**Envelope: 11785729** |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SANTA CLARA<br> STREET ADDRESS: 191 North First Street<br> MAILING ADDRESS:<br> CITY AND ZIP CODE: San Jose, CA 95113<br> BRANCH NAME: Downtown Superior Court | |
| PLAINTIFF/PETITIONER: Stephen Rossi<br>DEFENDANT/RESPONDENT: Greg W. Becker, et al.<br>OTHER: | CASE NUMBER:<br>23-cv-414120 |
| | JUDICIAL OFFICER:<br>Hon. Sunil R. Kulkarni |
| **PROPOSED ORDER (COVER SHEET)** | DEPT:<br>1 |

**NOTE:** This cover sheet is to be used to electronically file and submit to the court a proposed order. The proposed order sent electronically to the court must be in PDF format and must be attached to this cover sheet. In addition, a version of the proposed order in an editable word-processing format must be sent to the court at the same time as this cover sheet and the attached proposed order in PDF format are filed.

1. Name of the party submitting the proposed order:
   KPMG LLP

2. Title of the proposed order:
   Proposed Order Granting Pro Hac Vice Application of Richard T. Marooney

3. The proceeding to which the proposed order relates is:

   a. Description of proceeding: Verified Application for Admission of Richard T. Marooney to Appear Pro Hac Vice

   b. Date and time:

   c. Place: 191 North First Street, Dept. 1
      San Jose, CA 95113

4. The proposed order was served on the other parties in the case.

Lisa Bugni
_____
(TYPE OR PRINT NAME)

► 
_____
(SIGNATURE OF PARTY OR ATTORNEY)

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>EFS-020 [Rev. February 1, 2017] | **PROPOSED ORDER (COVER SHEET)**<br>**(Electronic Filing)** | Cal. Rules of Court,<br>rules 2.252, 3.1312<br>www.courts.ca.gov |

**EFS-020**

| CASE NAME:<br>Stephen Rossi v. Greg W. Becker, et al. | CASE NUMBER:<br>23-cv-414120 |
| --- | --- |

## PROOF OF ELECTRONIC SERVICE
### *PROPOSED ORDER*

1. I am at least 18 years old and **not a party to this action.**

    a. My residence or business address is *(specify):*

    b. My electronic service address is *(specify):*

2. I electronically served the *Proposed Order (Cover Sheet)* with a proposed order in PDF format attached, and a proposed order in an editable word-processing format as follows:

    a. On *(name of person served) (If the person served is an attorney, the party or parties represented should also be stated.):*

    b. To *(electronic service address of person served):*

    c. On *(date):*

☐ Electronic service of the *Proposed Order (Cover Sheet)* with the attached proposed order in PDF format and service of the proposed order in an editable word-processing format on additional persons are described in an attachment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

**PROOF OF ELECTRONIC SERVICE (COVER SHEET)**
**(Electronic Filing)**

1  LISA BUGNI (SBN# 323962)
   lbugni@kslaw.com
2  **KING & SPALDING LLP**
   50 California Street, Suite 3300
3  San Francisco, CA 94111
   Telephone:    (415) 318-1200
4  Facsimile:    (415) 318-1300

5  Richard T. Marooney (*Pro Hac Vice* Pending)
   rmarooney@kslaw.com
6  **KING & SPALDING LLP**
   1185 Avenue of the Americas
7  New York, NY 10036-2601
   Telephone:    (212) 556-2100
8  Facsimile:    (212) 556-2222

9  Attorneys for Defendant KPMG LLP

Filed
April 24, 2023
Clerk of the Court
Superior Court of CA
County of Santa Clara
23CV414120
By:  rwalker

10

11                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                        **COUNTY OF SANTA CLARA**

13  STEPHEN ROSSI, INDIVIDUALLY and on        Case No. 23-cv-414120
    behalf of ALL OTHERS SIMILARLY
14  SITUATED,                                 CLASS ACTION

15                          Plaintiffs,       **[PROPOSED] ORDER GRANTING
                                              VERIFIED APPLICATION FOR
16          v.                                ADMISSION OF RICHARD T.
                                              MAROONEY TO APPEAR PRO HAC
17  GREG W. BECKER, DANIEL J. BECK, ROGER     VICE FOR KPMG LLP**
    F. DUNBAR, KAREN HON, ERIC A.
18  BENHAMOU, JOHN S. CLENDENING,
    RICHARD D. DANIELS, ALISON DAVI S,
19  JOEL P. FRIEDMAN, JEFFERY N.              Date:
    MAGGIONCALDA, BEVERLY KAY               Time:
20  MATTHEWS, MARY J. MILLER, KATE D.        Judge:  Hon. Sunil R. Kulkarni
    MITCHELL, JOHN F. ROBINSON, GAREN K.     Dept:   1
21  STAGLIN, KPMG LLP, BENHAMOU GLOBAL
    VENTURES, LLC, FIFTH ERA, LLC, and
22  SCALE VENTURE PARTNERS,

23                          Defendants.

24

25

26

27

28

1

   IT IS ORDERED that Defendant KPMG LLP's Unopposed Application for Admission of

2  Out-Of-State Attorney, Richard T. Marooney, to Appear *Pro Hac Vice* for Defendant KPMG

3  LLP is hereby granted.

4

5  Dated: _____April 24, 2023_____                    _____

6                                                      JUDGE OF THE SUPERIOR COURT

7                                                           Sunil R. Kulkarni

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit J

1  LISA BUGNI (SBN# 323962)
   lbugni@kslaw.com
2  **KING & SPALDING LLP**
   50 California Street, Suite 3300
3  San Francisco, CA 94111
   Telephone:    (415) 318-1200
4  Facsimile:    (415) 318-1300

5  Richard T. Marooney (*Pro Hac Vice* Pending)
   rmarooney@kslaw.com
6  **KING & SPALDING LLP**
   1185 Avenue of the Americas
7  New York, NY 10036-2601
   Telephone:    (212) 556-2100
8  Facsimile:    (212) 556-2222

9  Attorneys for Defendant KPMG LLP

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/24/2023 11:03 AM
Reviewed By: R. Walker
Case #23CV414120
Envelope: 11785729**

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                     **COUNTY OF SANTA CLARA**

12

13  STEPHEN ROSSI, individually and on behalf of      Case No. 23-cv-414120
    all others similarly situated,
14                                                      CLASS ACTION
                       Plaintiffs,
15                                                      **NOTICE OF VERIFIED
           v.                                           APPLICATION FOR ADMISSION OF
16                                                      RICHARD T. MAROONEY TO
    GREG W. BECKER, DANIEL J. BECK, ROGER              APPEAR *PRO HAC VICE* FOR KPMG
17  F. DUNBAR, KAREN HON, ERIC A.                      LLP**
    BENHAMOU, JOHN S. CLENDENING,
18  RICHARD D. DANIELS, ALISON DAVI S,
    JOEL P. FRIEDMAN, JEFFERY N.
19  MAGGIONCALDA, BEVERLY KAY                           Date:
    MATTHEWS, MARY J. MILLER, KATE D.                   Time:
20  MITCHELL, JOHN F. ROBINSON, GAREN K.                Judge:  Hon. Sunil R. Kulkarni
    STAGLIN, KPMG LLP, BENHAMOU GLOBAL                  Dept:   1
21  VENTURES, LLC, FIFTH ERA, LLC, and
    SCALE VENTURE PARTNERS,
22
                       Defendants.
23

24

25

26

27

28

_____

1    PLEASE TAKE NOTICE that Defendant KPMG LLP ("Defendant") hereby moves the

2  Court to grant this unopposed application for an order pursuant to California Rules of Court, Rule

3  9.40, permitting out-of-state attorney, Richard T. Marooney, to appear as counsel *pro hac vice* for

4  Defendant in the above-captioned case.

5    This application is made on the grounds that the applicant, Richard T. Marooney, is a

6  member in good standing of the State Bar of New York and has been retained to appear in this

7  action as counsel on behalf of Defendant.  Lisa Bugni of King & Spalding LLP is counsel of

8  record for Defendant.  Richard T. Marooney is neither a resident of the State of California, nor

9  regularly employed in the State of California, nor regularly engaged in substantial business,

10  professional, or other activities in the State of California.

11    This application is based on this notice, the attached memorandum of points and

12  authorities, the attached verified application of Richard T. Marooney, the attached declaration of

13  Lisa Bugni, all other pleadings and papers on file, or of which this Court may take judicial notice

14  at the time this application is heard, and all evidence adduced, and arguments made at the time of

15  the hearing on this application.  A copy of this application, the supporting memorandum of points

16  and authorities, the verified application of Richard T. Marooney, and the declaration of Lisa

17  Bugni, have been served on the State Bar of California, together with the $50.00 fee, made

18  payable to the State Bar of California, pursuant to the requirements of Rule 9.40(e) of the

19  California Rules of Court.

20

21  Dated:  April 24, 2023                                      KING & SPALDING LLP

22

23                                                    By: _____
                                                              LISA BUGNI
24
                                                      Attorneys for Defendant KPMG LLP
25

26

27

28

# Exhibit K

1  LISA BUGNI (SBN# 323962)
   lbugni@kslaw.com
2  **KING & SPALDING LLP**
   50 California Street, Suite 3300
3  San Francisco, CA 94111
   Telephone:    (415) 318-1200
4  Facsimile:    (415) 318-1300

5  Attorneys for Defendant KPMG LLP

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/24/2023 2:40 PM
Reviewed By: A. Floresca
Case #23CV414120
Envelope: 11789631**

6

7

8

9                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                        **COUNTY OF SANTA CLARA**

11  STEPHEN ROSSI, individually and on behalf of      Case No. 23-cv-414120
    all others similarly situated,
12                                                    CLASS ACTION
                           Plaintiffs,
13                                                    **NOTICE OF APPEARANCE OF LISA
           v.                                         BUGNI**
14
    GREG W. BECKER, DANIEL J. BECK, ROGER
15  F. DUNBAR, KAREN HON, ERIC A.                     Judge: Hon. Sunil R. Kulkarni
    BENHAMOU, JOHN S. CLENDENING,
16  RICHARD D. DANIELS, ALISON DAVIS,
    JOEL P. FRIEDMAN, JEFFERY N.
17  MAGGIONCALDA, BEVERLY KAY
    MATTHEWS, MARY J. MILLER, KATE D.
18  MITCHELL, JOHN F. ROBINSON, GAREN K.
    STAGLIN, KPMG LLP, BENHAMOU GLOBAL
19  VENTURES, LLC, FIFTH ERA, LLC, and
    SCALE VENTURE PARTNERS,
20
                           Defendants.
21

22

23

24

25

26

27

28

TO THE COURT, AND TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Lisa Bugni hereby appears as counsel of record for Defendant KPMG LLP ("KPMG") and is authorized to receive service of all pleadings, orders, notices, correspondence, and other documents regarding the above- referenced action on behalf of KPMG to:

Lisa Bugni
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: lbugni@kslaw.com

This appearance is without prejudice to, or waiver of, any defense that KPMG may have.

Dated: April 20, 2023

KING & SPALDING LLP

By:   LISA BUGNI

Attorneys for Defendant
KPMG LLP

# PROOF OF SERVICE

Case:  *Stephen Rossi v. Greg W. Becker, et al.*
Case No.: 23-cv-414120

I am a citizen of the United States and resident of the State of California.  I am employed in the county of San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction this service was made.  I am over the age of eighteen years and not a party to the within action.

On April 20, 2023, I served the following documents in the manner described below:

## NOTICE OF APPEARANCE OF LISA BUGNI

☒  **By U.S. Mail:**  I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

☐  **By Messenger Service:**  by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☐  **By Overnight Mail:**  I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☐  **By Electronic Service:**  By electronically mailing a true and correct copy through King & Spalding LLP's electronic mail system to the email addresses set forth below.

☐  **By Personal Delivery**: I caused such envelope to be delivered by hand to the offices of each addressee below.

On the following part(ies) in this action:

| | |
|---|---|
| David W. Hall<br>Armen Zohrabian<br>HEDIN HALL LLP<br>Four Embarcadero Center, Suite 1400<br>San Francisco, CA 94104<br>Telephone: (415) 766-3534<br>Facsimile: (415) 402-0058<br>Email: dhall@hedinhall.com<br>      azohrabian@hedinhall.com | Attorneys for Plaintiff Stephen Rossi and the Proposed Class |
| Brian Schall<br>Rina Restaino<br>THE SCHALL LAW FIRM<br>1880 Century Park East, Suite 404<br>Los Angeles, CA 90067<br>Telephone: (310) 301-3335 | Attorneys for Plaintiff Stephen Rossi |

| Facsimile: (310) 388-0192<br>Email: brian@schallfirm.com<br>      rina@schallfirm.com | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 20, 2023, at San Francisco, California.

_____
                       Dalia Hill

# Exhibit L

1   LISA BUGNI (SBN# 323962)
    lbugni@kslaw.com
2   **KING & SPALDING LLP**
    50 California Street, Suite 3300
3   San Francisco, CA 94111
    Telephone:    (415) 318-1200
4   Facsimile:    (415) 318-1300

5   RICHARD T. MAROONEY (*Pro Hac Vice* Pending)
    rmarooney@kslaw.com
6   **KING & SPALDING LLP**
    1185 Avenue of the Americas
7   New York, NY 10036-2601
    Telephone:    (212) 556-2100
8   Facsimile:    (212) 556-2222

9   Attorneys for Defendant KPMG LLP

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/24/2023 11:03 AM
Reviewed By: R. Walker
Case #23CV414120
Envelope: 11785729**

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                        **COUNTY OF SANTA CLARA**

12

13   STEPHEN ROSSI, individually and on behalf of     Case No. 23-cv-414120
     all others similarly situated,
14                                                    CLASS ACTION
                      Plaintiffs,
15                                                    **MEMORANDUM OF POINTS AND
          v.                                          AUTHORITIES IN SUPPORT OF
16                                                    VERIFIED APPLICATION FOR
     GREG W. BECKER, DANIEL J. BECK, ROGER            ADMISSION OF RICHARD T.
17   F. DUNBAR, KAREN HON, ERIC A.                    MAROONEY TO APPEAR *PRO HAC
     BENHAMOU, JOHN S. CLENDENING,                    VICE* FOR KPMG LLP**
18   RICHARD D. DANIELS, ALISON DAVI S,
     JOEL P. FRIEDMAN, JEFFERY N.                     Judge: Hon. Sunil R. Kulkarni
19   MAGGIONCALDA, BEVERLY KAY
     MATTHEWS, MARY J. MILLER, KATE D.                Date:
20   MITCHELL, JOHN F. ROBINSON, GAREN K.             Time:
     STAGLIN, KPMG LLP, BENHAMOU GLOBAL               Judge: Hon. Sunil R. Kulkarni
21   VENTURES, LLC, FIFTH ERA, LLC, and               Dept:  1
     SCALE VENTURE PARTNERS,
22
                      Defendants.
23

24

25

26

27

28

---

## I.    **INTRODUCTION**

KPMG LLP ("Defendant") is currently represented by California attorney Lisa Bugni from King & Spalding LLP.  Defendant has also retained Richard T. Marooney, an attorney who is licensed in the State of New York and employed by the law firm of King & Spalding LLP, to represent Defendant in the above-referenced action.  Defendant seeks to have Richard T. Marooney admitted to practice before this Court for purposes of the above-referenced action pursuant to California Rules of Court, Rule 9.40.  Plaintiffs in the above-referenced action do not oppose the application.

## II.    **LEGAL STANDARD**

California Rules of Court, Rule 9.40, permits attorneys who are licensed to practice in other states to be admitted *pro hac vice* if they satisfy the following eligibility criteria:

A person who is not a member of the State Bar of California but who is a member in good standing of and eligible to practice before the bar of any United States court or the highest court in any state, territory, or insular possession of the United States, and who has been retained to appear in a particular cause pending in a court of this state, may in the discretion of such court be permitted upon written application to appear as counsel *pro hac vice*, provided that an active member of the State Bar of California is associated as attorney of record. No person is eligible to appear as counsel *pro hac vice* under this rule if the person is: [¶] (1) A resident of the State of California; [¶] (2) Regularly employed in the State of California; or [¶] (3) Regularly engaged in substantial business, professional, or other activities in the State of California.

As set forth in his verified application filed concurrently herewith, Richard T. Marooney is not a resident of the State of California, is not regularly employed in the State of California, and is not regularly engaged in substantial business, professional, or other activities in the State of California.  In addition, Richard T. Marooney is a member in good standing of the State Bar of New York, has been retained as counsel in the above-referenced action, and has associated with an active member of the California State Bar.

California Rules of Court, Rule 9.40(d), requires an applicant seeking admission *pro hac vice* to provide the Court with certain information, including the applicant's address, the courts to

2

1  which the applicant has been admitted to practice and the dates of admission, that the applicant is

2  a member in good standing in those courts, that the applicant is not currently suspended or

3  disbarred in any court, the title of court and cause in which the applicant has filed an application

4  to appear *pro hac vice* in the preceding two years, and the name, address, and telephone number

5  of the active member of the California State Bar who is the attorney of record.  The verified

6  application of Richard T. Marooney and the declaration of Lisa Bugni provide all of the

7  information required by Rule 9.40(d).

8       The application for admission of Richard T. Marooney to appear *pro hac vice* for

9  Defendant has been served on all parties in the above-referenced case, and on the State Bar of

10  California, together with the requisite $50.00 application fee in satisfaction of California Rules of

11  Court, Rule 9.40(c) and (e).

12  **III.    CONCLUSION**

13       Based upon the foregoing, Defendant respectfully requests that the Court grant the

14  application for Richard T. Marooney to appear as counsel *pro hac vice* for the duration of the

15  above-referenced action.

16  Dated:  April 24, 2023                                    KING & SPALDING LLP

18                                              By:  _____
                                                         LISA BUGNI

19                                              Attorneys for Defendant KPMG LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *PRO HAC VICE* APPLICATION
OF RICHARD T. MAROONEY
Case No. 23-cv-414120

# Exhibit M

LISA BUGNI (SBN# 323962)
lbugni@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:    (415) 318-1200
Facsimile:    (415) 318-1300

Richard T. Marooney (*Pro Hac Vice* Pending)
rmarooney@kslaw.com
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, NY 10036-2601
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Defendant KPMG LLP

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/24/2023 11:03 AM
Reviewed By: R. Walker
Case #23CV414120
Envelope: 11785729**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

| | |
|---|---|
| STEPHEN ROSSI, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GREG W. BECKER, DANIEL J. BECK, ROGER F. DUNBAR, KAREN HON, ERIC A. BENHAMOU, JOHN S. CLENDENING, RICHARD D. DANIELS, ALISON DAVI S, JOEL P. FRIEDMAN, JEFFERY N. MAGGIONCALDA, BEVERLY KAY MATTHEWS, MARY J. MILLER, KATE D. MITCHELL, JOHN F. ROBINSON, GAREN K. STAGLIN, KPMG LLP, BENHAMOU GLOBAL VENTURES, LLC, FIFTH ERA, LLC, and SCALE VENTURE PARTNERS,<br><br>                    Defendants. | Case No. 23-cv-414120<br><br>CLASS ACTION<br><br>**DECLARATION OF LISA BUGNI IN SUPPORT OF UNOPPOSED APPLICATION FOR ADMISSION OF RICHARD T. MAROONEY TO APPEAR *PRO HAC VICE* FOR KPMG LLP**<br><br>Date:<br>Time:<br>Judge:  Hon. Sunil R. Kulkarni<br>Dept:   1 |

I, Lisa Bugni, declare that:

1.      I am an attorney at law duly authorized to practice before all courts of the State of California and I am Partner at the law firm of King & Spalding LLP, attorneys of record for KPMG LLP in the above-referenced cases.  I have personal knowledge of the following facts and, if called as a witness in the above-referenced cases, could competently testify to the matters stated herein.

2.      I make this declaration in support of the unopposed application for an order allowing out-of-state attorney, Richard T. Marooney, to appear *pro hac vice* for KPMG LLP.

3.      On April 21, 2023, I emailed with David Hall, counsel for Plaintiffs in the above-referenced case.  I informed Mr. Hall that KPMG LLP would seek to have Richard T. Marooney admitted as counsel *pro hac vice*.  Mr. Hall stated that Plaintiffs would not oppose the application.

4.      On April 21, 2023, I caused to be served on the California State Bar in San Francisco a copy of the application for admission of out-of-state attorney, Richard T. Marooney, to appear *pro hac vice* together with the application fee in the amount of $50.00.  A true copy of the confirmation and receipt from the State Bar is attached hereto as **Exhibit A**.

5.      I declare under penalty of perjury under the laws of the State of California that the foregoing information is true.

Executed this 24th day of April, 2023 in San Francisco, California.



LISA BUGNI

# EXHIBIT A

**Dalia Hill**

| | |
|---|---|
| **From:** | State Bar of California - Special Admissions <special.admissions@calbar.ca.gov> |
| **Sent:** | Monday, April 24, 2023 9:37 AM |
| **To:** | Dalia Hill; Richard Marooney |
| **Subject:** | Pro Hac Vice Application Acknowledgement Notice |

<div style="background:yellow">CAUTION: <b>MAIL FROM OUTSIDE THE FIRM</b></div>



**Application's Case Number:** 00921779
**Trial Case Name:** Stephen Rossi v. Greg W. Becker, et al.
**Trial Case Number:** 23-cv-414120

Dear Dalia Hill,

Your Pro Hac Vice application has been received and is pending review. For your application to be approved, you must have submitted an uploaded copy of the original Pro Hac Vice application, in addition to the application fee.

**If you failed to upload the original Pro Hac Vice application/document during the online application process, please follow the steps below to upload the completed document to your existing application:**

1. Login to the Applicant Community site.
2. Click the "Special Admissions" tab at the top of the home page, and then select the "Pro Hac Vice" option.
3. In the "Upload document(s) to a previously submitted application" box, select the "Next" button.
4. Follow the directions on the screen to search for the application using the application's "Case Number" (listed at the top of this message beginning with "00"), and upload the document(s).

Applicants who encounter problems gaining access to the Applicant Community, or those who have not yet created a password to the Applicant Community, should take the following steps:

1. Access the Applicant Community at admissions.calbar.ca.gov.
2. Click "Forgot your password."
3. Click "Send Password Reset Email."
4. Check your email and follow the instructions to reset your password.

If you paid by e-check (ACH), then your application will not be approved until we can confirm that your payment was processed, successfully. It may take up to 7 business days before the transaction is settled. In addition, if you owe any outstanding fees to the State Bar, your application cannot be approved until the fees are paid.

Once the application is deemed complete, you will receive an email notifying you of a successful filing.

If you have any questions, please contact the Special Admissions department at the number below.

Sincerely,


Office of Admissions
State Bar of California
(415) 538-2300


ref:_00Dt0TZax._5008y7e1BB:ref

# Exhibit N

23CV414120
Santa Clara – Civil

1   LISA BUGNI (SBN# 323962)
    lbugni@kslaw.com
2   **KING & SPALDING LLP**
    50 California Street, Suite 3300
3   San Francisco, CA 94111
    Telephone:    (415) 318-1200
4   Facsimile:    (415) 318-1300

5   Richard T. Marooney (*Pro Hac Vice* Pending)
    rmarooney@kslaw.com
6   **KING & SPALDING LLP**
    1185 Avenue of the Americas
7   New York, NY 10036-2601
    Telephone:    (212) 556-2100
8   Facsimile:    (212) 556-2222

9   Attorneys for Defendant KPMG LLP

10

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/24/2023 11:03 AM
Reviewed By: R. Walker
Case #23CV414120
Envelope: 11785729**

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                        **COUNTY OF SANTA CLARA**

13   STEPHEN ROSSI, INDIVIDUALLY and on          Case No. 23-cv-414120
     behalf of ALL OTHERS SIMILARLY
14   SITUATED,                                    CLASS ACTION

15                          Plaintiffs,           **VERIFIED APPLICATION FOR
                                                  ADMISSION OF RICHARD T.
16          v.                                    MAROONEY TO APPEAR *PRO HAC
                                                  VICE* FOR KPMG LLP**
17   GREG W. BECKER, DANIEL J. BECK, ROGER
     F. DUNBAR, KAREN HON, ERIC A.
18   BENHAMOU, JOHN S. CLENDENING,
     RICHARD D. DANIELS, ALISON DAVIS,            Date:
19   JOEL P. FRIEDMAN, JEFFERY N.                 Time:
     MAGGIONCALDA, BEVERLY KAY                    Judge: Hon. Sunil R. Kulkarni
20   MATTHEWS, MARY J. MILLER, KATE D.            Dept:  1
     MITCHELL, JOHN F. ROBINSON, GAREN K.
21   STAGLIN, KPMG LLP, BENHAMOU GLOBAL
     VENTURES, LLC, FIFTH ERA, LLC, and
22   SCALE VENTURE PARTNERS,

23                          Defendants.

24

25

26

27

28

I, Richard T. Marooney, declare that:

1.      I am a partner with the law firm of King & Spalding LLP.  I am a member in good standing of the State Bar of New York (Bar Number 2678100).

2.      I have been apprised of the facts, issues and developments in the above-captioned action, and I am familiar with the subject matter of this case.  I intend to act as co-counsel of record for KPMG LLP (Defendant) in this case.

3.      I presently reside at 86 5th Street, Garden City, NY 11530, and am a Partner in the law firm of King & Spalding LLP, resident in the New York office located at 1185 Avenue of the Americas, 34th Floor, New York, NY 10036-2601, and have been since 1995.

4.      I am admitted to practice in the following courts:

- New York (1995)
- U.S. District Court for the Southern District of New York (1996)
- U.S. District Court for the Western District of New York (1998)
- U.S. District Court for the Northern District of New York (1998)
- U.S. District Court for the Eastern District of New York (1996)
- U.S. Court of Appeals for the Second Circuit (2010)

5.      I am currently a member in good standing in all of the courts in which I have been admitted.

6.      I have never been suspended or disbarred in any court.

7.      In the preceding two years, I have not been admitted to appear *pro hac vice* before any court in California.

8.      I am not: (i) a resident of the State of California; (ii) regularly employed in the State of California; or (iii) regularly engaged in substantial business, professional, or other activities in the State of California.

9.      By this application, I request *pro hac vice* permission from the Court to appear as co-counsel on behalf of Defendant.

10.     The name, address, and telephone number of the active member of the State Bar of California who is attorney of record:

1

LISA BUGNI (SBN# 323962)
lbugni@kslaw.com

2

KING & SPALDING LLP
50 California Street, Suite 3300

3

San Francisco, CA 94111
Telephone:    (415) 318-1200

4

Facsimile:    (415) 318-1300

5

6

Executed this 21st day of April, 2023, in New York, New York.

7

8

9

_____

RICHARD T. MAROONEY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED APPLICATION FOR ADMISSION OF RICHARD T. MAROONEY
TO APPEAR *PRO HAC VICE*
Case No. 23-cv-414120

# Exhibit O

1 | LISA BUGNI (SBN# 323962)
lbugni@kslaw.com
2 | **KING & SPALDING LLP**
50 California Street, Suite 3300
3 | San Francisco, CA 94111
Telephone:     (415) 318-1200
4 | Facsimile:     (415) 318-1300

5 | Kevin J. O'Brien (*Pro Hac Vice* Pending)
kobrien@kslaw.com
6 | **KING & SPALDING LLP**
1180 Peachtree Street, NE
7 | Suite 1600
Atlanta, GA 30309-3521
8 | Telephone:     (404) 572-4600
Facsimile:     (404) 572-5100

9 |
Attorneys for Defendant KPMG LLP
10 |

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/26/2023 2:41 PM
Reviewed By: A. Floresca
Case #23CV414120
Envelope: 11814435**

11 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 | **COUNTY OF SANTA CLARA**

13 | STEPHEN ROSSI, individually and on behalf of
14 | all others similarly situated,

Case No. 23-cv-414120

15 |                             Plaintiffs,

CLASS ACTION

16 |             v.

**PROOF OF SERVICE**

17 | GREG W. BECKER, DANIEL J. BECK, ROGER
F. DUNBAR, KAREN HON, ERIC A.
18 | BENHAMOU, JOHN S. CLENDENING,
RICHARD D. DANIELS, ALISON DAVIS,

Judge:  Hon. Sunil R. Kulkarni

19 | JOEL P. FRIEDMAN, JEFFERY N.
MAGGIONCALDA, BEVERLY KAY
20 | MATTHEWS, MARY J. MILLER, KATE D.
MITCHELL, JOHN F. ROBINSON, GAREN K.
21 | STAGLIN, KPMG LLP, BENHAMOU GLOBAL
VENTURES, LLC, FIFTH ERA, LLC, and
22 | SCALE VENTURE PARTNERS,

23 |                             Defendants.

1

<div align="center"><b>PROOF OF SERVICE</b></div>

2

Case:  *Stephen Rossi v. Greg W. Becker, et al.*
Case No.: 23-cv-414120

3

4

I am a citizen of the United States and resident of the State of California.  I am employed in the county of San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction this service was made.  I am over the age of eighteen years and not a party to the within action.

5

6

On April 26, 2023, I served the following documents in the manner described below:

7

8

- **NOTICE OF VERIFIED APPLICATION FOR ADMISSION OF KEVIN J. O'BRIEN TO APPEAR PRO HAC VICE FOR KPMG LLP**

9

- **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VERIFIED APPLICATION FOR ADMISSION OF KEVIN J. O'BRIEN TO APPEAR *PRO HAC VICE* FOR KPMG LLP**

10

11

- **DECLARATION OF LISA BUGNI IN SUPPORT OF UNOPPOSED APPLICATION FOR ADMISSION OF KEVIN J. O'BRIEN TO APPEAR *PRO HAC VICE* FOR KPMG LLP**

12

- **VERIFIED APPLICATION FOR ADMISSION OF KEVIN J. O'BRIEN TO APPEAR *PRO HAC VICE* FOR KPMG LLP**

13

14

- **[PROPOSED] ORDER GRANTING VERIFIED APPLICATION FOR ADMISSION OF KEVIN J. O'BRIEN TO APPEAR PRO HAC VICE FOR KPMG LLP**

15

16

17

☒ **By U.S. Mail:**  I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

18

19

☐ **By Messenger Service:** by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

20

21

☐ **By Overnight Mail:**  I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

22

23

☐ **By Electronic Service:**  By electronically mailing a true and correct copy through King & Spalding LLP's electronic mail system to the email addresses set forth below.

24

25

☐ **By Personal Delivery:** I caused such envelope to be delivered by hand to the offices of each addressee below.

26

27

28

<div align="center">2</div>

1    On the following part(ies) in this action:

2

3    David W. Hall                          Attorneys for Plaintiff Stephen Rossi and the
     Armen Zohrabian                        Proposed Class
4    HEDIN HALL LLP
     Four Embarcadero Center, Suite 1400
5    San Francisco, CA 94104
     Telephone: (415) 766-3534
6    Facsimile: (415) 402-0058
     Email: dhall@hedinhall.com
7            azohrabian@hedinhall.com

8

9    Brian Schall                           Attorneys for Plaintiff Stephen Rossi
     Rina Restaino
10   THE SCHALL LAW FIRM
     1880 Century Park East, Suite 404
11   Los Angeles, CA 90067
     Telephone: (310) 301-3335
12   Facsimile: (310) 388-0192
     Email: brian@schallfirm.com
13           rina@schallfirm.com

14

15

16

     I declare under penalty of perjury under the laws of the State of California that the foregoing is
17   true and correct. Executed on April 26, 2023, at San Francisco, California.

18

19                                          _____
                                                      Dalia Hill
20

21

22

23

24

25

26

27

28

---

3

# Exhibit P

LISA BUGNI (SBN# 323962)
lbugni@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:     (415) 318-1200
Facsimile:      (415) 318-1300

Kevin J. O'Brien (*Pro Hac Vice* Pending)
kobrien@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
Telephone:     (404) 572-4600
Facsimile:      (404) 572-5100

Attorneys for Defendant KPMG LLP

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/26/2023 2:41 PM
Reviewed By: A. Floresca
Case #23CV414120
Envelope: 11814435**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| STEPHEN ROSSI, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>GREG W. BECKER, DANIEL J. BECK, ROGER F. DUNBAR, KAREN HON, ERIC A. BENHAMOU, JOHN S. CLENDENING, RICHARD D. DANIELS, ALISON DAVI S, JOEL P. FRIEDMAN, JEFFERY N. MAGGIONCALDA, BEVERLY KAY MATTHEWS, MARY J. MILLER, KATE D. MITCHELL, JOHN F. ROBINSON, GAREN K. STAGLIN, KPMG LLP, BENHAMOU GLOBAL VENTURES, LLC, FIFTH ERA, LLC, and SCALE VENTURE PARTNERS,<br><br>     Defendants. | Case No. 23-cv-414120<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VERIFIED APPLICATION FOR ADMISSION OF KEVIN J. O'BRIEN TO APPEAR *PRO HAC VICE* FOR KPMG LLP**<br><br>Judge:  Hon. Sunil R. Kulkarni<br><br>Date:<br>Time:<br>Judge:  Hon. Sunil R. Kulkarni<br>Dept:  1 |

## I. <u>INTRODUCTION</u>

KPMG LLP ("Defendant") is currently represented by California attorney Lisa Bugni from King & Spalding LLP.  Defendant has also retained Kevin J. O'Brien, an attorney who is licensed in the State of Georgia and employed by the law firm of King & Spalding LLP, to represent Defendant in the above-referenced action.  Defendant seeks to have Kevin J. O'Brien admitted to practice before this Court for purposes of the above-referenced action pursuant to California Rules of Court, Rule 9.40.  Plaintiffs in the above-referenced action do not oppose the application.

## II. <u>LEGAL STANDARD</u>

California Rules of Court, Rule 9.40, permits attorneys who are licensed to practice in other states to be admitted *pro hac vice* if they satisfy the following eligibility criteria:

A person who is not a member of the State Bar of California but who is a member in good standing of and eligible to practice before the bar of any United States court or the highest court in any state, territory, or insular possession of the United States, and who has been retained to appear in a particular cause pending in a court of this state, may in the discretion of such court be permitted upon written application to appear as counsel *pro hac vice*, provided that an active member of the State Bar of California is associated as attorney of record. No person is eligible to appear as counsel *pro hac vice* under this rule if the person is: [¶] (1) A resident of the State of California; [¶] (2) Regularly employed in the State of California; or [¶] (3) Regularly engaged in substantial business, professional, or other activities in the State of California.

As set forth in his verified application filed concurrently herewith, Kevin J. O'Brien is not a resident of the State of California, is not regularly employed in the State of California, and is not regularly engaged in substantial business, professional, or other activities in the State of California.  In addition, Kevin J. O'Brien is a member in good standing of the State Bar of Georgia, has been retained as counsel in the above-referenced action, and has associated with an active member of the California State Bar.

California Rules of Court, Rule 9.40(d), requires an applicant seeking admission *pro hac vice* to provide the Court with certain information, including the applicant's address, the courts to

which the applicant has been admitted to practice and the dates of admission, that the applicant is a member in good standing in those courts, that the applicant is not currently suspended or disbarred in any court, the title of court and cause in which the applicant has filed an application to appear *pro hac vice* in the preceding two years, and the name, address, and telephone number of the active member of the California State Bar who is the attorney of record.  The verified application of Kevin J. O'Brien and the declaration of Lisa Bugni provide all of the information required by Rule 9.40(d).

The application for admission of Kevin J. O'Brien to appear *pro hac vice* for Defendant has been served on all parties in the above-referenced case, and on the State Bar of California, together with the requisite $50.00 application fee in satisfaction of California Rules of Court, Rule 9.40(c) and (e).

## III.   **CONCLUSION**

Based upon the foregoing, Defendant respectfully requests that the Court grant the application for Kevin J. O'Brien to appear as counsel *pro hac vice* for the duration of the above-referenced action.

Dated:  April 26, 2023

KING & SPALDING LLP

By:  _____
     LISA BUGNI

Attorneys for Defendant KPMG LLP

# Exhibit Q

1  LISA BUGNI (SBN# 323962)
   lbugni@kslaw.com
2  **KING & SPALDING LLP**
   50 California Street, Suite 3300
3  San Francisco, CA 94111
   Telephone:     (415) 318-1200
4  Facsimile:     (415) 318-1300

5  Kevin J. O'Brien (*Pro Hac Vice* Pending)
   kobrien@kslaw.com
6  **KING & SPALDING LLP**
   1180 Peachtree Street, NE
7  Suite 1600
   Atlanta, GA 30309-3521
8  Telephone:     (404) 572-4600
   Facsimile:     (404) 572-5100
9
   Attorneys for Defendant KPMG LLP
10

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/26/2023 2:41 PM
Reviewed By: A. Floresca
Case #23CV414120
Envelope: 11814435**

11        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12              **COUNTY OF SANTA CLARA**

13  STEPHEN ROSSI, individually and on behalf of      Case No. 23-cv-414120
14  all others similarly situated,
                                                      CLASS ACTION
15                        Plaintiffs,
                                                      **DECLARATION OF LISA BUGNI IN
16        v.                                          SUPPORT OF UNOPPOSED
                                                      APPLICATION FOR ADMISSION OF
17  GREG W. BECKER, DANIEL J. BECK, ROGER             KEVIN J. O'BRIEN TO APPEAR *PRO
    F. DUNBAR, KAREN HON, ERIC A.                     HAC VICE* FOR KPMG LLP**
18  BENHAMOU, JOHN S. CLENDENING,
    RICHARD D. DANIELS, ALISON DAVIS,                 Date:
19  JOEL P. FRIEDMAN, JEFFERY N.                      Time:
    MAGGIONCALDA, BEVERLY KAY                         Judge: Hon. Sunil R. Kulkarni
20  MATTHEWS, MARY J. MILLER, KATE D.                 Dept:  1
    MITCHELL, JOHN F. ROBINSON, GAREN K.
21  STAGLIN, KPMG LLP, BENHAMOU GLOBAL
    VENTURES, LLC, FIFTH ERA, LLC, and
22  SCALE VENTURE PARTNERS,

23                        Defendants.

24

25

26

27

28

I, Lisa Bugni, declare that:

1.    I am an attorney at law duly authorized to practice before all courts of the State of California and I am Partner at the law firm of King & Spalding LLP, attorneys of record for KPMG LLP in the above-referenced cases.  I have personal knowledge of the following facts and, if called as a witness in the above-referenced cases, could competently testify to the matters stated herein.

2.    I make this declaration in support of the unopposed application for an order allowing out-of-state attorney, Kevin J. O'Brien, to appear *pro hac vice* for KPMG LLP.

3.    On April 21, 2023, I spoke with David Hall, counsel for Plaintiffs in the above-referenced case.  I informed Mr. Hall that KPMG LLP would seek to have Kevin J. O'Brien admitted as counsel *pro hac vice*.  Mr. Hall stated that Plaintiffs would not oppose the application.

4.    On April 25, 2023, I caused to be served on the California State Bar in San Francisco a copy of the application for admission of out-of-state attorney, Kevin J. O'Brien, to appear *pro hac vice* together with the application fee in the amount of $50.00.  A true copy of the confirmation and receipt from the State Bar is attached hereto as **Exhibit A**.

5.    I declare under penalty of perjury under the laws of the State of California that the foregoing information is true.

Executed this 26th day of April, 2023 in San Francisco, California.



_____
LISA BUGNI

DECLARATION OF LISA BUGNI IN SUPPORT OF KEVIN J. O'BRIEN TO APPEAR *PRO HAC VICE* FOR KPMG LLP
Case No. 23-cv-414120

# EXHIBIT A

**Dalia Hill**

| | |
|---|---|
| **From:** | State Bar of California - Special Admissions <special.admissions@calbar.ca.gov> |
| **Sent:** | Tuesday, April 25, 2023 11:31 AM |
| **To:** | Dalia Hill; Kevin O'Brien |
| **Subject:** | Pro Hac Vice Application Acknowledgement Notice |

**CAUTION: MAIL FROM OUTSIDE THE FIRM**



**Application's Case Number:** 00922203
**Trial Case Name:** Stephen Rossi v. Greg W. Becker, et al.
**Trial Case Number:** 23-cv-414120

Dear Dalia Hill,

Your Pro Hac Vice application has been received and is pending review. For your application to be approved, you must have submitted an uploaded copy of the original Pro Hac Vice application, in addition to the application fee.

**If you failed to upload the original Pro Hac Vice application/document during the online application process, please follow the steps below to upload the completed document to your existing application:**

1. Login to the Applicant Community site.
2. Click the "Special Admissions" tab at the top of the home page, and then select the "Pro Hac Vice" option.
3. In the "Upload document(s) to a previously submitted application" box, select the "Next" button.
4. Follow the directions on the screen to search for the application using the application's "Case Number" (listed at the top of this message beginning with "00"), and upload the document(s).

Applicants who encounter problems gaining access to the Applicant Community, or those who have not yet created a password to the Applicant Community, should take the following steps:

1. Access the Applicant Community at admissions.calbar.ca.gov.
2. Click "Forgot your password."
3. Click "Send Password Reset Email."
4. Check your email and follow the instructions to reset your password.

If you paid by e-check (ACH), then your application will not be approved until we can confirm that your payment was processed, successfully. It may take up to 7 business days before the transaction is settled. In addition, if you owe any outstanding fees to the State Bar, your application cannot be approved until the fees are paid.

Once the application is deemed complete, you will receive an email notifying you of a successful filing.

If you have any questions, please contact the Special Admissions department at the number below.

Sincerely,


Office of Admissions
State Bar of California
(415) 538-2300


ref:_00Dt0TZax._5008y7eWKi:ref

# Exhibit R

LISA BUGNI (SBN# 323962)
lbugni@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:     (415) 318-1200
Facsimile:     (415) 318-1300

Kevin O'Brien (*Pro Hac Vice* Pending)
kobrien@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
Telephone:     (404) 572-4600
Facsimile:     (404) 572-5100

Attorneys for Defendant KPMG LLP

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/26/2023 2:41 PM
Reviewed By: A. Floresca
Case #23CV414120
Envelope: 11814435**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| STEPHEN ROSSI, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GREG W. BECKER, DANIEL J. BECK, ROGER F. DUNBAR, KAREN HON, ERIC A. BENHAMOU, JOHN S. CLENDENING, RICHARD D. DANIELS, ALISON DAVI S, JOEL P. FRIEDMAN, JEFFERY N. MAGGIONCALDA, BEVERLY KAY MATTHEWS, MARY J. MILLER, KATE D. MITCHELL, JOHN F. ROBINSON, GAREN K. STAGLIN, KPMG LLP, BENHAMOU GLOBAL VENTURES, LLC, FIFTH ERA, LLC, and SCALE VENTURE PARTNERS, <br><br> Defendants. | Case No. 23-cv-414120 <br><br> CLASS ACTION <br><br> **NOTICE OF VERIFIED APPLICATION FOR ADMISSION OF KEVIN J. O'BRIEN TO APPEAR *PRO HAC VICE* FOR KPMG LLP** <br><br> Date: <br> Time: <br> Judge: Hon. Sunil R. Kulkarni <br> Dept:  1 |

PLEASE TAKE NOTICE that Defendant KPMG LLP ("Defendant") hereby moves the Court to grant this unopposed application for an order pursuant to California Rules of Court, Rule 9.40, permitting out-of-state attorney, Kevin J. O'Brien, to appear as counsel *pro hac vice* for Defendant in the above-captioned case.

This application is made on the grounds that the applicant, Kevin J. O'Brien, is a member in good standing of the State Bar of Georgia and has been retained to appear in this action as counsel on behalf of Defendant.  Lisa Bugni of King & Spalding LLP is counsel of record for Defendant.  Kevin J. O'Brien is neither a resident of the State of California, nor regularly employed in the State of California, nor regularly engaged in substantial business, professional, or other activities in the State of California.

This application is based on this notice, the attached memorandum of points and authorities, the attached verified application of Kevin J. O'Brien, the attached declaration of Lisa Bugni, all other pleadings and papers on file, or of which this Court may take judicial notice at the time this application is heard, and all evidence adduced, and arguments made at the time of the hearing on this application.  A copy of this application, the supporting memorandum of points and authorities, the verified application of Kevin J. O'Brien, and the declaration of Lisa Bugni, have been served on the State Bar of California, together with the $50.00 fee, made payable to the State Bar of California, pursuant to the requirements of Rule 9.40(e) of the California Rules of Court.

Dated:  April 26, 2023

KING & SPALDING LLP

By: _____
LISA BUGNI

Attorneys for Defendant KPMG LLP

2

# Exhibit S

LISA BUGNI (SBN# 323962)
lbugni@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:     (415) 318-1200
Facsimile:     (415) 318-1300

Kevin J. O'Brien (*Pro Hac Vice* Pending)
kobrien@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
Telephone:     (404) 572-4600
Facsimile:     (404) 572-5100

Attorneys for Defendant KPMG LLP

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/26/2023 2:41 PM
Reviewed By: A. Floresca
Case #23CV414120
Envelope: 11814435**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| STEPHEN ROSSI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREG W. BECKER, DANIEL J. BECK, ROGER F. DUNBAR, KAREN HON, ERIC A. BENHAMOU, JOHN S. CLENDENING, RICHARD D. DANIELS, ALISON DAVIS, JOEL P. FRIEDMAN, JEFFERY N. MAGGIONCALDA, BEVERLY KAY MATTHEWS, MARY J. MILLER, KATE D. MITCHELL, JOHN F. ROBINSON, GAREN K. STAGLIN, KPMG LLP, BENHAMOU GLOBAL VENTURES, LLC, FIFTH ERA, LLC, and SCALE VENTURE PARTNERS,<br><br>Defendants. | Case No. 23-cv-414120<br><br>CLASS ACTION<br><br>**VERIFIED APPLICATION FOR ADMISSION OF KEVIN J. O'BRIEN TO APPEAR *PRO HAC VICE* FOR KPMG LLP**<br><br><br>Date:<br>Time:<br>Judge: Hon. Sunil R. Kulkarni<br>Dept:  1 |

I, Kevin J. O'Brien, declare that:

1.      I am an attorney with the law firm of King & Spalding LLP.  I am a member in good standing of the State Bar of Georgia (Bar Number 714849).

2.      I have been apprised of the facts, issues and developments in the above-captioned action, and I am familiar with the subject matter of this case.  I intend to act as co-counsel of record for KPMG LLP (Defendant) in this case.

3.      I presently reside at 34 Berkeley Road, Avondale Estates, GA 30002, and am an attorney in the law firm of King & Spalding LLP, resident in the Georgia office located at 1180 Peachtree Street, NE, Suite 1600, Atlanta, GA 30309-3521, and have been since 2015.

4.      I am admitted to practice in the following courts:

- Georgia (2015)
- New York (2022)
- Virginia (2009)
- U.S. Court of Appeals for the Second Circuit (2023)
- U.S. Court of Appeals for the Eleventh Circuit (2015)
- U.S. Court of Appeals for the Fourth Circuit (2010)
- U.S. District Court for the Northern District of Georgia (2015)
- U.S. District Court for the Eastern District of Virginia (2009
- U.S. District Court for the Western District of Virginia (2009)
- U.S. District Court for the Southern District of New York (2022
- U.S. District Court for the Eastern District of New York (2022)

5.      I am currently a member in good standing in all of the courts in which I have been admitted.

6.      I have never been suspended or disbarred in any court.

7.      In the preceding two years, I have not been admitted to appear *pro hac vice* before any court in California.

8.      I am not: (i) a resident of the State of California; (ii) regularly employed in the State of California; or (iii) regularly engaged in substantial business, professional, or other

2

1   activities in the State of California.

2       9.      By this application, I request *pro hac vice* permission from the Court to appear as

3   co-counsel on behalf of Defendant.

4       10.     The name, address, and telephone number of the active member of the State Bar of

5   California who is attorney of record:

6           LISA BUGNI (SBN# 323962)
            lbugni@kslaw.com
7           KING & SPALDING LLP
            50 California Street, Suite 3300
8           San Francisco, CA 94111
            Telephone:    (415) 318-1200
9           Facsimile:    (415) 318-1300

10

11  Executed this 25th day of April, in New York, New York.

12

13

14                                                          _____
                                                            KEVIN J. O'BRIEN
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    3

# Exhibit T

23CV414120
Santa Clara – Civil

B. Roman-Antunez

1  KRISTOPHER KASTENS (State Bar No. 254797)
   KRAMER LEVIN NAFTALIS & FRANKEL LLP
2  333 Twin Dolphin Drive, Suite 700
   Redwood Shores, CA 94065
3  Telephone: (650) 752-1700
   Facsimile: (650) 752-1800
4  Email: kkastens@kramerlevin.com

5
   *Attorneys for Defendant*
6  Daniel J. Beck

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF SANTA CLARA**

10

11 STEPHEN ROSSI, INDIVIDUALLY AND        Case No. 23-cv-414120
   ON BEHALF OF ALL OTHERS
12 SIMILARLY SITUATED,                     **PROOF OF SERVICE**

13                     Plaintiffs,
              v.
14
   GREG W. BECKER, DANIEL J. BECK,
15 ROGER F. DUNBAR, KAREN HON, ERIC
   A. BENHAMOU, JOHN S. CLENDENING,
16 RICHARD D. DANIELS, ALISON DAVIS,
   JOEL P. FRIEDMAN, JEFFERY N.
17 MAGGIONCALDA, BEVERLY KAY
   MATTHEWS, MARY J. MILLER, KATE D.
18 MITCHELL, JOHN F. ROBINSON, GAREN
   K. STAGLIN, KPMG LLP, BENHAMOU
19 GLOBAL VENTURES, LLC, FIFTH ERA,
   LLC, AND SCALE VENTURE PARTNERS
20
                     Defendants.
21

22

23

24

25

26

27

28

Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/1/2023 4:08 PM
Reviewed By: B. Roman-Antunez
Case #23CV414120
Envelope: 11854026

PROOF OF SERVICE                                    Case No. 23-cv-414120

**PROOF OF SERVICE**

I declare that I am a citizen of the United States.  My office address is 333 Twin Dolphin Drive, Suite 700, Redwood Shores, California 94065.  I reside in the state of California where this mailing occurs.   I am over the age of 18 years, and not a party to the within action. On the date set forth below, I served the foregoing document(s) described as:

**NOTICE OF APPEARANCE OF KRISTOPHER KASTENS**

**NOTICE OF VERIFIED APPLICATIONS FOR ADMISSION *PRO HAC VICE* OF JENNIFER S. WINDOM, BARRY H. BERKE, DARREN A. LAVERNE, AND DANIEL M. KETANI**

**VERIFIED APPLICATION OF JENNIFER S. WINDOM TO APPEAR AS COUNSEL *PRO HAC VICE***

**VERIFIED APPLICATION OF BARRY H. BERKE TO APPEAR AS COUNSEL *PRO HAC VICE***

**VERIFIED APPLICATION OF DARREN A. LAVERNE TO APPEAR AS COUNSEL *PRO HAC VICE***

**VERIFIED APPLICATION OF DANIEL M. KETANI TO APPEAR AS COUNSEL *PRO HAC VICE***

**DECLARATION OF KRISTOPHER KASTENS IN SUPPORT OF THE VERFIED APPLICATIONS FOR ADMISSION *PRO HAC VICE* OF JENNIFER S. WINDOM, BARRY H. BERKE, DARREN A. LAVERNE, AND DANIEL M. KETANI**

**[PROPOSED] ORDER GRANTING THE VERFIED APPLICATIONS FOR ADMISSION *PRO HAC VICE* OF JENNIFER S. WINDOM, BARRY H. BERKE, DARREN A. LAVERNE, AND DANIEL M. KETANI**

On the following person(s) in this action by mail as follows:

David W. Hall (274921)
Armen Zohrabian (230492)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
dhall@hedinhall.com
azohrabian@hedinhall.com

Lisa Bugni
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
lbugni@kslaw.com

*Attorneys for Defendant KPMG LLP*

1

PROOF OF SERVICE                                                    Case No. 23-cv-414120

*Attorneys for Plaintiff Stephen Rossi and
the Proposed Class*

Brian Schall
Rina Restaino
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (3 10) 301-3335
Facsimile: (3 10) 388-0192
Email: brian@schallfirm.com
rina@schallfirm.com

*Attorneys for Plaintiff Stephen Rossi*

(X)     BY UNITED STATES MAIL On May 1, 2023, I enclosed the documents in a sealed envelope or package addressed to the persons as set forth above.  I placed the envelope for collection and mailing, following ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage thereon fully prepaid.

( )     BY OVERNIGHT DELIVERY On **, 2023, I enclosed the documents in an envelope and package provided by an overnight delivery carrier and addressed to the persons above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

( )     BY-MAIL OR ELECTRONIC TRANSMISSION On April 28, 2023, I caused the documents to be sent to the persons at the e-mail address listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

( )     BY PERSONAL SERVICE On **, 2023 at _____, CA, I caused such envelope(s) to be delivered to _____. I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.


Executed on May 1, 2023, in Redwood Shores, California.


_____
Kristopher Kastens

2

# Exhibit U

1   KRISTOPHER KASTENS (State Bar No. 254797)
2   KRAMER LEVIN NAFTALIS & FRANKEL LLP
    333 Twin Dolphin Drive, Suite 700
3   Redwood Shores, CA 94065
    Telephone: (650) 752-1700
4   Facsimile: (650) 752-1800
    Email: kkastens@kramerlevin.com
5
    *Attorneys for Defendant*
6   Daniel J. Beck

7

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/1/2023 4:08 PM
Reviewed By: B. Roman-Antunez
Case #23CV414120
Envelope: 11854026**

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **COUNTY OF SANTA CLARA**

10

11  STEPHEN ROSSI, INDIVIDUALLY AND          Case No. 23-cv-414120
    ON BEHALF OF ALL OTHERS
12  SIMILARLY SITUATED,                      **NOTICE OF VERIFIED APPLICATIONS
                                             OF JENNIFER S. WINDOM, BARRY H.**
13              Plaintiffs,                  **BERKE, DARREN A. LAVERNE, AND
          v.                                 DANIEL M. KETANI TO APPEAR AS**
14                                           **COUNSEL *PRO HAC VICE***

15  GREG W. BECKER, DANIEL J. BECK,
    ROGER F. DUNBAR, KAREN HON, ERIC
16  A. BENHAMOU, JOHN S. CLENDENING,         Hon. Sunil R. Kulkarni
    RICHARD D. DANIELS, ALISON DAVIS,
17  JOEL P. FRIEDMAN, JEFFERY N.
    MAGGIONCALDA, BEVERLY KAY
18  MATTHEWS, MARY J. MILLER, KATE D.
    MITCHELL, JOHN F. ROBINSON, GAREN
19  K. STAGLIN, KPMG LLP, BENHAMOU
    GLOBAL VENTURES, LLC, FIFTH ERA,
20  LLC, AND SCALE VENTURE PARTNERS

21              Defendants.

22

23  <u>**TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF**</u>
    <u>**SANTA CLARA; TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS**</u>
24  <u>**OF RECORD; AND TO THE STATE BAR OF CALIFORNIA**</u>

25

26

27

28

NOTICE OF VERIFIED APPLICATIONS                          Case No. 23-cv-414120
TO APPEAR AS COUNSEL *PRO HAC VICE*

PLEASE TAKE NOTICE that Defendant Daniel J. Beck ("Defendant") hereby moves the Court to grant this unopposed application for an order pursuant to California Rules of Court, Rule 9.40, permitting out-of-state attorneys Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani ("the Applicants"), to appear as counsel *pro hac vice* for Defendant in the above-captioned case.

These applications are made on the grounds that the Applicants have been retained to appear in this action as counsel on behalf of Defendant. Jennifer S. Windom is a member in good standing of the Bar of the District of Columbia. Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani are members in good standing of the State Bar of New York. Kristopher Kastens is counsel of record for Defendant. Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani are not residents of the State of California. Nor are Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani regularly engaged in substantial business, professional, or other activities in the State of California.

This application is based on this notice, the attached verified applications of Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani, the attached declaration of Kristopher Kastens, all other pleadings and papers on file, or of which this Court may take judicial notice at the time the application is heard, and all evidence adduced, and arguments made at the time of the hearing on this application.  A copy of this notice, the verified applications of Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani, and the declaration of Kristopher Kastens have been served on the State Bar of California, together with the $50.00 fee per application, made payable to the State Bar of California, pursuant to the requirements of Rule 9.40(e) of the California Rules of Court.

NOTICE OF VERIFIED APPLICATIONS
TO APPEAR AS COUNSEL *PRO HAC VICE*

Case No. 23-cv-414120

Dated: May 1, 2023                    By: _____
                                          Kristopher Kastens (State Bar No. 254797)
                                          KRAMER LEVIN NAFTALIS
                                          & FRANKEL LLP
                                          333 Twin Dolphin Drive, Suite 700
                                          Redwood Shores, California 94065
                                          Telephone:  (650) 752-1700
                                          Facsimile:  (650) 752-1800
                                          E-mail:  kkastens@kramerlevin.com

                                          *Attorneys for Defendant*
                                          Daniel J. Beck

NOTICE OF VERIFIED APPLICATIONS                    Case No. 23-cv-414120
TO APPEAR AS COUNSEL *PRO HAC VICE*

# Exhibit V

1  KRISTOPHER KASTENS (State Bar No. 254797)
   KRAMER LEVIN NAFTALIS & FRANKEL LLP
2  333 Twin Dolphin Drive, Suite 700
   Redwood Shores, CA 94065
3  Telephone: (650) 752-1700
   Facsimile: (650) 752-1800
4  Email: kkastens@kramerlevin.com

5
   *Attorneys for Defendant*
6  Daniel J. Beck

7

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/1/2023 4:08 PM
Reviewed By: B. Roman-Antunez
Case #23CV414120
Envelope: 11854026**

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF SANTA CLARA**

10

11  STEPHEN ROSSI, INDIVIDUALLY AND        Case No. 23-cv-414120
    ON BEHALF OF ALL OTHERS
12  SIMILARLY SITUATED,                    **DECLARATION OF KRISTOPHER
                                           KASTENS IN SUPPORT OF THE
13                Plaintiffs,              VERIFIED APPLICATIONS FOR
          v.                               ADMISSION *PRO HAC VICE* OF
14                                         JENNIFER S. WINDOM, BARRY H.
    GREG W. BECKER, DANIEL J. BECK,        BERKE, DARREN A. LAVERNE, AND
15  ROGER F. DUNBAR, KAREN HON, ERIC       DANIEL M. KETANI**
    A. BENHAMOU, JOHN S. CLENDENING,
16  RICHARD D. DANIELS, ALISON DAVIS,
    JOEL P. FRIEDMAN, JEFFERY N.
17  MAGGIONCALDA, BEVERLY KAY
    MATTHEWS, MARY J. MILLER, KATE D.
18  MITCHELL, JOHN F. ROBINSON, GAREN
    K. STAGLIN, KPMG LLP, BENHAMOU
19  GLOBAL VENTURES, LLC, FIFTH ERA,
    LLC, AND SCALE VENTURE PARTNERS
20
                  Defendants.
21

22

23

24

25

26

27

28

I, Kristopher Kastens, declare:

1.      I am partner at the law firm Kramer Levin Naftalis & Frankel LLP.  I have knowledge of the facts contained herein and, if called as a witness, I could and would competently testify thereto. I make this declaration in support of the Verified Applications for Admission *Pro Hac Vice* of Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani.

2.      I am an attorney at law duly authorized to practice in the State of California.  My business address is 333 Twin Dolphin Drive, Suite 700, Redwood Shores, California 94065.  I am counsel of record for Defendant Daniel J. Beck.

3.      On May 1, 2023, I caused to be served on the State Bar of California, through the Applicant Portal and at its San Francisco offices, the Verified Applications for Admission *Pro Hac Vice* of Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani, a copy of the Notice of Verified Application for Admission *Pro Hac Vice* of Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani; the contemporaneously-filed Declaration of Kristopher Kastens, and a copy of the Proposed Order granting the Application for Admission *Pro Hac Vice* of Jennifer S. Windom, Barry H. Berke, Darren A. LaVerne, and Daniel M. Ketani, pursuant to the requirements set forth in Rule 9.40 of the California Rules of Court.  On May 1, 2023, I caused electronic payment in the amount of $50.00 to be delivered to the State Bar of California through the Applicant Portal with proof of payment sent to its San Francisco offices.


I declare under penalty of perjury under the law of the State of California and the United States that each of the above statements is true and correct.  Executed on May 1, 2023 in Redwood Shores, California.

_____

Kristopher Kastens

1

DECLARATION OF KRISTOPHER KASTENS IN SUPPORT OF          Case No. 23-cv-414120
THE VERIFIED APPLICATIONS FOR ADMISSION *PRO HAC VICE*

# Exhibit W

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SANTA CLARA

DOWNTOWN COURTHOUSE – CIVIL DIVISION
191 North First Street
San José, California  95113
(408) 882-2100



- **Public Case Information Website: https://cmportal.scscourt.org/Portal/**  Providing access to local cases through online search & retrieval.
- **Main Website: www.scscourt.org**  Providing access to rules, self help information, forms, fees, locations & phone numbers.

## Civil Filing Rejection Letter

[                        ]        Case Number: 23cv414120 / envelope #11853244
[                        ]
[                        ]        Case Title: _____

Dear Sir/Madam:

The Document is being returned for the following reason(s):

1. ☐ The Civil Case Cover Sheet adopted by Rule 3.220 is missing.  Please submit the cover sheet within 10 days of this Notice or you may be subject to sanctions under California Rules of Court, Rule 2.30.

2. ☐ The case number is ☐ missing, ☐ incorrect, or ☐ incomplete.

3. ☐ The documents **MUST** be on adopted Judicial Council forms. ☐ Forms are obsolete.

4. ☐ The document is incomplete.  Please complete information where "Red" check marks are placed.

5. ☐ The document is missing an original signature.

6. ☐ The document requires a $ ____ Filing Fee or Waiver of Fees granted by this Court.

7. ☐ The document is not in compliance with Rule 2.100-2.119 as follows:
   a. ☐ Caption page required          c. ☐ State Bar Number required
   b. ☐ Two-hole punch and stapled     d. ☐ Telephone number

8. ☐ Request for Dismissal is incomplete.  Please provide the information requested.
   Complete:     a. ☐ item 1a.              ☐ item 1b.
                 b. ☐ item 2, need consent of ☐ Cross-Complaint  ☐ Intervener  ☐ Complaint

9. ☐ An Order of Court is required prior to filing this document.

10. ☐ The case was dismissed on: _____

11. ☐ The document is filed in the incorrect Court.

12. ☑ Other: Notice of appearance - This is a Complex case.  Complex fees required.
   _____

**Notes for Future Reference:**

15. ☐ To expedite your requests for Writs or Abstracts, please submit an **endorsed filed** copy of your judgment.

16. ☐ Please enclose a self-addressed stamped envelope for the return of your copies.

17. ☐ Please make checks payable to: Clerk Superior Court

Date: 5-1-23 _____          Clerk of the Court

                                         A. Floresca

                                         Clerk, by _____, Deputy

*The Court staff is not authorized to give you legal advice or instruct you on which legal forms to use, as this constitutes an unauthorized practice of law.*
*The Court recommends that you seek appropriate legal assistance.*

CV-5020 REV 12/03/15

# Exhibit X

1   KRISTOPHER KASTENS (State Bar No. 254797)
    KRAMER LEVIN NAFTALIS & FRANKEL LLP
2   333 Twin Dolphin Drive, Suite 700
    Redwood Shores, CA 94065
3   Telephone: (650) 752-1700
    Facsimile: (650) 752-1800
4   Email: kkastens@kramerlevin.com

5   *Attorneys for Defendant*
6   Daniel J. Beck

Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/1/2023 4:08 PM
Reviewed By: B. Roman-Antunez
Case #23CV414120
Envelope: 11854026

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                       **COUNTY OF SANTA CLARA**

10

11  STEPHEN ROSSI, INDIVIDUALLY AND          Case No. 23-cv-414120
    ON BEHALF OF ALL OTHERS
12  SIMILARLY SITUATED,                      **VERIFIED APPLICATION OF JENNIFER
                                             S. WINDOM TO APPEAR AS COUNSEL**
13                    Plaintiffs,            *PRO HAC VICE*
            v.
14
15  GREG W. BECKER, DANIEL J. BECK,
    ROGER F. DUNBAR, KAREN HON, ERIC
16  A. BENHAMOU, JOHN S. CLENDENING,
    RICHARD D. DANIELS, ALISON DAVIS,
17  JOEL P. FRIEDMAN, JEFFERY N.
    MAGGIONCALDA, BEVERLY KAY
18  MATTHEWS, MARY J. MILLER, KATE D.
    MITCHELL, JOHN F. ROBINSON, GAREN
19  K. STAGLIN, KPMG LLP, BENHAMOU
    GLOBAL VENTURES, LLC, FIFTH ERA,
20  LLC, AND SCALE VENTURE PARTNERS

21                    Defendants.

22

23  **TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF**
    **SANTA CLARA; TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS**
24  **OF RECORD; AND TO THE STATE BAR OF CALIFORNIA**

25

26

27

28

VERIFIED APPLICATION OF JENNIFER S. WINDOM                Case No. 23-cv-414120
TO APPEAR AS COUNSEL *PRO HAC VICE*

I, Jennifer S. Windom, hereby submit this Verified Application to appear as counsel *pro hac vice* in the above-referenced action pursuant to California Rules of Court, Rule 9.40; and in support of this Verified Application, hereby declare as follows:

1.      I am partner in the law firm Kramer Levin Naftalis & Frankel LLP, counsel of record for Defendant Daniel J. Beck in this action.  I have knowledge of the facts contained herein and, if called as a witness, I could and would competently testify thereto.

2.      My office address is:  2000 K Street NW 4th Floor, Washington, DC 20006.  My email address is jwindom@kramerlevin.com.  My residence address is: 4437 Yuma Street, NW, Washington, DC 20016.  I am not (i) a resident of the State of California, (ii) regularly employed in the State of California, or (iii) regularly engaged in substantial business, professional, or other activities in the State of California.

3.      I am an attorney at law duly authorized to practice law in the District of Columbia.  I have been admitted to practice in the following courts (with year of admission in parentheses):

(a)      Illinois (Illinois Supreme Court) (2005);

(b)      District of Columbia (D.C. Court of Appeals) (2007);

(c)      U.S. Court of Appeals, District of Columbia Circuit (2019);

(d)      U.S. District Court., District of Columbia (2007);

(e)      U.S. Court of Federal Claims (2007); and

(f)      U.S. Supreme Court (2019).

4.      I am a member in good standing in the courts listed above.

5.      I am not currently, nor have I ever been, suspended or disbarred in any court.

6.      I have not applied to appear as counsel *pro hac vice* in any California state court action in the two (2) years preceding this application.  On March 27, 2023 I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for three cases captioned as Siddiqui v. Greg W. Becker and Daniel J. Beck 4:23-cv-01228-HSG, Snook v. Greg W. Becker and Daniel J. Beck 3:23-cv-01173-VC, and Vanipenta v. SVB Financial Group et. al. 3:23-cv-01097-JD. On April 13, 2023, I applied to appear *pro hac vice* on behalf of Defendant Beck in the District

Court of the Northern District of California for one case captioned as City of Hialeah Employees' Retirement System v. Greg W. Becker, et al. 3:23-cv-01697-AMO. My *pro hac vice* applications in each of these four cases were granted.

7.   The California attorney of record for Defendant Beck in this case, with whom I will be associated, is:

> Kristopher Kastens (California State Bar No. 254797)
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 333 Twin Dolphin Drive, Suite 700
> Redwood Shores, California 94065
> Telephone: (650) 752-1700
> Facsimile: (650) 752-1800
> E-mail: kkastens@kramerlevin.com

8.   Pursuant to California Rules of Court, Rule 9.40(c) and California Code of Civil Procedure, section 1013a, on May 1, 2023, I caused a true and correct copy of this Application to be served upon all parties who have appeared in this action and upon the State Bar of California at its San Francisco Office, as shown by the attached Proof of Service.

9.   Pursuant to California Rules of Court, Rule 9.40(e), I have paid a fee in the amount of $50.00 to the State Bar of California, and submitted along with a copy of this Application upon the State Bar of California at its San Francisco Office.

10.   Plaintiffs do not oppose my application for admission *pro hac vice.*

## **VERIFICATION**

I, Jennifer S. Windom, certify and declare that I have read the foregoing Verified Application to Appear As Counsel *Pro Hac Vice* and know its contents. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 1, 2023 in Washington, District of Columbia.

_____
Jennifer S. Windom

2

# Exhibit Y

1    KRISTOPHER KASTENS (State Bar No. 254797)
     KRAMER LEVIN NAFTALIS & FRANKEL LLP
2    333 Twin Dolphin Drive, Suite 700
     Redwood Shores, CA 94065
3    Telephone: (650) 752-1700
     Facsimile: (650) 752-1800
4    Email: kkastens@kramerlevin.com

5

     *Attorneys for Defendant*
6    Daniel J. Beck

Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/1/2023 4:08 PM
Reviewed By: B. Roman-Antunez
Case #23CV414120
Envelope: 11854026

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **COUNTY OF SANTA CLARA**

10

11    STEPHEN ROSSI, INDIVIDUALLY AND
     ON BEHALF OF ALL OTHERS
12    SIMILARLY SITUATED,

13              Plaintiffs,

14      v.

15    GREG W. BECKER, DANIEL J. BECK,
     ROGER F. DUNBAR, KAREN HON, ERIC
16    A. BENHAMOU, JOHN S. CLENDENING,
     RICHARD D. DANIELS, ALISON DAVIS,
17    JOEL P. FRIEDMAN, JEFFERY N.
     MAGGIONCALDA, BEVERLY KAY
18    MATTHEWS, MARY J. MILLER, KATE D.
     MITCHELL, JOHN F. ROBINSON, GAREN
19    K. STAGLIN, KPMG LLP, BENHAMOU
     GLOBAL VENTURES, LLC, FIFTH ERA,
20    LLC, AND SCALE VENTURE PARTNERS

21             Defendants.

22

Case No. 23-cv-414120

**VERIFIED APPLICATION OF DARREN A.
LAVERNE TO APPEAR AS COUNSEL
*PRO HAC VICE***

23    **TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF**
24    **SANTA CLARA; TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS**
     **OF RECORD; AND TO THE STATE BAR OF CALIFORNIA**
25

26

27

28

I, Darren A. LaVerne, hereby submit this Verified Application to appear as counsel *pro hac vice* in the above-referenced action pursuant to California Rules of Court, Rule 9.40; and in support of this Verified Application, hereby declare as follows:

1.    I am partner in the law firm Kramer Levin Naftalis & Frankel LLP, counsel of record for Defendant Daniel J. Beck in this action.  I have knowledge of the facts contained herein and, if called as a witness, I could and would competently testify thereto.

2.    My office address is:  1177 Avenue of the Americas, New York, NY 10036.  My email is dlaverne@kramerlevin.com.  My residence address is: 77 Woodridge Circle, New Canaan, CT 06840.  I am not (i) a resident of the State of California, (ii) regularly employed in the State of California, or (iii) regularly engaged in substantial business, professional, or other activities in the State of California.

3.    I am an attorney at law duly authorized to practice law in State of New York.  I have been admitted to practice in the following courts (with year of admission in parentheses):

   (a)    New York, Court of Appeals (2005);

   (b)    U.S. Court of Appeals, 2nd Circuit (2007);

   (c)    U.S. Court of Appeals, 4th Circuit (2020);

   (d)    U.S. Court of Appeals, 9th Circuit (2021);

   (e)    U.S. Court of Appeals, 11th Circuit (2021);

   (f)    U.S. District Court, Eastern District of New York (2022);

   (g)    U.S. District Court, Southern District of New York (2006);

   (h)    U.S. Court of Appeals, District of Columbia (2007); and

   (i)    U.S. District Court, Eastern District of Michigan (2007).

4.    I am a member in good standing in the courts listed above.

5.    I am not currently, nor have I ever been, suspended or disbarred in any court.

6.    I have applied to appear as counsel *pro hac vice* in one California state court action in the two (2) years preceding this application.  On September 2, 2021, I applied to appear *pro hac vice* in Courts of Appeal of the State of California, Third Appellate District in a case titled Clark, et al. v

1

Superior Court of Sacramento County, No. C094735. My *pro hac vice* application in this case was granted.  On March 27, 2023 I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for three cases captioned as Siddiqui v. Greg W. Becker and Daniel J. Beck 4:23-cv-01228-HSG, Snook v. Greg W. Becker and Daniel J. Beck 3:23-cv-01173-VC, and Vanipenta v. SVB Financial Group et. al. 3:23-cv-01097-JD.  On April 13, 2023, I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for one case captioned as City of Hialeah Employees' Retirement System v. Greg W. Becker, et al. 3:23-cv-01697-AMO.  My *pro hac vice* applications in each of these four cases were granted.

7.      The California attorney of record for Defendant Beck in this case, with whom I will be associated, is:

> Kristopher Kastens (California State Bar No. 254797)
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 333 Twin Dolphin Drive, Suite 700
> Redwood Shores, California 94065
> Telephone: (650) 752-1700
> Facsimile: (650) 752-1800
> E-mail: kkastens@kramerlevin.com

8.      Pursuant to California Rules of Court, Rule 9.40(c) and California Code of Civil Procedure, section 1013a, on May 1, 2023, I caused a true and correct copy of this Application to be served upon all parties who have appeared in this action and upon the State Bar of California at its San Francisco Office, as shown by the attached Proof of Service.

9.      Pursuant to California Rules of Court, Rule 9.40(e), I have paid a fee in the amount of $50.00 to the State Bar of California, and submitted along with a copy of this Application upon the State Bar of California at its San Francisco Office.

10.     Plaintiffs do not oppose my application for admission *pro hac vice*.

//

//

//

2

**<u>VERIFICATION</u>**

I, Darren A. LaVerne, certify and declare that I have read the foregoing Verified Application to Appear As Counsel *Pro Hac Vice* and know its contents.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 1, 2023 in New York, New York.

_____
Darren A. LaVerne

VERIFIED APPLICATION OF DARREN A. LAVERNE          Case No. 23-cv-414120
TO APPEAR AS COUNSEL *PRO HAC VICE*

# Exhibit Z

KRISTOPHER KASTENS (State Bar No. 254797)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: kkastens@kramerlevin.com

*Attorneys for Defendant*
Daniel J. Beck

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/1/2023 4:08 PM
Reviewed By: B. Roman-Antunez
Case #23CV414120
Envelope: 11854026**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

STEPHEN ROSSI, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

                    Plaintiffs,

        v.

GREG W. BECKER, DANIEL J. BECK,
ROGER F. DUNBAR, KAREN HON, ERIC
A. BENHAMOU, JOHN S. CLENDENING,
RICHARD D. DANIELS, ALISON DAVIS,
JOEL P. FRIEDMAN, JEFFERY N.
MAGGIONCALDA, BEVERLY KAY
MATTHEWS, MARY J. MILLER, KATE D.
MITCHELL, JOHN F. ROBINSON, GAREN
K. STAGLIN, KPMG LLP, BENHAMOU
GLOBAL VENTURES, LLC, FIFTH ERA,
LLC, AND SCALE VENTURE PARTNERS

                    Defendants.

Case No. 23-cv-414120

**VERIFIED APPLICATION OF DANIEL M.
KETANI TO APPEAR AS COUNSEL *PRO
HAC VICE***

**<u>TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF
SANTA CLARA; TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS
OF RECORD; AND TO THE STATE BAR OF CALIFORNIA</u>**

I, Daniel M. Ketani, hereby submit this Verified Application to appear as counsel *pro hac vice* in the above-referenced action pursuant to California Rules of Court, Rule 9.40; and in support of this Verified Application, hereby declare as follows:

1.      I am an associate in the law firm Kramer Levin Naftalis & Frankel LLP, counsel of record for Defendant Daniel J. Beck in this action. I have knowledge of the facts contained herein and, if called as a witness, I could and would competently testify thereto.

2.      My office address is:  1177 Avenue of the Americas, New York, NY 10036.  My email address is dketani@kramerlevin.com.  My residence address is: 510 East 86th Street, APT 12B, New York, NY 10028.  I am not (i) a resident of the State of California, (ii) regularly employed in the State of California, or (iii) regularly engaged in substantial business, professional, or other activities in the State of California.

3.      I am an attorney at law duly authorized to practice law in State of New York.  I have been admitted to practice in the following courts (with year of admission in parentheses):

        (a)      New York, Court of Appeals (2015);

        (b)      U.S. Court of Appeals, 9th Circuit (2021);

        (c)      U.S. Court of Appeals, 11th Circuit (2021);

        (d)      U.S. District Court, Eastern District of New York (2016); and

        (e)      U.S. District Court, Southern District of New York (2016).

4.      I am a member in good standing in the courts listed above.

5.      I am not currently, nor have I ever been, suspended or disbarred in any court.

6.      I have not applied to appear as counsel *pro hac vice* in any California state court action in the two (2) years preceding this application.  On March 27, 2023 I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for three cases captioned as Siddiqui v. Greg W. Becker and Daniel J. Beck 4:23-cv-01228-HSG, Snook v. Greg W. Becker and Daniel J. Beck 3:23-cv-01173-VC, and Vanipenta v. SVB Financial Group et. al. 3:23-cv-01097-JD.  On April 13, 2023, I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for one case captioned as City of Hialeah

VERIFIED APPLICATION OF DANIEL M. KETANI                    Case No. 23-cv-414120
TO APPEAR AS COUNSEL *PRO HAC VICE*

1  Employees' Retirement System v. Greg W. Becker, et al. 3:23-cv-01697-AMO.  My *pro hac vice*

2  applications in each of these four cases were granted.

3      7.      The California attorney of record for Defendant Beck in this case, with whom I will be

4  associated, is:

> Kristopher Kastens (California State Bar No. 254797)
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 333 Twin Dolphin Drive, Suite 700
> Redwood Shores, California 94065
> Telephone: (650) 752-1700
> Facsimile: (650) 752-1800
> E-mail: kkastens@kramerlevin.com

8.      Pursuant to California Rules of Court, rule 9.40(c) and California Code of Civil

Procedure, section 1013a, on May 1, 2023, I caused a true and correct copy of this Application to be

served upon all parties who have appeared in this action and upon the State Bar of California at its San

Francisco Office, as shown by the attached Proof of Service.

9.      Pursuant to California Rules of Court, rule 9.40(e), I have paid a fee in the amount of

$50.00 to the State Bar of California and submitted along with a copy of this Application upon the

State Bar of California at its San Francisco Office.

10.     Plaintiffs do not oppose my application for admission *pro hac vice.*

## **VERIFICATION**

I, Daniel M. Ketani, certify and declare that I have read the foregoing Verified Application to

Appear As Counsel *Pro Hac Vice* and know its contents. I declare under penalty of perjury under the

laws of the State of California that the foregoing is true and correct.

Executed on May 1, 2023 in New York, New York.

Daniel M. Ketani

VERIFIED APPLICATION OF DANIEL M. KETANI          Case No. 23-cv-414120
TO APPEAR AS COUNSEL *PRO HAC VICE*

# Exhibit AA

B. Roman-Antunez

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/1/2023 4:08 PM
Reviewed By: B. Roman-Antunez
Case #23CV414120
Envelope: 11854026**

KRISTOPHER KASTENS (State Bar No. 254797)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: kkastens@kramerlevin.com

*Attorneys for Defendant*
Daniel J. Beck

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| STEPHEN ROSSI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>              Plaintiffs,<br>    v.<br><br>GREG W. BECKER, DANIEL J. BECK, ROGER F. DUNBAR, KAREN HON, ERIC A. BENHAMOU, JOHN S. CLENDENING, RICHARD D. DANIELS, ALISON DAVIS, JOEL P. FRIEDMAN, JEFFERY N. MAGGIONCALDA, BEVERLY KAY MATTHEWS, MARY J. MILLER, KATE D. MITCHELL, JOHN F. ROBINSON, GAREN K. STAGLIN, KPMG LLP, BENHAMOU GLOBAL VENTURES, LLC, FIFTH ERA, LLC, AND SCALE VENTURE PARTNERS<br><br>              Defendants. | Case No. 23-cv-414120<br><br>**VERIFIED APPLICATION OF BARRY H. BERKE TO APPEAR AS COUNSEL *PRO HAC VICE*** |

<u>**TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CLARA; TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD; AND TO THE STATE BAR OF CALIFORNIA**</u>

I, Barry H. Berke, hereby submit this Verified Application to appear as counsel *pro hac vice* in the above-referenced action pursuant to California Rules of Court, Rule 9.40; and in support of this Verified Application, hereby declare as follows:

1.     I am partner in the law firm Kramer Levin Naftalis & Frankel LLP, counsel of record for Defendant Daniel J. Beck in this action.  I have knowledge of the facts contained herein and, if called as a witness, I could and would competently testify thereto.

2.     My office address is:  1177 Avenue of the Americas, New York, NY 10036.  My email address is bberke@kramerlevin.com.  My residence address is: 154 West 18th St, APT 4AD, New York, NY 10011.  I am not (i) a resident of the State of California, (ii) regularly employed in the State of California, or (iii) regularly engaged in substantial business, professional, or other activities in the State of California.

3.     I am an attorney at law duly authorized to practice law in State of New York.  I have been admitted to practice in the following courts (with year of admission in parentheses):

        (a)     New York, Court of Appeals (1990);

        (b)     U.S. Court of Appeals, 2nd Circuit (1991);

        (c)     U.S. Court of Appeals, 3rd Circuit (2012);

        (d)     U.S. District Court, Eastern District of New York (1994); and

        (e)     U.S. District Court, Southern District of New York (1990).

4.     I am a member in good standing in the courts listed above.

5.     I am not currently, nor have I ever been, suspended or disbarred in any court.

6.     I have not applied to appear as counsel *pro hac vice* in any California state court action in the two (2) years preceding this application.  On March 27, 2023 I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for three cases captioned as Siddiqui v. Greg W. Becker and Daniel J. Beck 4:23-cv-01228-HSG, Snook v. Greg W. Becker and Daniel J. Beck 3:23-cv-01173-VC, and Vanipenta v. SVB Financial Group et. al. 3:23-cv-01097-JD.  On April 13, 2023, I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for one case captioned as City of Hialeah

VERIFIED APPLICATION OF BARRY H. BERKE
TO APPEAR AS COUNSEL *PRO HAC VICE*                                    Case No. 23-cv-414120

Employees' Retirement System v. Greg W. Becker, et al. 3:23-cv-01697-AMO. My *pro hac vice* applications in each of these four cases were granted.

7.    The California attorney of record for Defendant Beck in this case, with whom I will be associated, is:

> Kristopher Kastens (California State Bar No. 254797)
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 333 Twin Dolphin Drive, Suite 700
> Redwood Shores, California 94065
> Telephone: (650) 752-1700
> Facsimile: (650) 752-1800
> E-mail: kkastens@kramerlevin.com

8.    Pursuant to California Rules of Court, Rule 9.40(c) and California Code of Civil Procedure, section 1013a, on May 1, 2023, I caused a true and correct copy of this Application to be served upon all parties who have appeared in this action and upon the State Bar of California at its San Francisco Office, as shown by the attached Proof of Service.

9.    Pursuant to California Rules of Court, Rule 9.40(e), I have paid a fee in the amount of $50.00 to the State Bar of California, and submitted along with a copy of this Application upon the State Bar of California at its San Francisco Office.

10.    Plaintiffs do not oppose my application for admission *pro hac vice*.

## **VERIFICATION**

I, Barry H. Berke, certify and declare that I have read the foregoing Verified Application to Appear As Counsel *Pro Hac Vice* and know its contents.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 1, 2023 in New York, New York.

_____
Barry H. Berke

2

# Exhibit BB

KRISTOPHER KASTENS (State Bar No. 254797)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: kkastens@kramerlevin.com

*Attorneys for Defendant*
Daniel J. Beck

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/3/2023 3:12 PM
Reviewed By: A. Floresca
Case #23CV414120
Envelope: 11877643**

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SANTA CLARA

| | |
|---|---|
| STEPHEN ROSSI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>               Plaintiffs,<br>    v.<br><br>GREG W. BECKER, DANIEL J. BECK, ROGER F. DUNBAR, KAREN HON, ERIC A. BENHAMOU, JOHN S. CLENDENING, RICHARD D. DANIELS, ALISON DAVIS, JOEL P. FRIEDMAN, JEFFERY N. MAGGIONCALDA, BEVERLY KAY MATTHEWS, MARY J. MILLER, KATE D. MITCHELL, JOHN F. ROBINSON, GAREN K. STAGLIN, KPMG LLP, BENHAMOU GLOBAL VENTURES, LLC, FIFTH ERA, LLC, AND SCALE VENTURE PARTNERS<br><br>             Defendants. | Case No. 23-cv-414120<br><br>**NOTICE OF ERRATA AS TO VERIFIED APPLICATION OF BARRY H. BERKE TO APPEAR AS COUNSEL *PRO HAC VICE***<br><br>Hon. Sunil R. Kulkarni |

<u>**TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CLARA AND TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD**</u>

PLEASE TAKE NOTICE that the Verified Application of Barry H. Berke to appear *pro hac vice*, filed on May 1, 2023, contained two typographical errors concerning the date of court admissions.  Mr. Berke's correct year of admission to the United States Court of Appeals for the Second Circuit is 1992, and his correct year of admission to the United States District Court for the Eastern District of New York is 1995.  Mr. Berke's corrected Verified Application to appear *pro hac vice*, with the correct years of admission, is attached here as Exhibit A.

Dated: May 3, 2023           By:  _____
                                  Kristopher Kastens (State Bar No. 254797)
                                  KRAMER LEVIN NAFTALIS
                                  & FRANKEL LLP
                                  333 Twin Dolphin Drive, Suite 700
                                  Redwood Shores, California 94065
                                  Telephone:  (650) 752-1700
                                  Facsimile:  (650) 752-1800
                                  E-mail:  kkastens@kramerlevin.com

                                  *Attorneys for Defendant*
                                  Daniel J. Beck

NOTICE OF ERRATA AS TO VERIFIED APPLICATION OF                    Case No. 23-cv-414120
BARRY H. BERKE TO APPEAR AS COUNSEL *PRO HAC VICE*

# EXHIBIT A

1  KRISTOPHER KASTENS (State Bar No. 254797)
2  KRAMER LEVIN NAFTALIS & FRANKEL LLP
   333 Twin Dolphin Drive, Suite 700
3  Redwood Shores, CA 94065
   Telephone: (650) 752-1700
4  Facsimile: (650) 752-1800
   Email: kkastens@kramerlevin.com
5
   *Attorneys for Defendant*
6  Daniel J. Beck

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                            **COUNTY OF SANTA CLARA**

10

11 STEPHEN ROSSI, INDIVIDUALLY AND          Case No. 23-cv-414120
   ON BEHALF OF ALL OTHERS
12 SIMILARLY SITUATED,                      **VERIFIED APPLICATION OF BARRY H.**
                                            **BERKE TO APPEAR AS COUNSEL *PRO***
13                   Plaintiffs,            ***HAC VICE***

14          v.

15 GREG W. BECKER, DANIEL J. BECK,
   ROGER F. DUNBAR, KAREN HON, ERIC
16 A. BENHAMOU, JOHN S. CLENDENING,
   RICHARD D. DANIELS, ALISON DAVIS,
17 JOEL P. FRIEDMAN, JEFFERY N.
   MAGGIONCALDA, BEVERLY KAY
18 MATTHEWS, MARY J. MILLER, KATE D.
   MITCHELL, JOHN F. ROBINSON, GAREN
19 K. STAGLIN, KPMG LLP, BENHAMOU
   GLOBAL VENTURES, LLC, FIFTH ERA,
20 LLC, AND SCALE VENTURE PARTNERS

21                   Defendants.

22

23 **TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF**
   **SANTA CLARA; TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS**
24 **OF RECORD; AND TO THE STATE BAR OF CALIFORNIA**

25

26

27

28

VERIFIED APPLICATION OF BARRY H. BERKE              Case No. 23-cv-414120
TO APPEAR AS COUNSEL *PRO HAC VICE*

I, Barry H. Berke, hereby submit this Verified Application to appear as counsel *pro hac vice* in the above-referenced action pursuant to California Rules of Court, Rule 9.40; and in support of this Verified Application, hereby declare as follows:

1.     I am partner in the law firm Kramer Levin Naftalis & Frankel LLP, counsel of record for Defendant Daniel J. Beck in this action.  I have knowledge of the facts contained herein and, if called as a witness, I could and would competently testify thereto.

2.     My office address is:  1177 Avenue of the Americas, New York, NY 10036.  My email address is bberke@kramerlevin.com.  My residence address is: 154 West 18th St, APT 4AD, New York, NY 10011.  I am not (i) a resident of the State of California, (ii) regularly employed in the State of California, or (iii) regularly engaged in substantial business, professional, or other activities in the State of California.

3.     I am an attorney at law duly authorized to practice law in State of New York.  I have been admitted to practice in the following courts (with year of admission in parentheses):

      (a)     New York, Court of Appeals (1990);

      (b)     U.S. Court of Appeals, 2nd Circuit (1992);

      (c)     U.S. Court of Appeals, 3rd Circuit (2012);

      (d)     U.S. District Court, Eastern District of New York (1995); and

      (e)     U.S. District Court, Southern District of New York (1990).

4.     I am a member in good standing in the courts listed above.

5.     I am not currently, nor have I ever been, suspended or disbarred in any court.

6.     I have not applied to appear as counsel *pro hac vice* in any California state court action in the two (2) years preceding this application.  On March 27, 2023 I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for three cases captioned as Siddiqui v. Greg W. Becker and Daniel J. Beck 4:23-cv-01228-HSG, Snook v. Greg W. Becker and Daniel J. Beck 3:23-cv-01173-VC, and Vanipenta v. SVB Financial Group et. al. 3:23-cv-01097-JD.  On April 13, 2023, I applied to appear *pro hac vice* on behalf of Defendant Beck in the District Court of the Northern District of California for one case captioned as City of Hialeah

VERIFIED APPLICATION OF BARRY H. BERKE                    Case No. 23-cv-414120
TO APPEAR AS COUNSEL *PRO HAC VICE*

Employees' Retirement System v. Greg W. Becker, et al. 3:23-cv-01697-AMO. My *pro hac vice* applications in each of these four cases were granted.

7.     The California attorney of record for Defendant Beck in this case, with whom I will be associated, is:

> Kristopher Kastens (California State Bar No. 254797)
> KRAMER LEVIN NAFTALIS & FRANKEL LLP
> 333 Twin Dolphin Drive, Suite 700
> Redwood Shores, California 94065
> Telephone: (650) 752-1700
> Facsimile: (650) 752-1800
> E-mail: kkastens@kramerlevin.com

8.     Pursuant to California Rules of Court, Rule 9.40(c) and California Code of Civil Procedure, section 1013a, on May 3, 2023, I caused a true and correct copy of this Application to be served upon all parties who have appeared in this action and upon the State Bar of California at its San Francisco Office, as shown by the attached Proof of Service.

9.     Pursuant to California Rules of Court, Rule 9.40(e), I have paid a fee in the amount of $50.00 to the State Bar of California, and submitted along with a copy of this Application upon the State Bar of California at its San Francisco Office.

10.    Plaintiffs do not oppose my application for admission *pro hac vice*.

## **VERIFICATION**

I, Barry H. Berke, certify and declare that I have read the foregoing Verified Application to Appear As Counsel *Pro Hac Vice* and know its contents.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 3, 2023 in New York, New York.

_____
Barry H. Berke

2

**PROOF OF SERVICE**

I declare that I am a citizen of the United States. My office address is 333 Twin Dolphin Drive, Suite 700, Redwood Shores, California 94065. I reside in the state of California where this mailing occurs. I am over the age of 18 years, and not a party to the within action. On the date set forth below, I served the foregoing document(s) described as:

**NOTICE OF ERRATA AS TO VERIFIED APPLICATION OF BARRY H. BERKE TO APPEAR AS COUNSEL *PRO HAC VICE***

On the following person(s) in this action by mail as follows:

David W. Hall (274921)
Armen Zohrabian (230492)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
dhall@hedinhall.com
azohrabian@hedinhall.com

*Attorneys for Plaintiff Stephen Rossi and the  Proposed Class*

Lisa Bugni
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
lbugni@kslaw.com

*Attorneys for Defendant KPMG LLP*

Brian Schall
Rina Restaino
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (3 10) 301-3335
Facsimile: (3 10) 388-0192
Email: brian@schallfirm.com
rina@schallfirm.com

*Attorneys for Plaintiff Stephen Rossi*

☒    BY UNITED STATES MAIL On May 3, 2023, I enclosed the documents in a sealed envelope or package addressed to the persons as set forth above. I placed the envelope for collection and mailing, following ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage thereon fully prepaid.

1

Executed on May 3, 2023, in Redwood Shores, California.

_____
Kristopher Kastens

PROOF OF SERVICE                                           Case No. 23-cv-414120

# Exhibit CC

1  | KRISTOPHER KASTENS (State Bar No. 254797)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
2  | 333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
3  | Telephone: (650) 752-1700
Facsimile: (650) 752-1800
4  | Email: kkastens@kramerlevin.com
5
*Attorneys for Defendant*
6  | Daniel J. Beck

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/3/2023 3:09 PM
Reviewed By: A. Floresca
Case #23CV414120
Envelope: 11877583**

7

8  | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  | **COUNTY OF SANTA CLARA**

10

11 | STEPHEN ROSSI, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS
12 | SIMILARLY SITUATED,

Case No. 23-cv-414120

**NOTICE OF APPEARANCE OF
KRISTOPHER KASTENS**

13 |                    Plaintiffs,

14 |          v.

15 | GREG W. BECKER, DANIEL J. BECK,
ROGER F. DUNBAR, KAREN HON, ERIC
16 | A. BENHAMOU, JOHN S. CLENDENING,
RICHARD D. DANIELS, ALISON DAVIS,
17 | JOEL P. FRIEDMAN, JEFFERY N.
MAGGIONCALDA, BEVERLY KAY
18 | MATTHEWS, MARY J. MILLER, KATE D.
MITCHELL, JOHN F. ROBINSON, GAREN
19 | K. STAGLIN, KPMG LLP, BENHAMOU
GLOBAL VENTURES, LLC, FIFTH ERA,
20 | LLC, AND SCALE VENTURE PARTNERS

21 |                    Defendants.

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that the appearance of Kristopher Kastens (State Bar No. 254797) of Kramer Levin Naftalis & Frankel LLP, 333 Twin Dolphin Drive, Suite 700, Redwood Shores, California 94065, as counsel of record for and on behalf of Defendant Daniel J. Beck, in the above-captioned matter for the purpose of receiving notices and orders from the Court.  Copies of all pleadings and notices pertaining to the above-captioned matter not otherwise filed through the Court's electronic filing system should be forwarded to counsel at the following address:

>Kristopher Kastens
>KRAMER LEVIN NAFTALIS & FRANKEL LLP
>333 Twin Dolphin Drive, Suite 700
>Redwood Shores, California 94065
>Telephone: (650) 752-1700
>Facsimile: (650) 752-1800
>E-mail: kkastens@kramerlevin.com

>Respectfully submitted,

Dated: May 3, 2023                By: _____
>Kristopher Kastens (State Bar No. 254797)
>KRAMER LEVIN NAFTALIS
>& FRANKEL LLP
>333 Twin Dolphin Drive, Suite 700
>Redwood Shores, California 94065
>Telephone:  (650) 752-1700
>Facsimile:  (650) 752-1800
>E-mail:  kkastens@kramerlevin.com

>*Attorneys for Defendant*
>Daniel J. Beck

1

NOTICE OF APPEARANCE OF KRISTOPHER KASTENS                    Case No. 23-cv-414120